**FILED**

JUN – 7 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALI SHAH MOUSOVI,** :<br>    Detainee, Guantánamo Bay Naval :<br>    Station, Guantánamo Bay, Cuba; :<br>                                                      :<br>**SAYYED MOHAMMAD SHAH,** :<br>    as Next Friend of Ali Shah Mousovi; :<br>    Gardez, Afghanistan; :<br>                                                      :<br>**IZAATULLAH NUSRAT,** :<br>    Detainee, Guantánamo Bay Naval :<br>    Station, Guantánamo Bay, Cuba; :<br>                                                      :<br>**HAJI NUSRAT,** :<br>    Detainee, Guantánamo Bay Naval :<br>    Station, Guantánamo Bay, Cuba; :<br>                                                      :<br>**ABDUL WAHID,** :<br>    as Next Friend of Izaatullah Nusrat :<br>    and Haji Nusrat; :<br>    Kabul, Afghanistan; :<br>                                                      :<br>**HAJI ROHULLAH WAKIL,** :<br>    Detainee, Guantánamo Bay Naval :<br>    Station, Guantánamo Bay, Cuba; :<br>                                                      :<br>**MOHAMMAD WAKIL,** :<br>    as Next Friend of Haji Rohullah :<br>    Wakil; :<br>    Afghanistan; :<br>                                                      :<br>**SABAR LAL,** :<br>    Detainee, Guantánamo Bay Naval :<br>    Station, Guantánamo Bay, Cuba; :<br>                                                      :<br>**MOHAMMAD HASSAN,** :<br>    as Next Friend of Sabar Lal; :<br>    Afghanistan; :<br>                                                      : | Case No.<br><br>Judge:<br><br>Deck Type:  Habeas Corpus/2255<br><br>Date Stamp:<br><br><br><br>**PETITION FOR WRITS**<br>**OF HABEAS CORPUS**<br>**AND COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF**<br><br><br>CASE NUMBER  1:05CV01124<br><br>JUDGE: Rosemary M. Collyer<br><br>DECK TYPE: Habeas Corpus/2255<br><br>DATE STAMP: 06/07/2005 |

WALI MOHAMMED MORAFA,                          :
     Detainee, Guantánamo Bay Naval         :
     Station, Guantánamo Bay, Cuba;          :
                                              :
HADAYA MORAFA,                                 :
     as Next Friend of Wali                   :
     Mohammed Morafa;                         :
     Peshawar, Pakistan;                      :
                                              :
ABDUL RAHMAN AZIZ KHAN,                        :
     Detainee, Guantánamo Bay Naval          :
     Station, Guantánamo Bay, Cuba;          :
                                              :
ABD-AL-RAHMAN,                                 :
     Detainee, Guantánamo Bay Naval          :
     Station, Guantánamo Bay, Cuba            :
                                              :
ABDUL RAZAK IKTIAR MOHAMMED,                   :
     Detainee, Guantánamo Bay Naval          :
     Station, Guantánamo Bay, Cuba;          :
                                              :
         *Petitioners/Plaintiffs*,          :
                                              :
           v.                          :
                                              :
GEORGE W. BUSH,                                :
     President of the United States          :
     The White House                         :
     1600 Pennsylvania Avenue, N.W.          :
     Washington, D.C.  20500;                :
                                              :
DONALD RUMSFELD,                               :
     Secretary, United States                :
     Department of Defense                   :
     1000 Defense Pentagon                   :
     Washington, D.C.  20301-1000;           :
                                              :
ARMY BRIG. GEN. JAY HOOD,                      :
     Commander, Joint Task Force –           :
     GTMO                                    :
     JTF-GTMO                                :
     APO AE 09360; and                       :

ARMY COL. BRICE GYURISKO,          :
    Commander, Joint Detention      :
      Operations Group - JTF-GTMO   :
    JTF-GTMO                        :
    APO AE 09360,                   :

        *Respondents/Defendants.*   :
                        :

## PETITION FOR WRITS OF HABEAS CORPUS AND COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Petitioners, Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah

Wakil, Sabar Lal, Wali Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and

Abdul Razak Iktiar Mohammed (collectively "Detained Petitioners"), each seek the Writ of

Habeas Corpus. Petitioners Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah

Wakil, Sabar Lal, and Wali Mohammed Morafa all citizens of Afghanistan, act on their own

behalf and through Next Friends, their respective relatives and/or friends. Petitioners Abdul

Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar Mohammed act on their own

behalf. Detained Petitioners are civilians wrongly designated as "enemy combatants" by the

President of the United States, and are being held virtually *incommunicado* in military custody at

Guantánamo Bay Naval Station ("Guantánamo"). Their detention is without lawful basis,

charge, access to counsel, or any fair process by which they might challenge their designation and

detention. Detained Petitioners are being held under and by color of the authority of the United

States, and in violation of the common law, as codified, the Constitution, laws and treaties of the

United States, and customary international law. Accordingly, this Court should issue Writs of

Habeas Corpus compelling Respondents either to release Detained Petitioners or to establish in

this Court a lawful basis for their detention. The Court should also order injunctive and

declaratory relief.

# I.
## JURISDICTION

1.     Respondents are holding Detained Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." Detained Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3) and 2242 and 2243. Detained Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of and the Fifth and Eighth Amendments to the United States Constitution. Because they seek declaratory relief, Detained Petitioners also rely on Rule 57 of the Federal Rules of Civil Procedure.

2.     Under 28 U.S.C. § 2242, Detained Petitioners may apply to this Court for Writs of Habeas Corpus.

3.     Under 28 U.S.C. §§ 2241 and 2243, this Court has the power to grant Writs of Habeas Corpus or to order Respondents to show cause why the Writs should not issue, and to order relief as law and justice require. The Court is further empowered to: (1) declare the rights and other legal relations of the parties herein under 28 U.S.C. § 2201; (2) effectuate and enforce declaratory relief by all necessary and proper means under 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and (3) issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

# II.
## PARTIES

### Ali Shah Mousovi

4.     Ali Shah Mousovi seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Sayyed Mohammad Shah, his brother. Ali Shah Mousovi is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at

4

Guantánamo. *See* Authorization of Sayyed Mohammad Shah, attached hereto at Exhibit A. On information and belief, Ali Shah Mousovi seeks legal representation and access to the courts of the United States.

5.    Because Ali Shah Mousovi has been denied access to legal counsel and to the courts of the United States, Sayyed Mohammad Shah acts as his Next Friend. On information and belief, Ali Shah Mousovi's family has tried to speak to Afghan and United States authorities about his condition and unlawful custody. They have not been able to speak with Ali Shah Mousovi or verify his health, condition or well being.

### Izaatullah Nusrat

6.    Izaatullah Nusrat seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Abdul Wahid, his brother. Izaatullah Nusrat is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. *See* Authorization of Abdul Wahid, attached hereto at Exhibit B. On information and belief, Izaatullah Nusrat seeks legal representation and access to the courts of the United States.

7.    Because Izaatullah Nusrat has been denied access to legal counsel and to the courts of the United States, Abdul Wahid acts as his Next Friend. On information and belief, Abdul Wahid has tried to speak to Afghan and United States authorities about Izaatullah Nusrat's condition and unlawful custody. Abdul Wahid has not been able to speak with Izaatullah Nusrat or verify his health, condition or well being.

### Haji Nusrat

8.    Haji Nusrat seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Abdul Wahid, his son. Haji Nusrat is an Afghan citizen who is

presently incarcerated in Respondents' unlawful custody at Guantánamo. *See* Authorization of Abdul Wahid, attached hereto at Exhibit C. On information and belief, Haji Nusrat seeks legal representation and access to the courts of the United States.

9.    Because Haji Nusrat has been denied access to legal counsel and to the courts of the United States, Abdul Wahid acts as his Next Friend. On information and belief, Abdul Wahid has tried to speak to Afghan and United States authorities about Haji Nusrat's condition and unlawful custody. Abdul Wahid has not been able to speak with Haji Nusrat or verify his health, condition or well being.

## Haji Rohullah Wakil

10.    Haji Rohullah Wakil seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Mohammad Wakil, his father. Haji Rohullah Wakil is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. *See* Authorization of Mohammad Wakil, attached hereto at Exhibit D. On information and belief, Haji Rohullah Wakil seeks legal representation and access to the courts of the United States.

11.    Because Haji Rohullah Wakil has been denied access to legal counsel and to the courts of the United States, Mohammad Wakil acts as his Next Friend. On information and belief, Mohammad Wakil has tried to speak to Afghan and United States authorities about Haji Rohullah Wakil's condition and unlawful custody. Mohammad Wakil has not been able to speak with Haji Rohullah Wakil or verify his health, condition or well being.

## Sabar Lal

12.    Sabar Lal seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Mohammad Hassan, his father. Sabar Lal is an Afghan citizen who is

presently incarcerated in Respondents' unlawful custody at Guantánamo. *See* Authorization of Mohammad Hassan, attached hereto at Exhibit E. On information and belief, Sabar Lal seeks legal representation and access to the courts of the United States.

13.    Because Sabar Lal has been denied access to legal counsel and to the courts of the United States, Mohammad Hassan acts as his Next Friend. On information and belief, Mohammad Hassan has tried to speak to Afghan and United States authorities about Sabar Lal's condition and unlawful custody. Mohammad Hassan has not been able to speak with Sabar Lal or verify his health, condition or well being.

### Wali Mohammed Morafa

14.    Wali Mohammed Morafa seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend, Hadaya Morafa, his wife. Wali Mohammed Morafa is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. *See* Authorization of Hadaya Morafa, attached hereto at Exhibit F. On information and belief, Wali Mohammed Morafa seeks legal representation and access to the courts of the United States.

15.    Because Wali Mohammed Morafa has been denied access to legal counsel and to the courts of the United States, Hadaya Morafa acts as his Next Friend.

### Abdul Rahman Aziz Khan

16.    Abdul Rahman Aziz Khan seeks a Writ of Habeas Corpus. He acts on his own behalf. On information and belief, Abdul Rahman Aziz Khan is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. Abdul Rahman Aziz Khan seeks legal representation and access to the courts of the United States.

### Abd-Al-Rahman

17.     Abd-Al-Rahman seeks a Writ of Habeas Corpus. He acts on his own behalf. On information and belief, Abd-Al-Rahman is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. Abd-Al-Rahman seeks legal representation and access to the courts of the United States.

### Abdul Razak Iktiar Mohammed

18.     Abdul Razak Iktiar Mohammed seeks a Writ of Habeas Corpus. He acts on his own behalf. On information and belief, Abdul Razak Iktiar Mohammed is an Afghan citizen who is presently incarcerated in Respondents' unlawful custody at Guantánamo. Abdul Razak Iktiar Mohammed seeks legal representation and access to the courts of the United States.

### Respondents

19.     Respondent, George W. Bush, is the President of the United States and Commander-in-Chief of the United States Military. Detained Petitioners are being held pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Detained Petitioners' unlawful detention and is sued in his official capacity.

20.     Respondent, Donald Rumsfeld, is the Secretary of the United States Department of Defense. Pursuant to either the Executive Order or the President's authority as Commander-in-Chief and under the laws and usages of war, Secretary Rumsfeld has been charged with maintaining custody and control of Detained Petitioners. Secretary Rumsfeld is sued in his official capacity.

21.     Respondent, Brigadier General Jay Hood, is the Commander of Joint Task

8

Force-GTMO, the task force running the detention operation at Guantánamo Bay. General Hood has supervisory responsibility for Detained Petitioners and is sued in his official capacity.

22.    Respondent, Colonel Brice Gyurisko, is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Detained Petitioners are presently held. Colonel Gyurisko is the immediate custodian responsible for Detained Petitioners' detention and is sued in his official capacity.

### III.
### STATEMENT OF FACTS

23.    On information and belief, Detained Petitioners are not enemy aliens and have never been unlawful belligerents or combatants of any kind.

24.    In or around October 2001, a coalition of forces led by the United States military ("Coalition Forces") defeated Taliban forces and deposed the Taliban government. Active hostilities between Taliban forces and Coalition Forces have ceased.

25.    On information and belief, Detained Petitioners are not and never have been enemy combatants. *See Hamdi v. Rumsfeld*, 542 U.S. ___, 124 S Ct. 2633, 2639 (2004). They have never been part of, or supported, forces hostile to the United States or its coalition partners in Afghanistan. They have never engaged in armed conflict against Coalition Forces or attempted to cause any harm to Coalition Forces personnel or property.

26.    On information and belief, on dates unknown to counsel for Petitioners, but known to Respondents, Coalition Forces took custody of Detained Petitioners.

27.    On information and belief, after Detained Petitioners were taken into custody, Coalition Forces transferred them to Guantánamo Bay Naval Base. Detained Petitioners have been held at Guantanamo since that time, with little or no outside contact.

28.     On information and belief, Detained Petitioners have not been afforded any procedures that satisfy the most fundamental common law notions of due process, the Constitution, laws, and treaties of the United States, or customary international law.

29.     On information and belief, Detained Petitioners seek to enforce their right to a judicial determination as to whether there is any lawful basis for their continuing detention by Respondents.

### The Joint Resolution

30.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban regime, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Sept. 18, 2001) ("Joint Resolution").

31.     On information and belief, Detained Petitioners did not plan, authorize, commit, or aid the terrorist attacks on September 11, 2001, or any other terrorists attacks. Nor have they harbored organizations or person that have done so. Detained Petitioners have never engaged in combat against American forces. None of the Detained Petitioners has ever been a member of Al Qaeda or any other terrorist group. Prior to being detained, Detained Petitioners did not commit any violent act against any American. They were not involved in the armed conflict that resulted in the overthrow of the Taliban government.

32.     As Detained Petitioners did not participate in the armed conflict with

Coalition Forces at any time, they are not properly subject to President Bush's authority as

Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

## The Executive Order

33.    On November 13, 2001, President Bush issued an Executive Order

authorizing Secretary Rumsfeld to detain indefinitely anyone whom President Bush had "reason

to believe":

(i)    is or was a member of the organization known as al Qaeda;

(ii)    has engaged in, aided or abetted, or conspired to commit, acts of international
terrorism, or acts in preparation therefor, that have caused, threaten to cause, or
have as their aim to cause, injury to or adverse effects on the United States, its
citizens, national security, foreign policy, or economy; or

(iii)    has knowingly harbored one or more individuals described in subparagraphs
(i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, § 2 (November 13, 2001). President Bush must make

this determination in writing. The Executive Order was neither authorized nor directed by

Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

34.    The Executive Order purports to vest President Bush with the sole

discretion to identify individuals who fall within its purview. It establishes no standards

governing the exercise of that discretion.

35.    Once a person has been detained, the Executive Order contains no

provision for that person to be notified of the charges he may face.

36.    The Executive Order purports to authorize the indefinite confinement of

detainees without charge. It contains no provision for a detainee to be notified of his rights under

domestic and international law, and provides neither the right to counsel, nor the rights to notice

of consular protection or to consular access at the detainee's request. It provides no right to

appear before a neutral tribunal to review the legality of a detainee's continued detention and

contains no provision for recourse to an Article III court. In fact, the Executive Order expressly

bars review by any court. The Executive Order authorizes indefinite and unreviewable detention,

based on nothing more than President Bush's written determination that an individual is subject

to its terms.

37.    The Executive Order was promulgated in the United States and in this

judicial district. The decision to incarcerate Detained Petitioners was made by Respondents in

the United States and in this judicial district. The decision to hold Detained Petitioners at

Guantánamo was made in the United States and in this judicial district. The decision to continue

holding Detained Petitioners was made, and is being made, by Respondents in the United States

and in this judicial district.

38.    President Bush has never certified or determined in any manner, in writing

or otherwise, that Detained Petitioners are subject to the Executive Order.

39.    Detained Petitioners are not properly subject to the Executive Order.

40.    Detained Petitioners have not been, and are not being, detained lawfully

pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or under

the laws and usages of war. Detained Petitioners were not arrested or detained by the United

States in the course of an armed conflict.

41.    Detained Petitioners have been denied the process due to them under the

common law, the Due Process Clause of the Fifth Amendment to the Constitution of the United

States, domestic civil and military law, and international law.

### Guantánamo Bay Naval Station

12

42.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan and elsewhere to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

43.     In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

44.     Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. ___, 124 S. Ct. 2686 (2004).

### The Conditions of Detention at Guantánamo

45.     On information and belief, since gaining control of Detained Petitioners, the United States military has held them virtually *incommunicado* under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, United Nations Press Release, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees*, Feb. 4, 2005; International Committee of the Red Cross, Press Release, *The ICRC's Work at Guantánamo Bay*, Nov. 30, 2004; International Committee of the Red Cross, Operational Update, *U.S. Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC*, July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense

Lawyers, Champion, Nov. 2004, at 4-5.

46.    Many of these conditions – including isolation of detainees for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003)).[1]

47.    In a confidential report to the United States government, the International Committee of the Red Cross ("ICRC") charged the United States military with intentional use during interrogations of psychological and physical coercion on the detainees at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. That report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, *When Doctors Go to War*, New England Journal of Medicine, Jan. 6, 2005, at 3-4.

---

[1]    Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *available at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf. The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

48.     Since details of the ICRC's report emerged, new revelations of abuse and

torture at Guantánamo have appeared, including FBI memoranda detailing torture and "highly

aggressive interrogation techniques," including 24-plus hour interrogations involving

temperature extremes, dogs, prolonged isolation, and loud music. *See Guantánamo: An Icon of*

*Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, *Fresh Details*

*Emerge on Harsh Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig,

*Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26,

2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Memos Describe Abuses of Iraq*

*Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI Agents Allege*

*Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I.*

*Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7, 2004, at A19.

49.     Even more recently, the Associated Press has reported allegations that

female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual

blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier*

*Details Sexual Tactics*, Jan. 27, 2005.

50.     The unlawful and unconstitutional interrogation techniques used by

Respondents at Guantánamo include not only physical and psychological abuse but also other

impermissible conduct contrary to due process requirements, including, upon information and

belief, having agents of the Government present themselves as lawyers for the detainees during

meetings with the detainees for the purpose of extracting information. *See* Sam Hannel, *Lawyers*

*Describe Guantánamo Detainees*, Seattle Post-Intelligencer, Jan. 19, 2005.

51.     Respondents, acting individually or through their agents, have stated that

whatever limitations apply to coercive interrogation techniques used by United States military

officials under the auspices of the Department of Defense *do not apply* to interrogations

conducted by agents of the CIA or other nonmilitary entities under President Bush. Eric

Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005,

at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells

Senate*, Wash. Post, Jan. 18, 2005, at A4.

　　　　　52.　　Respondents maintain that the United States may hold the detainees under

the current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299

(CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss, at 22-24,

statements of Principle Dep. Assoc. Att'y Gen. Brian Boyle; *see also* Dana Priest, *Long-Term

Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

　　　　　53.　　Moreover, the United States government has recently acknowledged plans

to begin constructing a new, more permanent detention facility at Guantánamo. *See* Christopher

Cooper, *In Guantánamo, Prisoners Languish in a Sea of Red Tape*, Wall Street Journal, Jan. 26,

2005, at A1; Assoc. Press, *Guantánamo Takes on the Look of Permanency*, Jan. 9, 2005.

　　　　　54.　　According to the Department of Defense, even detainees who are adjudged

innocent of all charges by a military commission may nevertheless be kept in detention at

Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3,

2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last

visited Mar. 16, 2005).

　　　　　55.　　On information and belief, Detained Petitioners have been forced to

provide involuntary statements to Respondents' agents at Guantánamo, and have been or will be

interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, even though they have not been charged with an offense and have not been notified of any pending or contemplated charges.

56.    Detained Petitioners have not (a) appeared before a lawful military or civilian tribunal; (b) been provided access to counsel or the means to contact and secure counsel; or (c) been adequately informed of their rights under the common law, the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law.

57.    Respondents have taken the position that Detained Petitioners should not be informed of these rights.  As a result, Detained Petitioners lack any ability to protect or to vindicate their rights under domestic and international law.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS –
UNLAWFUL DEPRIVATION OF LIBERTY)

58.    Petitioners incorporate herein by reference paragraphs 1 through 57.

59.    By the actions described above, Respondents have placed and now hold Detained Petitioners in custody, depriving them of their liberty unlawfully and by color of the authority of the United States.

60.    President Bush has ordered the prolonged, indefinite, and arbitrary detention of Detained Petitioners without lawful authority.

62.    Secretary Rumsfeld, General Hood, and Colonel Gyurisko are acting unlawfully by holding Detained Petitioners in furtherance of President Bush's order.

63.    Accordingly, Detained Petitioners are entitled, pursuant to 28 U.S.C. §§ 2241(c)(1) and 2243, to the issuance of Writs of Habeas Corpus or orders directing Respondents to show cause why the Writs should not issue.

64.    Upon a hearing and determination of the facts and a finding that Detained Petitioners' detention is unlawful, the Court should enter an order (1) directing Respondents to release Detained Petitioners; and (2) affording Detained Petitioners such other relief as law and justice require.

### SECOND CLAIM FOR RELIEF
(DUE PROCESS – FIFTH AMENDMENT TO THE
UNITED STATES CONSTITUTION –
UNLAWFUL DEPRIVATION OF LIBERTY)

65.    Petitioners incorporate herein by reference paragraphs 1 through 63.

66.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

67.    President Bush has ordered the prolonged, indefinite, and arbitrary detention of Detained Petitioners without due process of law, and the remaining Respondents have implemented that order.

68.    Respondents' actions deny Detained Petitioners the procedural and substantive rights and protections accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia* (a) the Uniform Code of Military Justice; (b) Army Regulation 190-8; (c) Articles 3 and 5 of the Third and Fourth Geneva

Conventions; and (d) customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other legal authorities.

69.    To the extent that Detained Petitioners' incarceration is purported to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Detained Petitioners.

70.    Accordingly, Detained Petitioners are entitled to habeas, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (DUE PROCESS – FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION – UNLAWFUL CONDITIONS OF CONFINEMENT)

71.    Petitioners incorporate herein by reference paragraphs 1 through 69.

72.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate Detained Petitioners' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States to be free from unlawful conditions of confinement.

73.    Accordingly, Detained Petitioners are entitled to declaratory and injunctive relief, including orders that they not be detained in conditions contrary to law, as well as any other relief the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (GENEVA CONVENTIONS – ARBITRARY DENIAL OF DUE PROCESS)

74.    Petitioners incorporate herein by reference paragraphs 1 through 72.

75.    By the actions described above, Respondents, acting under color of law,

have denied and continue to deny Detained Petitioners the process and protections accorded to

persons seized and detained by the United States military in times of armed conflict, as

established by specific provisions of the Third and Fourth Geneva Conventions.

76.     Violations of the Geneva Conventions are direct treaty violations and are

also violations of customary international law.

77.     Respondents are liable for the conduct described above insofar as they set

the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified,

and/or conspired to violate the Geneva Conventions.

78.     Accordingly, Detained Petitioners are entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the Court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN
AND HUMAN RIGHTS LAW –
ARBITRARY DENIAL OF DUE PROCESS)

79.     Petitioners incorporate herein by reference paragraphs 1 through 77.

80.     By the actions described above, Respondents have denied and continue to

deny Detained Petitioners the process and protections accorded to persons seized and detained by

the United States military in times of armed conflict, as established by specific provisions of the

Third and Fourth Geneva Conventions, and customary international law as reflected, expressed,

and defined in multilateral treaties, other international instruments, domestic judicial decisions

and other authorities.

81.     Because Respondents are holding Detained Petitioners "under or by color

of the authority of the United States" and "in violation of the Constitution or laws or treaties of

the United States," Detained Petitioners' claims arise under 28 U.S.C. § 2241.

82.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### SIXTH CLAIM FOR RELIEF
(EIGHTH AMENDMENT TO THE
UNITED STATES CONSTITUTION –
CRUEL AND UNUSUAL PUNISHMENT)

83.    Petitioners incorporate herein by reference paragraphs 1 through 81.

84.    On information and belief, Respondents have directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Detained Petitioners in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes.

85.    On information and belief, Detained Petitioners have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature and deafening noise; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and/or subjected to repeated psychological abuse.

86.    To the extent that Respondents have directed, ordered, confirmed, ratified, and/or conspired to bring about the actions described above, Respondents have violated and continue to violate the prohibition against the infliction of cruel and unusual punishment in the Eighth Amendment to the Constitution of the United States.

87.   On information and belief, Detained Petitioners have been forced to suffer severe physical and psychological abuse and agony.  They are therefore entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
(ALIEN TORT CLAIMS ACT –
VIOLATIONS OF THE LAW OF NATIONS)

88.   Petitioners incorporate herein by reference paragraphs 1 through 86.

89.   On information and belief, Respondents have directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Detained Petitioners in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes.

90.   On information and belief, Detained Petitioners have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature and deafening noise; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and/or subjected to repeated psychological abuse.

91.   Such actions had the intent and the effect of grossly humiliating and debasing Detained Petitioners, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical and moral resistance.

22

92.     The acts described herein constitute (a) torture; (b) war crimes and/or crimes against humanity, committed in violation of the applicable provisions of the Geneva Conventions and the Additional Protocols thereto; (c) cruel, inhuman or degrading treatment; (d) arbitrary arrest and prolonged arbitrary detention; and (e) enforced disappearance in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting these crimes, as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities, including, *inter alia*, Common Article 3 of the Geneva Conventions, the Fourth Geneva Convention, and Additional Protocols I and II of the Geneva Conventions.

93.     To the extent that Respondents have directed, ordered, confirmed, ratified, and/or conspired to bring about the above-described violations of the law of nations, Respondents are liable to Detained Petitioners.

94.     On information and belief, Detained Petitioners have been and are deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse and agony.  They are therefore entitled to habeas, declaratory, and injunctive relief and such other relief as the Court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION – UNLAWFUL DETENTION)

95.     Petitioners incorporate herein by reference paragraphs 1 through 93.

96.     On information and belief, Detained Petitioners are not enemy aliens and have never been unlawful belligerents or combatants of any kind.  The Executive lacks the

authority to order or direct military officials to detain civilians who are seized outside a theater of war or occupied territory who are not engaged in hostilities against the United States.

97. By the actions described above, President Bush has exceeded and continues to exceed his authority under Article II of the United States Constitution by authorizing, ordering and directing military officials to seize Detained Petitioners, transfer them to military detention, and continue to detain them at Guantánamo.

98. Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Detained Petitioners.

99. The military seizure and detention of Detained Petitioners by Respondents is *ultra vires* and illegal, being in violation of Article II of the United States Constitution.

100. To the extent that President Bush asserts that Detained Petitioners' incarceration is authorized by the Executive Order, that Order exceeds his authority under Article II and is *ultra vires* and void on its face and as applied to Detained Petitioners.

101. To the extent that Respondents assert that their authority to detain Detained Petitioners derives from a source other than the Executive Order, including without limitation President Bush's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

102. Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## NINTH CLAIM FOR RELIEF
### (VIOLATIONS OF THE ADMINISTRATIVE PROCEDURES ACT)

103. Petitioners incorporate herein by reference paragraphs 1 through 101.

104.    Respondents have incarcerated Detained Petitioners in violation of Army Regulation 190-8, which prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

105.    Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2), by (a) arbitrarily and capriciously holding Detained Petitioners in military custody in the manner described above; (b) denying Detained Petitioners the process afforded to persons seized and detained by the United States Military in times of armed conflict pursuant to Army Regulation 190-8; and (c) directing, ordering, conforming, ratifying, or conspiring unlawfully to torture Detained Petitioners in violation of Army Regulation 190-8.

106.    Accordingly, Detained Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that the Court:

1.    Designate Sayyed Mohammad Shah as Next Friend of Ali Shah Mousovi;

2.    Designate Abdul Wahid as Next Friend of Izaatullah Nusrat and Haji Nusrat;

3.    Designate Mohammad Wakil as Next Friend of Haji Rohullah Wakil;

25

4.     Designate Mohammad Hassan as Next Friend of Sabar Lal;

5.     Designate Hadaya Morafa as Next Friend of Wali Mohammed Morafa;

6.     To the extent Respondents contest any material factual allegations in this Petition, order Respondents to provide Petitioners immediately with a factual return detailing any alleged basis upon which Detained Petitioners are being detained, and schedule an evidentiary hearing at which Petitioners may adduce proof in support of their allegations;

7.     Order that Detained Petitioners be released from Respondents' unlawful custody;

8.     Order Respondents to allow counsel to meet and confer with Detained Petitioners, in private and unmonitored attorney-client conversations;

9.     Order Respondents to cease all direct or indirect interrogations of Detained Petitioners while this litigation is pending;

10.     Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Detained Petitioners;

11.     Order that Detained Petitioners may not be transferred to any other country without the specific, written agreement of Detained Petitioners and counsel while this action is pending;

12.     Order and declare the Executive Order of November 13, 2001, *ultra vires* and unlawful in violation of: (a) Article II of the United States Constitution; (b) the Fifth Amendment to the United States Constitution; (c) the Uniform Code of Military Justice; (d) the Administrative Procedures Act (5 U.S.C. § 702); and (e) the treaties of the United States and customary international law;

13.    Order and declare that the prolonged, indefinite, restrictive and abusive detention of Detained Petitioners is arbitrary, unlawful and in violation of (a) common law due process requirements; (b) the Due Process Clause of the Fifth Amendment to the United States Constitution; (c) the regulations of the United States military; (d) the treaties of the United States, including the Geneva Conventions; and (e) customary international humanitarian law;

14.    Order and declare that the prolonged, indefinite, restrictive and abusive detention of Detained Petitioners constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution;

15.    Provide Petitioners an opportunity to engage in full and fair discovery and to amend this Petition; and

16.    Grant such other relief as the Court may deem necessary and appropriate to protect Detained Petitioners' rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated: June __7__, 2005

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*


By: _____
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C. 20006
202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
212.698.3500

George G. Gordon
Peter M. Ryan
DECHERT LLP
1717 Arch Street
Philadelphia, PA 19103-2793
215.994.4000

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated: June _7_, 2005

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: _____
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C.  20006
202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza
New York, NY  10112
212.698.3500

George G. Gordon
Peter M. Ryan
DECHERT LLP
1717 Arch Street
Philadelphia, PA  19103-2793
215.994.4000

# CERTIFICATE OF SERVICE

I, R. Michael Smith, hereby certify that on June 7, 2005, I caused to be served a

true and correct copy of the foregoing Petition for Writs of Habeas Corpus and Complaint for

Declaratory and Injunctive Relief, and the certification pursuant to L.Civ.R. 83.2(g), on each of

the Respondents as follows:

> *By hand delivery to:*
> Kenneth L. Wainstein
> U.S. Attorney
> District of Columbia District
> Judiciary Center
> 555 4th Street, N.W.
> Washington, D.C. 20530
>
> *By Registered Mail, Return Receipt Requested, to:*
> Alberto R. Gonzales
> Attorney General of the United States
> U.S. Department of Justice
> Robert F. Kennedy Building
> Tenth Street and Constitution Avenue, N.W.
> Room 5111
> Washington, D.C. 20530
>
> George W. Bush
> President of the United States of America
> The White House
> 1600 Pennsylvania Avenue, N.W.
> Washington, D.C. 20301-1000
>
> Donald Rumsfeld
> Secretary, United States Department of Defense
> 1000 Defense Pentagon
> Washington, D.C. 20301-1000
>
> Army Brig. Gen. Jay Hood
> Commander, Joint Task Force-GTMO
> JTF-GTMO
> APO AE 09360
>
> Army Col. Brice Gyurisko
> Commander, Joint Detention Operations Group
> JTF-GTMO

APO AE 09360
*Via e-mail to:*
Terry M. Henry
Terry.Henry@usdoj.gov
Senior Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C.  20530

Andrew I. Warden
Andrew.Warden@usdoj.gov
Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C.  20530

R. Michael Smith

9647786.1.LITIGATION