IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SHAH MOUSOVI, et al., | :  Case No. 1:05-CV-01124 (RMC) |
| *Petitioners/Plaintiffs,* | :  ORAL ARGUMENT REQUESTED |
| v. | : |
| GEORGE W. BUSH, et al., | : |
| *Respondents/Defendants.* | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' MOTION FOR THE IMMEDIATE ISSUANCE OF A WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE UNDER 28 U.S.C. § 2243**

Petitioners Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah Wakil, Sabar Lal, Wali Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar Mohammed, all citizens of Afghanistan acting on their own behalf and/or through Next Friends, rely on the following points and authorities in support of their motion requesting that the Court issue forthwith a writ of *habeas corpus* or order to show cause why the writ should not be granted, returnable by Respondents in three (3) days under 28 U.S.C. § 2243. In support of the motion, Petitioners state the following:

1.  Upon information and belief, Petitioners are prisoners at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo"). Petitioners have been held virtually *incommunicado* and without access to counsel.

2.  On June 7, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Petitioners under 28 U.S.C. § 2241, contending that they were being detained in violation of the

common law, as codified, the Constitution, laws and treaties of the United States, and customary international law.

3. As set forth in the Petition, at ¶¶ 23, 25, 31, Petitioners have never been unlawful belligerents or "enemy combatants" as that term has been interpreted pursuant to an Executive Order issued by President Bush on November 13, 2001. *See* Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57, 833 (Nov. 13, 2001).

4. In *Rasul v. Bush*, the United States Supreme Court acknowledged that allegations such as those in the Petition – specifically, claims of innocence from any wrongdoing and detention without charge or access to counsel – "unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'" 124 S. Ct. 2686, 2698 n.15 (2004) (quoting 28 U.S.C. § 2241(c)(3)).

5. Under *Rasul*, Petitioners are entitled to challenge their incarceration via an application for the Great Writ. *See* 124 S. Ct. at 2699 (upholding the jurisdiction of federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing").

6. Under 28 U.S.C. § 2243, a "court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."

7. Under § 2243, the writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed."

Petititoners respectfully request that the writ or, alternatively, the order to show cause, be returnable within three (3) days.

        8.     Under § 2243, the "person to whom the writ or order is directed shall make a return certifying the true cause of the detention." Petitioners seek to enforce their rights to a judicial determination that there is a factual and legal basis for their imprisonment in Guantanamo.

        9.     Respondents have, by their own public admission, completed at least four factual reviews of Petitioners' status and the reasons for their ongoing imprisonment. *See* Briefing on Detainee Operations at Guantanamo Bay (Feb. 13, 2004), *available at* http://www.defenselink.mil/transcripts/2004/tr20040213-0443.html (last visited June 16, 2005).

        10.     On information and belief, Respondents have also interrogated Petitioners on numerous occasions and are well aware of any factual basis that allegedly supports their continued imprisonment. According to former Deputy Secretary of Defense Paul Wolfowitz, Petitioners, like all Guantanamo detainees, "ha[ve] been determined to be . . . enemy combatant[s] though multiple levels of review by officers of the Department of Defense." Memorandum for the Secretary of the Navy, July 7, 2004, at ¶ a, *available at* http://www.defenselink.mil/news/Jul2004/d20040707review.pdf (last visited June 16, 2005).

        11.     These "multiple levels of review" involve at least three assessments by military personnel, civilian officials and legal advisors, including: (1) an initial combatant screening and assessment; (2) a "general officer" review; and (3) a Department of Defense review. *See* Briefing on Detainee Operations at Guantanamo Bay, *supra*.

        12.     Furthermore, Respondents have, since July 2004, conducted hearings to review the status of each person incarcerated at Guantanamo. *See* Combatant Status Review

Tribunals Update (Jan. 19, 2005), *available at* http://www.dod.mil/releases/2005/nr20050119-1996.html (last visited June 16, 2005). Each hearing, known as a Combatant Status Review Tribunal ("CSRT"), "reviews and assesses relevant and reasonably available documents about each detainee to make a determination to confirm or reclassify the status of each individual." *Id.*

13. Respondents have now completed CSRT reviews for every detainee at Guantanamo. *See* DOD News Briefing with Secretary Rumsfeld and General Pace (June 14, 2005), *available at* http://www.defenselink.mil/transcripts/2005/tr20050614-secdef3042.html (last visited June 16, 2005). Therefore, they have had ample opportunity to review the individual status of each Petitioner.

14. Because Respondents have already determined the alleged "enemy combatant" status of each prisoner though multiple levels of review and CSRTs, there is no reason to delay issuance of the writ or an order to show cause. The language of the habeas statute is clear: "The person to whom the writ or order is directed shall make a return certifying the true cause of the detention." 28 U.S.C. § 2243.

15. Several Judges in this District have issued Orders to Show Cause in other Guantanamo *habeas corpus* cases. *See, e.g., El-Banna v. Bush*, No. 04-CV-1144 (RWR) (Order dated July 23, 2004); *Abdah v. Bush*, No. 04-CV-1254 (HHK) (Order dated Aug. 6, 2004); *El-Mashad v. Bush*, No. 05-CV-270 (JR) (Order dated Apr. 7, 2005); *Al Joudi v. Bush*, No. 05-CV-301 (GK) (Order dated Mar. 7, 2005); *Ameziane v. Bush*, No. 05-CV-392 (ESH) (Order dated Mar. 10, 2005); *Batarfi v. Bush*, No. 05-CV-409 (EGS) (Order dated Mar. 9, 2005); *Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (Order dated Mar. 22, 2005). *See* Exhibits A-G to the

Declaration of R. Michael Smith in Support of Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 ("Smith Decl.").[1]

16. Respondents have taken the position in this and other Guantanamo *habeas corpus* cases that "[i]t makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns . . . , to go forward when decisions from the D.C. Circuit . . . will determine the legal analyses applicable to the cases[.]" Respondents' Mot. to Stay, at 9-10. Respondents have also argued that providing the basis for the Petitioners' detention without charge will be too burdensome and will increase the risk of inadvertent disclosure of classified information. *Id.* at 12-13.

17. These contentions are meritless. In *Tumani v. Bush*, No. 05-CV-526 (RMU), Judge Urbina soundly rejected Respondents' arguments:

> The fact that the D.C. Circuit has not yet issued its decision in the related appeals . . . does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

---

[1] *Cf. In re Guantanamo Detainee Cases*, Nos. 02-CV-299 (CKK), *et al.* (Order of Coordinating Judge Joyce Hens Green dated Oct. 29, 2004), attached as Exh. H to the Smith Decl. Judge Green ordered Respondents to produce factual returns in seven cases, concluding that "[m]ost, if not all, of the petitioners who have not yet received factual returns were initially detained nearly three years ago and have remained in custody since that time. Respondents must be able to provide forthwith the factual bases for the initial detention and continued custody . . . ." *Id.* at 3.

Smith Decl., Exh. I (Order dated Apr. 19, 2005).[2]

18. While a *habeas corpus* petitioner should always receive "a swift, flexible, and summary determination of his claim," *Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973), the facts in this case require especially expeditious adjudication, as Petitioners have been held under conditions that violate their common law, constitutional, statutory and international law rights to due process, dignity and freedom from cruel, unusual and degrading treatment or punishment. *See* Petition at ¶¶ 45-57.

19. Recently declassified and released federal agency and military documents[3] confirm reports that persons incarcerated at Guantanamo have been subjected to widespread and systemic torture and abuses, including brutal beatings, *see, e.g.,* Smith Decl., Exh. J (translated interview of Guantanamo detainee describing being "beaten unconscious" by guards); forced violations of fundamental tenets of faith through a deliberate pattern of torture targeted at devout Muslims; *see* Petition. at ¶ 90; sexual abuse, and routine degradation and humiliation. *See* Carol D. Leonnig & Dana Priest, *Detainees Accuse Female Interrogators: Pentagon Inquiry Is Said to Confirm Muslims' Accounts of Sexual Tactics at Guantanamo,* WASH. POST, at A1 (Feb. 10, 2005), attached as Exh. K to Smith Decl.

---

[2] Counsel for Petitioners filed today an Unopposed Motion for Entry of Protective Order requesting entry in this case of Judge Green's November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, as supplemented by the November 10, 2004 Order Addressing Designation Procedures for "Protected Information," and the December 13, 2004 Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order.

[3] These documents, attached as Exhibits J & L-S to the Smith Declaration, were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. *See American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.).

20.     Detainees in Guantanamo have also been continually subjected to a range of physically and psychologically abusive interrogation tactics, including denial of food or water, isolation, extreme temperatures (hot and cold), bright lights, loud music, and the use of dogs. *See, e.g.*, Smith Decl., Exhs. L & M. In addition, military interrogators have posed as civilian government employees. *Id.*, Exhs. N & O.

21.     The government has acknowledged the mishandling of the Koran, the Islamic holy book, by Guantanamo personnel on at least five occasions. *See* DOD News Briefing on Koran Mishandling Allegations (May 26, 2005), *available at* http://www.defense link.mil/transcripts/2005/tr20050526-2921.html (last visited June 30, 2005).

22.     Furthermore, detainees, without access to outside counsel, have been coerced into dropping allegations of abuse in order to secure release. Smith Decl., Exh. P.

23.     Many of the abuses exposed at the United States-controlled Abu Ghraib prison in Iraq initially arose at Guantanamo. *Id.* Exh. Q. Army and Pentagon investigations into the torture of prisoners in Iraq have revealed that U.S. military officials successfully sought to "gitmotize" Abu Ghraib prison, *id.* Exh. R, by implementing the Guantanamo interrogation and detention operations as a baseline, *id.* Exh. S, at 2 ¶ 1.

24.     The well-documented torture and abuse of individuals detained at Guantanamo necessitates an expeditious response to the Petition. As noted above, Respondents have completed Combatant Status Reviews for each individual still being held at Guantanamo. Therefore, the Court should not permit Respondents to delay the submission of a "return certifying the true cause of [Petitioners'] detention," as required under 28 U.S.C. § 2243. "Respondents must be able to provide forthwith the factual bases for the initial detention and

continued custody . . . ." Smith Decl., Exh. H, at 3 (Order of Coordinating Judge Joyce Hens Green dated Oct. 29, 2004).

WHEREFORE, for the above-stated reasons, Petitioners respectfully request that the Court issue the writ or an order to show cause forthwith, returnable by Respondents in three (3) days.

Dated:  July 8, 2005

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: *[signature]*
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C.  20006
202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza
New York, NY  10112
212.698.3500

George G. Gordon
Peter M. Ryan
DECHERT LLP
1717 Arch Street
Philadelphia, PA  19103-2793
215.994.4000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SHAH MOUSOVI, et al., | : |
| *Petitioners/Plaintiffs*, | : Case No. 1:05-CV-01124 (RMC) |
| v. | : |
| GEORGE W. BUSH, et al., | : |
| *Respondents/Defendants*. | : |

### ORDER

Upon consideration of Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243, the Memorandum of Points and Authorities in support thereof, and any response thereto, it is hereby

**ORDERED** that Respondents shall, within three (3) days of the date of entry of this Order, file with the Court and serve on Petitioners a statement showing cause why the writ should not be granted.

**SO ORDERED.**

Date: _____, 2005

_____
ROSEMARY M. COLLYER
United States District Judge

<u>Attorneys to be noticed</u>:

R. Michael Smith
D.C. Bar No. 372654
Michael.Smith@dechert.com
DECHERT LLP
1775 Eye Street, N.W.
Washington, D.C. 20006
(202) 261-3300

Preeya M. Noronha
Preeya.Noronha@usdoj.gov
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7226
Washington, D.C. 20530
(202) 514-3338