# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMIL EL-BANNA, <u>et al.</u>, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) |
| | ) |
| GEORGE W. BUSH, <u>et al.</u>, | ) |
| | ) |
| Respondents. | ) |
| | ) |

Civil Action No. 04-1144 (RWR)

## ORDER DIRECTING RESPONDENTS TO SHOW CAUSE

Pursuant to 28 U.S.C. § 2243, it is this 23rd day of July 2004,

ORDERED that respondents, by counsel, shall, within 20 days of service of a copy of this Order and the Amended Petition, file with this Court and serve on the petitioners a statement showing why the Writ of *Habeas Corpus* should not issue.

The Clerk of the Court is directed to furnish copies of this Order to the United States Marshal for purpose of making service on respondents.

RICHARD W. ROBERTS
United States District Judge

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAHMOAD ABDAH, et al., | |
| Petitioners, | |
| v. | Civil Action 04-01254 (HHK) |
| GEORGE W. BUSH, et al., | |
| Respondents. | |

**ORDER TO SHOW CAUSE**

It is by the Court this 6th day August, 2004, hereby,

**ORDERED** that Respondents, within  ten (10) days of the docketing of

this order, shall file with the Court and serve on Petitioners a statement showing

why the Writ of Habeas Corpus sought by Petitioners should not be granted.

Henry H. Kennedy, Jr.
United States District Judge

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHERIF el-MASHAD, *et al.*,          :
                                     :
          Petitioners,               :
                                     :
     v.                              :     Civil Action No. 05-0270 (JR)
                                     :
GEORGE W. BUSH, *et al.*,            :
                                     :
          Respondents.               :

## ORDER

   Petitioners' motion for a preliminary injunction [3] is **denied.** Petitioners' motion for an order to show cause [17] is **granted.** Respondents' motion for a stay [16] is **granted.** Petitioners having submitted themselves to the jurisdiction of this Court, and the Court having asserted in personam jurisdiction, see Rasul v. Bush, 124 S.Ct. 2686 (2004), the stay will apply to all proceedings applicable to the petitioners, including without limitation their release, repatriation, or rendition, and it will remain in effect until further order of the Court. **IT IS SO ORDERED.**


                              JAMES ROBERTSON
                    United States District Judge

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAJID ABDULLA AL JOUDI, _____:
<u>et al</u>.,                              :
                                           :
            Petitioners,         :
                                           :
        v.                                 :     **Civil Action No. 05-301 (GK)**
                                           :
GEORGE W. BUSH, <u>et al</u>.,   :
                                           :
            Respondents,         :

## ORDER

On February 9, 2005, Petitioners filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. To date, the Government has not responded to that Petition. On March 3, 2005, Petitioners filed a Motion for the Immediate Issuance of a Writ of Habeas Corpus or, Alternatively, to Issue an Order to Show Cause. Accordingly, it is hereby

**ORDERED** that the Government shall, by **March 28, 2005**, show cause why this writ should not be granted.

March 7, 2005                      /s/_____
                                   Gladys Kessler
                                   United States District Judge

**Copies via ECF to all**
**counsel of record**

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMEL AMEZIANE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 05-0392 (ESH) |
| | ) |
| GEORGE W. BUSH, *et al.*, | ) |
| | ) |
| Respondents. | ) |
| | ) |

## ORDER

The above Petition for Writ of Habeas Corpus and Complaint for Declaratory and

Injunctive Relief was reassigned to this Court on March 4, 2005. To date, respondents have not

responded to his Petition. Accordingly, it is this 10th day of March, 2005, hereby

**ORDERED** that the respondents shall, by April 1, 2005, show cause why this writ should

not be granted.

**SO ORDERED.**

s/
ELLEN SEGAL HUVELLE
United States District Court

EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AYMAN SAEED BATARFI, *et al.*     )
                                  )
        Petitioners,              )
                                  )
                                  )     Civ. No.  05-409 (EGS)
        v.                        )
                                  )
                                  )          **FILED**
GEORGE W. BUSH, *et al.*          )
                                  )       MAR  9 2005
        Respondents.              )
                                  )     NANCY MAYER WHITTINGTON, CLERK
                                  )          U.S. DISTRICT COURT

## O R D E R

On March 1, 2005, Petitioners filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. To date, the Government has not responded to that Petition.  On March 3, 2005, Petitioners filed a Motion for Writ of Habeas Corpus or Order to Show Cause.  Accordingly, it is hereby

**ORDERED** that the Government shall, by **March 18, 2005,** show cause why this writ should not be granted.

3/08/05
DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

Copies via ECF to all counsel of record



Notice to:

Terry Marcus Henry, Esquire
US Department of Justice Civil Division
Room 7144
20 Massachusetts Avenue, NW
Washington, DC 2053

Andrew Warden, Esquire
US Department of Justice Civil Division
20 Massachusetts Avenue, NW
Washington, DC 2053

Kenneth L. Wainstein, Esquire
U.S. Attorney for the District of Columbia
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, DC 20530

# EXHIBIT G

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SALEH ABDULLA AL-OSHAN *et al.*,      :
                                       :
      Petitioners/      :
      Plaintiffs,       :
                                       :
      v.              :      Civil Action No.:      05-0520 (RMU)
                                       :
GEORGE W. BUSH *et al.*,               :      Document No.:      5
                                       :
      Respondents/      :
      Defendants        :

## ORDER

Before the court is the petitioners' motion for a writ of habeas corpus or an order to show cause why the writ should not issue. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Accordingly, it is this 22nd day of March, 2005,

**ORDERED** that the defendants shall show cause by Tuesday, March 29, 2005, why the writ should not be granted.

**SO ORDERED.**

                                           RICARDO M. URBINA
                                         United States District Judge

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ) | Civil Action Nos. |
| ) | **02-CV-0299 (CKK), 02-CV-0828 (CKK),** |
| ) | **02-CV-1130 (CKK), 04-CV-1135 (ESH),** |
| ) | **04-CV-1136 (JDB), 04-CV-1137 (RMC),** |
| *In re* **Guantanamo Detainee Cases**   ) | **04-CV-1142 (RJL), 04-CV-1144 (RWR),** |
| ) | **04-CV-1164 (RBW), 04-CV-1166 (RJL),** |
| ) | **04-CV-1194 (HHK), 04-CV-1227 (RBW),** |
| ) | **04-CV-1254 (HHK), 04-CV-1519 (JR)** |
| ) | |

**ORDER SETTING FINAL DEADLINE FOR SUBMISSION OF FACTUAL RETURNS**

Following two status conferences before the Court during the week of August 23, 2004, counsel for respondents submitted a letter dated August 31, 2004 setting forth a proposed schedule for the filing of factual returns in these coordinated cases. The returns were to provide detailed factual bases for the government's detention of the petitioners seeking habeas relief in this jurisdiction. Under the respondents' proposed schedule, all returns were to be filed for petitioners in the pending cases before the end of the week commencing October 18, 2004. The Court approved the respondents' proposed schedule and incorporated the deadline in a scheduling order dated September 20, 2004. As of this date, respondents have yet to file the required returns for seven petitioners. Those petitioners are: Omar Rajab Amin (in Al Odah v. United States, 02-CV-0828 (CKK)), Moazzam Begg (in Begg v. Bush, 04-CV-1137 (RMC)), Martin Mubanga (in El-Banna v. Bush, 04-CV-1144 (RWR)), Mohammed Nechla and Hadj Boudella (in Boumediene v. Bush, 04-CV-1166 (RJL)), and Abdullah Majed Sayyah Hasan Alnoaimi and Salman Bin Ibrahim Bin Mohammed Bin Ali Al-Khalifa (in Almurbati v. Bush,

04-CV-1227 (RBW)).[1]

Respondents filed a status report on October 22, 2004 explaining why factual returns have not been filed for the above mentioned petitioners. In all seven instances, respondents explained that they have not yet filed the returns because they have not been able to complete Combatant Status Review Tribunal ("CSRT") proceedings for those petitioners. Specifically, respondents claim that the delays have occurred as a result of the petitioners' requests for the production of witnesses and documents that the petitioners presumably believe would help them refute the government's charges in the CSRT proceedings that they are enemy combatants.

On the same date as the filing of the respondents' status report regarding factual returns, counsel for petitioner Martin Mubanga in the El-Banna case filed a motion to compel respondents to file an immediate reply to Mr. Mubanga's petition for writ of habeas corpus or in the alternative for issuance of the writ itself. Citing 28 U.S.C. § 2243 and previous orders issued in El-Banna, counsel claims that respondents have no legal right to refuse to respond to the petition pending the completion of CSRT proceedings, which commenced long after the petitioner was detained in Africa and incarcerated at the Guantanamo Bay Naval Base.

The Court is aware that respondents have sought to dismiss the petitions for writ of habeas corpus of Martin Mubanga and the other detainees based in part on the argument that the CSRT proceedings provide more than sufficient due process to allow the government's continued

_____

[1] In an Order dated October 4, 2004, the Court clarified that respondents were not required to file a factual return addressing the detention of Salim Ahmed Hamdan in Hamdan v. Rumsfeld, 04-CV-1519 (JR) given the unique circumstances of that case. In addition, although a petition was filed on behalf of an alleged detainee named Aref Abd Il Rheem in Abdah v. Bush, 04-CV-1254 (HHK), respondents have stated that they have been unable to identify him as a detainee at Guantanamo Bay and counsel for the petitioners in that case have not raised any objection relating to that statement.

custody of the petitioners. The Court expects, however, that the petitioners will challenge respondents' position when they file their responses to the motion to dismiss. Those responses are not due until November 5, 2004 and, therefore, the issue regarding the alleged appropriateness and sufficiency of the CSRT proceedings is not yet ready for judicial resolution in most of these cases.[2]

Notwithstanding pending issues concerning the appropriateness and sufficiency of the CSRT proceedings, and without prejudice to the future resolution of those issues, the reasons cited by respondents in their October 22, 2004 status report do not justify the respondents' failure to comply with this Court's September 20, 2004 Order requiring factual returns to be submitted by the end of the week commencing October 18, 2004. Most, if not all, of the petitioners who have not yet received factual returns were initially detained nearly three years ago and have remained in custody since that time. Respondents must be able to provide forthwith the factual bases for the initial detention and continued custody without waiting for the production of the evidence referenced in the respondents' status report. According to the respondents' own representations, that evidence is being sought by the petitioners themselves in support of their efforts to establish that they are not enemy combatants. It is therefore unlikely that the respondents will rely on such evidence to justify the detention of the petitioners. More importantly, if such evidence is not yet in the possession of the respondents, it could not have formed the basis for respondents' continued custody of the petitioners and is therefore unnecessary for the filing of factual returns in opposition to the petitioners' claims that they are

---

[2] The issues concerning the validity of the CSRT proceedings has been fully briefed in one of these cases. The petitioners in <u>Al Odah</u> filed their reply to the government's motion to dismiss on October 20, 2004 and the respondents filed a reply thereto on October 27, 2004.

being held unlawfully.

Accordingly, and for the foregoing reasons, it is hereby

ORDERED that respondents shall file on or before November 3, 2004 factual returns for

the following petitioners:

Omar Rajab Amin (Al Odah v. United States, 02-CV-0828 (CKK)),

Moazzam Begg (Begg v. Bush, 04-CV-1137 (RMC)),

Martin Mubanga (El-Banna v. Bush, 04-CV-1144 (RWR)),

Mohammed Nechla (Boumediene v. Bush, 04-CV-1166 (RJL)),

Hadj Boudella (Boumediene v. Bush, 04-CV-1166 (RJL)),

Abdullah Majed Sayyah Hasan Alnoaimi  (Almurbati v. Bush, 04-CV-1227 (RBW)), and

Salman Bin Ibrahim Bin Mohammed Bin Ali Al-Khalifa (Almurbati v. Bush, 04-CV-1227 (RBW)).

There shall be no further extensions.

IT IS SO ORDERED.

October 29, 2004                                    _____/s/_____
                                                   JOYCE HENS GREEN
                                                   United States District Judge

4

# EXHIBIT I

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MUHAMMED KAHN TUMANI,        :
*et al.*,                    :
                             :
            Petitioners/     :
            Plaintiffs,      :        Civil Action No.:     05-0526 (RMU)
                             :
        v.                   :
                             :
GEORGE W. BUSH *et al.*,     :
                             :
            Respondents/     :
            Defendants       :

## <u>ORDER</u>

### DIRECTING THE DEFENDANTS TO SHOW CAUSE AND SUBMIT FACTUAL RETURNS

Before the court is the plaintiffs' petition for a writ of habeas corpus. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. In addition, "[t]he person to whom the . . . order is directed *shall* make a return certifying the true cause of the detention." *Id.* (emphasis added).

The government takes the position that "[i]t makes no sense for proceedings related to the merits of these cases, such as submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decisions from the D.C. Circuit . . . will determine the legal analyses applicable to the cases[.]" Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns burdens the

government's resources and risks the inadvertent disclosure of classified information. *Id.* at 12-13.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 19th day of April, 2005,

**ORDERED** that the defendants shall show cause why the writ should not be granted and submit factual returns within 90 days of this order.

**SO ORDERED**.

RICARDO M. URBINA
United States District Judge

EXHIBIT J



AA22 302                                                                          Page 2

b6 -1
b7C -1

285A-▓▓▓-C99102 translated by                                    5/22/02

                                                                         b6 -3,4
_____ stated he had been beaten unconscious                           b7C -3,4
approximately three or four weeks ago when he was still at Camp          b7D -1
X-Ray.  A_____ _____ n number of guards                        b7F -1
entered his cell, unprovoked, and started spitting and cursing at
him.  The guards called him a "son of a bitch," and a "bastard,"
then told him he was crazy.

_____ rolled onto his stomach to protect himself.            b6 -2,3,4
_____ stated a                                                       b7C -2,3,4
soldier named _____ _____ ____ ___ _____ ___ beating him          b7D -1
in the face, then choked him until he passed out.                       b7F -1
_____ stated that _____ was beating him because _____ is
a muslim, and _____ is Christian.  _____ indicated there was
a female guard named _____ who was also beating him and
grabbed his head and beat it into the cell floor.

_____ stated that all the soldiers were aware of             b6 -2,3,4,5
his _____ _____ and he was taken to the hospital following        b7C -2,3,4,5
the beating, where he received an IV and treatment for his facial       b7D -1
wounds.  _____ claimed _____ who is a tall African                b7F -1
American male, visited him at the hospital, and told the doctors
to immediately return him to the camp.  _____ reported the
aforementioned incident to two Red Cross representatives at Camp
Delta, who he identified as _____ and _____ _____ stated
he did not do anything to cause the guards to enter his cell, and
did everything they instructed him to do.  _____ had what
appeared to be a recent wound on the bridge of his nose.

_____ stated that he was put in an isolation cell            b6 -3,4
after he was involved in a dispute over food given to him.              b7C -3,4
_____ stated that he is unable to eat certain foods, and was         b7D -1
placed in isolation after arguing with a guard.                         b7F -1

                                                                         b6 -3,4
                                                                         b7C -3,4
                                                                         b7D -1
                                                                         b7F -1

                                                                         b6 -3,4,5
                                                                         b7C -3,4,5
                                                                         b7D -1
                                                                         b7F -1

                                                                         b6 -3,4,5
                                                                         b7C -3,4,5
                                                                         b7D -1
                                                                         b7F -1

DETAINEES-1722                                                  1722

                                                                 5016



AA22 302                                                                                    Page 3

b6 -1
b7C -1

5/22/02

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

b6 -3,4
b7C -3,4
b7D -1
b7F -1

b6 -3,4
b7C -3,4
b7D -1
b7F -1

b1
b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

(S)

b1
b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

(S)

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

DETAINEES-1723

1723
5017



AA22 302                                                                    Page 4

b6 -1
b7C -1

5/22/02                                                b6 -3,4
                                                        b7C -3,4
                                                        b7D -1
                                                        b7F -1

                                                        b6 -3,4,5
                                                        b7C -3,4,5
                                                        b7D -1
                                                        b7F -1

                                                        b1
                                                        b6 -3,4,5
                                                        b7C -3,4,5
                                                        b7D -1
                                                        b7F -1

b1
b6 -3,4
b7C -3,4
b7D -1
b7F -1

                                                        b6 -3,4
                                                        b7C -3,4
DETAINEES-1724                                          b7D -1
                                                        b7F -1
                                                        1724

                                                        5018



AA22 302

Page 5

b6 -1
b7C -1

5/22/02

b1
b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

(5)

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

b1
b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

(5)

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

DETAINEES-1725

/725

5019



AA22 302                                                                Page 6

b6 -1
b7C -1

5/22/02

285A-MM-C99102

b6 -3,4
b7C -3,4
b7D -1
b7F -1

b6 -3,4
b7C -3,4
b7D -1
b7F -1

b6 -3,4
b7C -3,4
b7D -1
b7F -1

claimed to be unaware of
the reasons behind his apprehension

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

b6 -3,4,5
b7C -3,4,5
b7D -1
b7F -1

DETAINEES-1726

1726

5020



AA22 302                                                                                                          Page 7

b6 -1
b7C -1

5/22/02

after the Trade Center disaster.

b6 -3,4
b7C -3,4
b7D -1
b7F -1

DETAINEES-1727

1727

5021

# EXHIBIT K

## washingtonpost.com
# Detainees Accuse Female Interrogators
Pentagon Inquiry Is Said to Confirm Muslims' Accounts of Sexual
Tactics at Guantanamo

By Carol D. Leonnig and Dana Priest
Washington Post Staff Writers
Thursday, February 10, 2005; Page A01

Advertisement

We pay the highest interest in America.

3.0% APY

American Dream Savings Account

Learn more

Emigrant Direct.com
More money for your money.
Since 1850

Member FDIC

Female interrogators repeatedly used sexually suggestive tactics to
try to humiliate and pry information from devout Muslim men held
at the U.S. military prison at Guantanamo Bay, Cuba, according to
a military investigation not yet public and newly declassified
accounts from detainees.

The prisoners have told their lawyers, who compiled the accounts,
that female interrogators regularly violated Muslim taboos about
sex and contact with women. The women rubbed their bodies
against the men, wore skimpy clothes in front of them, made
sexually explicit remarks and touched them provocatively, at least
eight detainees said in documents or through their attorneys.

A wide-ranging Pentagon investigation, which has not yet been
released, generally confirms the detainees' allegations, according to
a senior Defense Department official familiar with the report.
While isolated accounts of such tactics have emerged in recent
weeks, the new allegations and the findings of the Pentagon
investigation indicate that sexually oriented tactics may have been
part of the fabric of Guantanamo interrogations, especially in 2003.

The inquiry uncovered numerous instances in which female
interrogators, using dye, pretended to spread menstrual blood on Muslim men, the official
said. Separately, in court papers and public statements, three detainees say that women
smeared them with blood.

The military investigation of U.S. detention and interrogation practices worldwide, led by
Vice Adm. Albert T. Church III, confirmed one case in which an Army interrogator took
off her uniform top and paraded around in a tight T-shirt to make a Guantanamo detainee
uncomfortable, and other cases in which interrogators touched the detainees suggestively,
the senior Pentagon official said.

The official, who spoke on the condition of anonymity because the report has not yet
been made public, said the fake blood was used on Muslim men before they intended to
pray, because some Muslims believe that "if a woman touches him prior to prayer, then

he's dirty and can't pray." Muslim men also believe that contact with women other than their wives diminishes religious purity.

Defense Department officials said they have reprimanded two female interrogators for such tactics. It is unclear whether military personnel, employees of other agencies or private contractors were involved.

The attorney interviews of detainees are the result of a Supreme Court decision last summer that gave the captives access to lawyers and the opportunity to challenge their incarceration in U.S. courts.

In previous documents, detainees have complained of physical abuse, including routine beatings, painful shackling, and exposure to extremes of hot and cold. Defense Secretary Donald H. Rumsfeld insisted then that detainees were treated "humanely," and Pentagon officials said terrorists were trained to fabricate torture allegations.

Some of the accounts resemble the sexual aspects of the humiliation of Iraqi prisoners at the U.S. prison at Abu Ghraib. Photographs that became public last year showed a servicewoman there holding naked prisoners on a leash and posing next to a pile of naked prisoners.

Pentagon officials said yesterday that wearing skimpy clothing or engaging in provocative touching and banter would be inappropriate interrogation techniques.

"I don't see that as being authorized by secretary of defense's approved interrogation techniques for Guantanamo," said Col. David McWilliams, a spokesman for the U.S. Southern Command in Miami, which oversees operations at Guantanamo Bay.

McWilliams said it is premature to comment on whether the detainee allegations are credible until a second military investigation that focuses on Guantanamo Bay abuse allegations is complete. The inquiry, which began in early January after the release of documents in which FBI agents said they witnessed abuse, is scheduled to be completed this month.

"That's exactly why we're doing an investigation," McWilliams said. "We're going to establish the facts and the truth."

Church's report found that interrogators used sexually oriented tactics and harassment to shock or offend Muslim prisoners, the senior Pentagon official said. The official said that the military would not condone "sexual activity" during interrogation, but that good interrogators "take initiative and are a little creative."

"They are trying to find the key that will get someone to talk to them. Using things that are culturally repulsive is okay as long as it doesn't extend to something prohibited by the

Geneva Conventions."

Attorneys for detainees scoffed at the Pentagon's insistence that the military can fairly investigate its own personnel. They noted that the Defense Department last fall initially dismissed torture allegations, insisting that detainees were trained at terrorist camps to lodge false claims.

Even detainee lawyers doubted that interrogators would spread menstrual blood on prisoners when a recently released British detainee first made the allegation in early 2004. A month ago, a Pentagon spokesman confirmed it had verbally reprimanded one female interrogator who, in early 2003, had smeared red dye from a marker on a detainee's shirt and told him it was blood.

In a yet-to-be-published book, former Army translator Erik Saar said he saw a female interrogator smear red dye on a Saudi man's face, telling him it was blood. Saar's account was first reported by the Associated Press last month. And Mamdouh Habib, an Australian man released from Guantanamo Bay last month, said he was strapped down while a woman told him she was "menstruating" on his face.

One lawyer, Marc Falkoff, said in an interview that when a Yemeni client told him a few weeks ago about an incident involving menstrual blood, "I almost didn't even write it down." He said: "It seemed crazy, like something out of a horror movie or a John Waters film. Now it doesn't seem ludicrous at all."

Some of the newly declassified accounts of detainees evoke scenes from a rock music video. German detainee Murat Kurnaz told his lawyer that three women in lacy bras and panties strutted into the interrogation room where he was sitting in chains. They cooed about how attractive he was and suggested "they could have some fun," he said.

When Kurnaz averted his eyes, he said, one woman sat on his lap, another rubbed her breasts against his back and massaged his chest and a third squatted near his crotch. He head-butted the woman behind him, he said, knocking her off him. All three ran out and a team of soldiers stormed in and beat him, he said.

Detainee lawyers likened the tactics to Nazis shaving the beards of orthodox Jews or artists dunking a crucifix in urine to shock Christians. "They're exploiting religious beliefs to break them down, to destroy them," said Michael Ratner of the Center for Constitutional Rights, which represents several dozen detainees. "What they're doing, it reminds me of a pornographic Web site -- it's like the fantasy of all these S&M clubs."

Falkoff said some of his clients have also been threatened with rape by male interrogators.

One soldier told another detainee, Muktar Warafi, that he had to start telling the truth or

he would be raped, according to Falkoff's notes of the interview. When he left the room, another person immediately came into the room and told Warafi: "That interrogator is new and doesn't know the rules. We apologize on his behalf. Now let's talk."

Yasein Esmail, a Yemeni detainee, said he had been interrogated more than 100 times since being "kidnapped" in a marketplace in Kabul, Afghanistan, and brought to Guantanamo Bay. He recounted to his lawyer that when he refused to talk in one interview, a female soldier entered wearing a tight T-shirt.

"Why aren't you married?" she reportedly asked Esmail. "You are a young man and have needs. What do you like?"

Esmail said "she bent down with her breasts on the table and her legs almost touching" him. "Are you going to talk," she asked, "or are we going to do this for six hours?"

*Researcher Julie Tate contributed to this report.*

© 2005 The Washington Post Company

Advertising Links                                                What's this?

**Compare Mortgage Offers**
Up to four free mortgage, refinance or home equity offers - one easy form.
www.nextag.com

**Mortgage Rates Hit Record Lows**
Get $150,000 loan for $690 per month. Refinance while rates are low.
www.lowermybills.com

**MyCashNow - $100 - $1,000 Overnight**
Payday Loan Cash goes in your account overnight. Very low fees. Fast decisions. Direct
deposit is not required. No credit check. Confidential - secure.
www.mycashnow.com