# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ALI SHAH MOUSOVI, et al.,** | : | |
| | : | **Case No. 1:05-CV-01124 (RMC)** |
| *Petitioners/Plaintiffs,* | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| v. | : | |
| | : | |
| **GEORGE W. BUSH, et al.,** | : | |
| | : | |
| *Respondents/Defendants.* | : | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION DIRECTING RESPONDENTS TO PROVIDE THE COURT AND PETITIONERS' COUNSEL WITH THIRTY DAYS' ADVANCE NOTICE OF ANY INTENDED TRANSFER FROM GUANTANAMO FOR PURPOSES OTHER THAN RELEASE**

Petitioners Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah Wakil, Sabar Lal, Wali Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar Mohammed, acting on their own behalf or through their Next Friends, rely on the following points and authorities in support of their motion under Rule 65 of the Federal Rules of Civil Procedure, LCvR 65.1, and the All Writs Act, 28 U.S.C. § 1651(a), requesting that the Court enter an order preliminarily enjoining Respondents from removing Petitioners from the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo") for any purpose other than release, unless the Court and counsel for Petitioners receive thirty (30) days' advance notice of such removal.

## I.     INTRODUCTION

Petitioners' request for injunctive relief arises from recent circumstances that may directly affect this Court's jurisdiction over and practical ability to adjudicate Petitioners' pending *habeas corpus* petition. On March 11, 2005, *The New York Times* reported

Respondents' intention to transfer hundreds of detainees from Guantanamo "to prisons in Saudi Arabia, Afghanistan and Yemen." Douglas Jehl, *Pentagon Seeks to Transfer More Detainees from Base in Cuba*, NEW YORK TIMES (Mar. 11, 2005).[1] The *New York Times* report stated that "[a] Feb. 5 memorandum from Defense Secretary Donald H. Rumsfeld calls for broader interagency support for the plan, starting with efforts to work out a significant transfer of prisoners to Afghanistan." *Id.* On April 26, 2005, the Department of Defense announced that 65 Guantanamo detainees have thus far been transferred to the control of other governments, and that "the department expects that there will be other transfers . . . ." *U.S. Department of Defense, News Release*, Apr. 26, 2005 (Exh. B to the Smith Decl.).

On July 7, 2005, counsel for Petitioners sought to obtain assurances from Respondents that they would provide thirty days' advance notice to the Court and counsel of any intended transfer of Petitioners from Guantanamo for purposes other than release. *See* Smith Decl. ¶ 2. Respondents refused to provide any such assurances and indicated that they will oppose any motion seeking such relief. *Id.*

Absent injunctive relief, Respondents could transfer Petitioners to the custody of Afghanistan or another third country without notice to the Court or counsel. In addition to exposing Petitioners to the substantial risks of torture and indefinite detention without charge, such a circumstance would as a practical matter eliminate Petitioners' ability to obtain *habeas* relief in this Court. Alternatively, Respondents could transfer Petitioners from Guantanamo to another U.S.-operated detention center overseas for continued indefinite detention.

---

[1]   *See* Exhibit A to the Declaration of R. Michael Smith in Support of Petitioners' Motion for Preliminary Injunction Directing Respondents to Provide the Court and Petitioners' Counsel with Thirty Days' Advance Notice of Any Intended Transfer from Guantanamo for Purposes Other Than Release ("Smith Decl.").

Petitioners seek narrowly tailored relief that will cause no harm to Respondents. The motion requests thirty days' notice of any transfer of Petitioners from Guantanamo for purposes other than release – *i.e.*, in those circumstances where Respondents lack an understanding with the receiving country that the intended transfer is for purposes of release only; or in the event that Respondents intend to transfer Petitioners to another U.S. detention facility overseas (*e.g.*, the U.S.-operated prison at the Bagram Air Base in Afghanistan). Such relief would allow a timely opportunity to challenge the transfer, if necessary.

Accordingly, Petitioners respectfully request that the Court preliminarily enjoin Respondents from removing Petitioners from Guantanamo for any purpose other than release, unless the Court and counsel for Petitioners receive thirty days' advance notice of such removal.

## II.    STATEMENT OF FACTS

On June 7, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah Wakil, Sabar Lal, Wali Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar Mohammed under 28 U.S.C. § 2241. Petitioners are citizens of Afghanistan detained by Coalition Forces in Afghanistan or Pakistan on dates unknown to counsel for Petitioners but known to Respondents. Petition ¶¶ 4, 6, 8, 10, 12, 14, 16-18. The Petition alleges that Petitioners are being held virtually *incommunicado* in military custody at Guantanamo without lawful basis, charge, access to counsel or any fair process by which they might challenge their designation and potentially indefinite detention as "enemy combatants."[2]

---

[2]    On or about July 8, 2005, Respondents filed a motion to stay all proceedings in this case pending the resolution of all appeals in *In re Guantanamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush*, No. 04-CV-1142 (RJL), 355

Petitioners have reason to believe that Respondents, without prior notice to the Court or counsel, may transfer them (a) to the custody of Afghanistan or another foreign country where they may be detained indefinitely without due process of law and may be subjected to torture; or (b) to a U.S.-operated detention facility in Afghanistan or another foreign country for continued, indefinite detention without due process of law. This belief is based on recent statements by the U.S. government and on credible news reports.

In January 2005, The Washington Post reported that the U.S. government was considering a proposal to "transfer of large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantanamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries." Dana Priest, *Long-Term Plan Sought for Terror Suspects*, WASHINGTON POST, at A1, Jan. 2, 2005 (Smith Decl., Exh. C). The report noted that:

> One approach used by the CIA has been to transfer captives it picks up abroad to third countries willing to hold them indefinitely and without public proceedings. The transfers, known as "renditions," depend on arrangements between the United States and other countries, such as Egypt, Jordan and Afghanistan, that agree to have local security services hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison officers. (*Id.*)

In February 2005, The New Yorker reported that the U.S. government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. The process of "extraordinary rendition" was originally "a program

---

F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005). On July 8, 2005, Petitioners filed a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 ("Order to Show Cause"). On July 8, 2005, Petitioners also filed an unopposed motion for entry of the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba. Because Respondents only allow travel to Guantanamo and privileged communications with detainees upon the entry of provisions similar to those described in the Amended Protective Order, undersigned counsel have not yet met or corresponded with Petitioners.

aimed at a small, discrete set of suspects – people against whom there were outstanding foreign

arrest warrants," but since September 11, 2001, the government has greatly expanded the

practice to include "a wide and ill-defined population that the Administration terms 'illegal

enemy combatants.' Many of them have never been publicly charged with any crime." Jane

Mayer, *Outsourcing Torture*, NEW YORKER (Feb. 14, 2005), *available at* http://www.new

yorker.com/fact/content/articles/050214fa_fact6 (last visited July 5, 2005).

In March 2005, The New York Times reported that the U.S. Department of

Defense was planning "a significant transfer" of detainees from Guantanamo to prisons in

Afghanistan. Douglas Jehl, *Pentagon Seeks to Transfer More Detainees from Base in Cuba*,

NEW YORK TIMES, Mar. 11, 2005 (Smith Decl., Exh. A). At a May 23, 2005 press conference

with Afghan President Hamid Karzai, President Bush stated that it was U.S. policy to send

Guantanamo detainees back to their "home countries" for continued detention:

> Our policy, as you know, has been to work our way through those
> who are being held in Guantanamo and send them back to the host
> countries, and we will do so over time, with the Afghan
> government. Part of the issue is to make sure there is a place
> where the prisoners can be held. As I explained to [President
> Karzai], that our policy is one where we want the people to be sent
> home, but, two, we've got make sure the facilities are there –
> facilities where these people can be housed and fed and guarded.

*President Welcomes Afghan President Karzai to the White House*, Transcript of May 23, 2005

Press Conference, *available at* http://www.whitehouse.gov/news/releases/2005/05/print/

20050523.html (last visited July 5, 2005). The Joint Declaration of the United States-

Afghanistan Strategic Partnership, issued on May 23, 2005, states that "the Afghan Government

intends to maintain capabilities for the detention, as appropriate, of persons apprehended in the

War on Terror." *See* White House Press Release (May 23, 2005), *available at* http://www.

whitehouse.gov/news/releases/2005/05/print/20050523-2.html (last visited July 5, 2005).

5

Respondents are well aware, however, that prisoners detained in Afghanistan are at risk of indefinite detention without due process and torture in prisons beyond the reach of the Afghan legal system. According to the U.S. State Department, in 2004, the Afghan intelligence agency operated at least two private prisons, "and there were unconfirmed reports of private detention facilities around Kabul and in northern regions of the country. Representatives of international agencies and the [Afghan Independent Human Rights Commission] were unable to gain access to these prisons during the year. . . . There were credible reports that some detainees were tortured to elicit confessions while awaiting trial." U.S. DEP'T OF STATE, *Country Reports on Human Rights Practices, Afghanistan* § 1(d) (Feb. 28, 2005), *available at* http://www.state. gov/g/drl/rls/hrrpt/2004/41737.htm; *see also id.* § 1(c) ("Prisoners reportedly were beaten, tortured, or denied adequate food."). Human Rights Watch has also documented "numerous cases of torture, beatings, and other mistreatment of persons in the custody of local Afghan military officials." *Enduring Freedom: Abuses by U.S. Forces in Afghanistan*, HUMAN RIGHTS WATCH, at 42-43 (Mar. 2004), *available at* http://hrw.org/reports/2004/afghanistan0304 (last visited July 5, 2005).

The U.S. government already maintains several detention centers in Afghanistan. Human Rights Watch's 2005 World Report for Afghanistan reports "numerous claims of human rights abuses" against U.S. forces at these detention centers, including "mistreatment of detainees, many of whom are held outside the protection of the Geneva Conventions." *World Report 2005; Afghanistan*, HUMAN RIGHTS WATCH, *available at* http://hrw.org/english/docs/ 2005/01/13/afghan9827_txt.htm (last visited July 5, 2005).[3]

---

[3]     Human Rights Watch has also reported claims that detainees in U.S. military detention facilities in Afghanistan have been subjected to extreme sleep deprivation, exposure to freezing temperatures, and severe beatings. *Enduring Freedom: Abuses by U.S. Forces*

On March 12, 2005, The New York Times reported that two Afghan prisoners died in U.S. custody at the Bagram detention center in December 2002 after being "chained to the ceiling, kicked and beaten by American soldiers in sustained assaults that caused their deaths." Douglas Jehl, *Army Details Scale of Abuse in Afghan Jail*, NEW YORK TIMES, at A1, Mar. 12, 2005 (Smith Decl. Exh. D). According to an Army report, the attacks on one detainee were so severe that "even if he had survived, both legs would have had to be amputated." *Id.*; *see also* Tim Golden, *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, NEW YORK TIMES, at A1, May 20, 2005 (Smith Decl. Exh. E). On May 12, 2005, The New York Times also reported a former Afghan police colonel's claim – made long before the abuses at Abu Ghraib in Iraq came to light – of being subjected to beating, kicking, sleep deprivation, taunts and sexual abuse while detained in U.S. detention centers in Afghanistan in July 2003. Carlotta Gall, *Afghan Gives Own Account of U.S. Abuse*, NEW YORK TIMES, at A1, May 12, 2005 (Smith Decl. Exh. F).

Because Petitioner Wali Mohammed Morafa was, on information and belief, originally detained in Pakistan, Petitioners also have reason to fear that Respondents may transfer him to Pakistan for continued, indefinite detention. Conditions in Pakistan's prisons are no better than those in Afghanistan. According to the U.S. State Department's 2004 Human Rights Practices Report for Pakistan:

> Security force personnel continued to torture persons in custody throughout the country. Human rights organizations reported that methods used included beating; burning with cigarettes; whipping the soles of the feet; prolonged isolation; electric shock; denial of food or sleep; hanging upside down; and forced spreading of the legs with bar fetters. Officials of the Human Rights Commission of Pakistan . . . estimated 5,000 cases of police torture annually;

---

*in Afghanistan*, HUMAN RIGHTS WATCH (Mar. 2004), *available at* http://hrw.org/reports/2004/afghanistan0304 (last visited July 5, 2005).

> the Lawyers for Human Rights and Legal Aid Madadgaar Project
> recorded 1,101 cases of torture during the year. At times, torture
> resulted in death or serious injury.

U.S. DEP'T OF STATE, *Country Reports on Human Rights Practices, Pakistan* § 1(c), *available at*

http://www.state.gov/g/drl/rls/hrrpt/2004/41743.htm. To date, the Department of Defense has

transferred 29 Guantanamo detainees to the control of the Pakistan government. *See* Exh. B to

the Smith Decl.

## III.   **ARGUMENT**

In *Rasul v. Bush*, the Supreme Court held that 28 U.S.C. § 2241 "confers on the

District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their

detention at the Guantanamo Bay Naval Base." 124 S. Ct. 2686, 2698 (2004). If Respondents

transfer Petitioners to the custody of another country without notifying the Court or counsel,

Petitioners may lose the opportunity to contest their detention in a United States court.

This Court has the power, under the All Writs Act, 28 U.S.C. § 1651(a), "to issue

injunctions to protect its jurisdiction." *S.E.C. v. Vision Comm'ns, Inc.*, 74 F.3d 287, 291 (D.C.

Cir. 1996); *Environmental Def. Fund, Inc. v. E.P.A.*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973)

(appellate court had inherent power under All Writs Act to enjoin non-parties to protect

jurisdiction over appeal). This Court may also issue a preliminary injunction under Rule 65 of

the Federal Rules of Civil Procedure "to preserve the status quo between the parties before the

court pending a decision on the merits of the case at hand." *In re Baldwin-United Corp.*, 770

F.2d 328, 338 (2d Cir. 1985).

Here, Petitioners seek minimal and non-intrusive relief – 30 days' notice of any

transfer for purposes other than release – to allow an opportunity to be heard in this Court should

Respondents seek a potentially irreversible change in Petitioners' detention status. "[F]ederal

courts may and should take such action as will defeat attempts to wrongfully deprive parties

entitled to sue in the Federal courts for the protection of their rights in those tribunals." *Abdah v.*

*Bush*, No. 04-CV-1254 (HHK), 2005 WL 711814, at *4 (D.D.C. Mar. 29, 2005) (granting

preliminary injunction requiring 30 days' notice of transfer; internal quotation and citation

omitted).

The weight of authority in this District strongly favors entry of Petitioners'

requested relief.  The Courts of this District have granted preliminary injunctive relief in seven

Guantanamo detainee cases.[4]  These decisions grant broader relief than Petitioners request here,

requiring notice even in cases of outright release.  In 15 other Guantanamo cases, the Courts of

this District have entered non-injunctive orders requiring 30 days' notice of transfer.[5]  Finally, in

_____

[4]     *See Abdah v. Bush*, No. 04-CV-1254 (HHK) (RMC), 2005 WL 589812 (D.D.C. Mar. 12,
2005) (granting temporary restraining order); *Abdah v. Bush*, No. 04-CV-1254 (HHK),
2005 WL 711814 (D.D.C. Mar. 29, 2004) (granting preliminary injunction); *Al-Joudi v.
Bush*, No. 05-CV-301 (GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005) (same); *Al-Marri v.
Bush*, No. 04-CV-2035 (GK), 2005 WL 774843 (D.D.C. Apr. 4, 2005) (same);
*Al-Mohammed v. Bush*, No. 05-CV-247 (HHK) (Order dated Mar. 30, 2005) (same);
*Al-Adahi v. Bush*, No. 05-CV-280 (GK) (Order dated Apr. 28, 2005) (same); *Anam v.
Bush*, No. 04-CV-1194 (HHK) (Order dated May 9, 2005) (same); *Alhami v.  Bush*,
No. 05-CV-359 (GK) (Order dated June 9, 2005) (same).  *But see Almurbati v. Bush*,
No. 04-CV-1227 (RBW) (Order dated Apr. 13, 2005, denying preliminary injunction but
requiring government, upon transfer, to certify that transfer was not for purposes of
continued detention on behalf of U.S. or to extinguish jurisdiction); *Al-Anazi v. Bush*,
No. 05-CV-345 (JDB), 2005 WL 1119602 (D.D.C. Apr. 21, 2005) (denying motion for
preliminary injunction).

[5]     *See Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (Order dated Mar. 31, 2005; requiring 30-
days' notice prior to transfer); *Al-Wazan v. Bush*, No. 05-CV-329 (PLF) (Order dated
Apr. 1, 2005) (same); *Al-Shiry v. Bush*, No. 05-CV-490 (PLF), 2005 WL 1384680
(D.D.C. Apr. 1, 2005) (same); *Kurnaz v. Bush*, No. 04-CV-1135 (ESH), 2005 WL
839542 (D.D.C. Apr. 12, 2005) (same); *Ameziane v. Bush*, No. 05-CV-392 (ESH), 2005
WL 839542 (D.D.C. Apr. 12, 2005) (same); *Qayed v. Bush*, No. 05-CV-454 (RMU)
(Order dated Apr. 6, 2005) (same); *Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated
Apr. 6, 2005) (same); *El Banna v. Bush*, No. 04-CV-1144 (RWR) (Order dated Apr. 8,
2005) (same); *Abdullah v. Bush*, No. 05-CV-23 (RWR) (Order dated Apr. 8, 2005)
(same); *Al Rashaidan v. Bush*, No. 05-CV-586 (RWR) (Order dated Apr. 8, 2005)
(same); *Adem v. Bush*, No. 05-CV-723 (RWR) (Order dated June 6, 2005) (same); *Mokit
v. Bush*, No. 05-CV-621 (PLF) (Order dated June 16, 2005) (same); *Al-Hela v. Bush*,
No. 05-CV-1048 (RMU) (Order dated June 3, 2005) (same); *Al Shamri v. Bush*, No. 05-

four Guantanamo cases, the Courts of this District have entered stay orders restricting all

transfers pending the resolution of the appeals in *In re Guantanamo Detainees Cases*,

No. 05-8003 (D.C. Cir.), and *Khalid v. Bush*, Nos. 05-5062, 05-5063 (D.C. Cir.).[6]

An unannounced transfer of Petitioners from Guantanamo to Afghanistan,

Pakistan or another country for continued, indefinite detention without charge would threaten

this Court's ability to adjudicate Petitioners' challenge to the legality of their detention under

*Rasul*. For this reason, and because Petitioners satisfy the requirements for a preliminary

injunction, the Court should enjoin Respondents from transferring Petitioners from Guantanamo

for any purpose other than release, unless they provide the Court and counsel with 30 days' prior

notice of the intended transfer.

### A.    PRELIMINARY INJUNCTION STANDARD

A court considering a preliminary injunction request must examine four factors:

(1) whether Petitioners will be irreparably harmed if an injunction is not granted; (2) whether

there is a substantial likelihood Petitioners will succeed on the merits; (3) whether an injunction

will substantially injure Respondents; and (4) whether the public interest will be furthered by the

injunction. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001). "These factors interrelate on a

sliding scale and must be balanced against each other." *Serono Labs. v. Shalala*, 158 F.3d 1313,

1317-18 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction

---

CV-551 (RWR) (Order dated May 10, 2005) (same); *Al Daini v. Bush*, No. 05-CV-634
(RWR) (Order dated June 6, 2005) (same).

[6]     *See El-Mashad v. Bush*, No. 05-CV-270 (JR) (Order dated Apr. 7, 2005, entering stay
applicable to release, rendition or transfer); *Qassim v. Bush*, No. 05-CV-497 (JR) (Order
dated Apr. 13, 2005) (same); *Salahi v. Bush*, No. 05-CV-569 (JR) (Order dated Apr. 15,
2005) (same); *Aziz v. Bush*, No. 05-CV-492 (JR) (Order dated Apr. 22, 2005) (same).

may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable harm on the movant." *Id.*

Here, Petitioners will unquestionably suffer irreparable harm if Respondents transfer them to a country where they are at great risk of being tortured and over which this Court has no jurisdiction. Given that the requested relief will in no way harm Respondents and is in the public interest, the balance of hardships heavily favors Petitioners. Further, Petitioners can show a substantial likelihood of success on the merits of their Petition, based on the Supreme Court's *Rasul* decision and Judge Joyce Hens Green's decision in *In re Guantanamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), that Guantanamo detainees have enforceable rights under the Due Process Clause of the Fifth Amendment and the Geneva Conventions. At the very least, Petitioners' claims raise serious questions going to the merits that are a fair ground for litigation. The Court should therefore grant Petitioners' request for a preliminary injunction.

**B.     A PRELIMINARY INJUNCTION IS WARRANTED REQUIRING RESPONDENTS TO PROVIDE THIRTY DAYS' ADVANCE NOTICE OF ANY TRANSFER OF PETITIONERS FOR PURPOSES OTHER THAN RELEASE**

**1.     Petitioners Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted**

Petitioners stand to suffer immeasurable and irreparable harm – ranging from cruel, inhuman or degrading treatment to torture and possible death – if they are transferred for continued detention in Afghanistan or Pakistan.  Such a transfer would also circumvent their rights under *Rasul* to adjudicate the legality of their detention in this Court.

In *Al-Joudi v. Bush,* No. 05-CV-301 (GK), Judge Kessler found these harms to be "obvious and substantial":

> First [Petitioners] face the possibility of transfer to a country where they might be tortured or indefinitely confined, which undeniably would constitute irreparable harm.  While the Government presents declarations that attempt to mitigate these concerns, they neither refute nor render them frivolous. . . . In short, the threatened injury is not merely remote and speculative; it is a serious potential threat. Second, Petitioners face the threat of irreparable harm based on the potential elimination of their habeas claims. . . . Since such a turn of events would certainly constitute a threat of irreparable harm, an order preserving the status quo in this case is appropriate. . . . [T]he Government is clearly maintaining its right to transfer [Petitioners] at any time . . . . Thus, the threats are not distant or speculative, and transfer could occur in the near future.

2005 WL 774847, at *4 (D.D.C. Apr. 4, 2005).

In granting an application for a temporary restraining order in *Abdah v. Bush,* No. 04-CV-1254 (HHK) (RMC), this Court concluded that the loss of the right to adjudicate *habeas* claims could constitute irreparable harm:

> Were the Petitioners to be transferred to the control of a foreign country, they would effectively lose their rights to pursue their *habeas* claims in this country.  The Court finds that their injury would be continued detention outside the jurisdiction of the U.S. courts – courts that are actively reviewing the constitutionality of

> that very detention. While the Supreme Court has granted them a
> right of access to our court system, such a transfer would terminate
> that right, insofar as it sounds in *habeas corpus*, because U.S.
> courts would no longer have control over their warden.
> Presumably, the Petitioners would suffer no harm if the
> Government were to transfer them to Yemen for release; that is the
> goal of their *habeas* petitions. A transfer with continued
> indeterminate detention with no right of review or further court
> access poses a very different set of parameters. . . .
> [A] continuation of their detention without redress to assess its
> legality could constitute irreparable harm to the Petitioners.

2005 WL 589812, *4 (D.D.C. Mar. 12, 2005). In granting the *Abdah* petitioners' subsequent

request for a preliminary injunction, Judge Kennedy agreed that "[s]uch transfers would

eliminate any opportunity for Petitioners to ever obtain a fair adjudication of their fundamental

right to test the legitimacy of [their] executive detention." *Abdah v. Bush*, 2005 WL 711814, at

*4 (D.D.C. Mar. 29, 2004) (internal quotation omitted).

As in *Al-Joudi* and *Abdah*, this Court should find that the transfer without notice

of Petitioners to Afghanistan, Pakistan or another country for continued detention would

constitute irreparable harm. In addition, Petitioners are likely to succeed on the claim that their

detentions are illegal and unconstitutional, *see infra* Part III.B.3. The fact that transfer for

purposes other than release would potentially eliminate their meritorious claims is further

evidence of irreparable harm. *See United States v. Bogle,* 855 F.2d 707, 710-711 (11th Cir.

1988) ("[U]nnecessary deprivation of liberty clearly constitutes irreparable harm."); *Jolly v.

Coughlin,* 76 F.3d 468, 482 (2nd Cir. 1996) (unconstitutional confinement raises presumption of

irreparable harm).

## 2. Any Burden on Respondents Resulting from the Requested Injunction Is Far Outweighed by the Harm to Petitioners

In contrast to the harm Petitioners will suffer, Respondents can suffer no

conceivable harm from complying with a request for 30 days' prior notice of transfer. A

preliminary injunction here would merely maintain the status quo that Respondents have created

and enforced for years.

In *Al-Joudi*, Judge Kessler found that the balance of harms heavily favored

Petitioners:

> The Court fails to see any injury whatsoever that the Government
> would suffer from granting the requested preliminary injunction.
> Petitioners request only 30 days' notice of transfer – a narrow and
> discrete request that would impose no burden on the Government.
> Beyond "vague premonitions" that such relief would harm the
> executive's ability to conduct foreign policy, there is no concrete
> evidence that such notice actually will intrude upon executive
> authority. . . . For example, granting Petitioners' request for 30
> days' notice of transfer would not require the Court to second-
> guess foreign policy decisions of the Executive, would not require
> the Government to divulge information relating to its negotiations
> with foreign governments, and would not prevent the Government
> from speaking with one voice.  In weighing the respective
> hardships imposed upon the parties, the balance clearly tilts in
> favor of Petitioners.

*Al-Joudi,* 2005 WL 774847, at *5 (internal citation omitted); *see also Abdah*, 2005 WL 711814,

at *6 ("While the injunction Petitioners seek might restrict or delay Respondents with respect to

one aspect of managing Petitioners' detention, such a consequence does not outweigh the

imminent threat facing Petitioners with respect to the *entirety* of their claims before the court.").

Because any potential harm to Respondents from entry of the requested injunction

is vague, speculative and vastly outweighed by the potential harm to Petitioners, the Court

should require Respondents to provide 30 days' prior notice of any intended transfer for purposes

other than release.

**3.      Petitioners Are Likely to Succeed on the Merits of Their Claims**

The Court should also find that Petitioners are likely to succeed on the merits of

their *habeas corpus* claims.  They have properly invoked the jurisdiction of this Court.  *See*

*Rasul*, 124 S. Ct. at 2698. In *Rasul*, the Supreme Court strongly suggested that Guantanamo

detainees had substantive rights that could be redressed under § 2241:

> Petitioners' allegations – that, although they have engaged neither
> in combat nor in acts of terrorism against the United States, they
> have been held in Executive detention for more than two years in
> territory subject to the long-term, exclusive jurisdiction and control
> of the United States, without access to counsel and without being
> charged with any wrongdoing – unquestionably describe "custody
> in violation of the Constitution or laws or treaties of the United
> States."

*Id.* at 2698 n.15 (quoting 28 U.S.C. § 2241(c)(3)). In concluding that Guantanamo detainees

have stated actionable claims under the Due Process Clause of the Fifth Amendment and the

Geneva Conventions, Judge Green stated that "it is difficult to imagine that the Justices would

have remarked that the petitions 'unquestionably describe custody in violation of the

Constitution or laws or treaties of the United States' unless they considered the petitioners to be

within a territory in which constitutional rights are guaranteed." *In re Guantanamo Detainees*

*Cases*, 355 F. Supp. 2d at 463. For Respondents to transfer Petitioners for continued detention in

countries that afford no such protections would flout Judge Green's ruling and defeat the Court's

jurisdiction.

      Respondents argue in the appeals of Judges Green and Leon's conflicting rulings

that *Rasul* is an empty vessel – that the Court of Appeals should interpret that decision as merely

granting the right to file an entirely meaningless piece of paper. The Supreme Court, however,

indisputably expected the district courts to adjudicate the merits of the detainees' claims. *Id.* at

2699 (remanding "for the District Court to consider in the first instance the merits of petitioners'

claims"). Respondents also argue in the appeals that the district courts must defer to the results

of the Department of Defense's Combatant Status Review Tribunals ("CSRTs") and dismiss the

detainees' petitions. Again, the Supreme Court has already resolved this issue. In *Hamdi v.*

*Rumsfeld*, 124 S. Ct. 2633 (2004), the Supreme Court held that due process required, at a

minimum, "notice of the factual basis for [a petitioner's] classification, and a fair opportunity to

rebut the Government's factual assertions before a neutral decision maker." *Id.* at 2648.  By

design and in practice, the CSRT proceedings lack these basic protections. *See In re*

*Guantanamo Detainee Cases*, 355 F. Supp. 2d at 468-78.

> In *Abdah v. Bush,* this Court found that:
>
>> Petitioners have at least a fifty-fifty chance of prevailing on their
>> constitutional claims before the Court of Appeals and . . . they
>> raise serious arguments that require more deliberative
>> consideration concerning whether removing them from the Court's
>> jurisdiction, while insisting on continued detention, is within the
>> province of the Executive.

2005 WL 589812, at *4.  In granting a preliminary injunction in *Al-Joudi v. Bush*, Judge Kessler

agreed, finding that "even though the mathematical probability of success is impossible to assess,

there can be no doubt that the questions raised here are so 'serious, substantial, difficult, and

doubtful,' as to make them a 'fair ground for litigation.'" 2005 WL 774847, at *5 (quoting

*Washington Metro. Area Transit Comm'n*, 559 F.2d at 844).

> In a case such as this, where the risk of irreparable harm is so great, the Court

should find, as it did with the *Abdah* TRO request, that Petitioners have made a sufficient

showing of likelihood of success on the merits.[7]

---

[7]     Because Respondents have moved to stay this case pending resolution of the appeals in
*In re Guantanamo Detainees Cases* and *Khalid v. Bush*, the Court should also grant the
requested injunction to prevent the harm that Federal Rule of Appellate Procedure 23(a)
seeks to avoid.  Rule 23(a) provides:

> Pending review of a decision in a habeas corpus proceeding commenced
> before a court, justice, or judge of the United States for the release of a
> prisoner, the person having custody of the prisoner must not transfer
> custody to another unless a transfer is directed in accordance with this
> rule.

### 4.    The Public Interest Favors Injunctive Relief

Finally, public policy favors requiring Respondents to provide advance notice to the Court and counsel of any intended removal of Petitioners from the Court's jurisdiction for purposes other than release. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

In *Al-Joudi v. Bush*, Judge Kessler found that "the public interest undeniably is served by ensuring that Petitioners' constitutional rights can be adjudicated in an appropriate manner. . . . Retaining jurisdiction over this case is essential to protecting that public interest." 2005 WL 774847, at *6. Likewise, in *Abdah v. Bush*, Judge Kennedy concluded:

> Petitioners' current designation as enemy combatants is not a foregone conclusion; challenges to the accuracy and legitimacy of the government's determination that Petitioners have engaged in hostilities against the United States, or aided those who have, are the very core of Petitioners' underlying habeas claims. . . . [T]he public has a strong interest in ensuring that its laws do not subject individuals to indefinite detention without due process.

2005 WL 711814, at *6. No matter how satisfied Respondents may be that their actions are lawful, the public good requires that federal litigants – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest their transfer into the hands of

---

Rule 23(a) "was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) (citation omitted). While Petitioners' case is not on appeal, Respondents have argued in moving for a stay that the pending appeals will address "the core issues" in their Petition. Mot. to Stay, at 1. Having directly linked Petitioners' claims with those on appeal, Respondents should not be permitted to extinguish Petitioners' claims by transferring them beyond the Court's jurisdiction. The Court has power to issue an injunction to prevent such an unjust result. *See* 28 U.S.C. § 1651(a); *cf. Abdah v. Bush*, 2005 WL 711814, at *5 ("[Rule 23(a)'s] application here is consistent with both the text of the rule and its underlying purpose.").

those who might torture them or detain them indefinitely. Accordingly, the public interest favors the entry of the requested injunction.

## CONCLUSION

Fair notice and an opportunity to be heard are the bedrock principles of due process. Petitioners' requested relief is concrete, narrow, and minimally burdensome. For the reasons set forth above, Petitioners respectfully request that the Court grant their application for a preliminary injunction prohibiting Respondents from removing Petitioners from Guantanamo for purposes other than release without 30 days' advance notice to the Court and counsel.

Dated: July 8, 2005

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: _R. Michael Smith_
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C. 20006
202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
212.698.3500

George G. Gordon
Peter M. Ryan
DECHERT LLP
1717 Arch Street
Philadelphia, PA 19103-2793
215.994.4000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ALI SHAH MOUSOVI, et al.,** | : | |
| | : | **Case No. 1:05-CV-01124 (RMC)** |
| *Petitioners/Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **GEORGE W. BUSH, et al.,** | : | |
| | : | |
| *Respondents/Defendants.* | : | |
| | : | |

## ORDER

Upon consideration of Petitioners' Motion for Preliminary Injunction Directing Respondents to Provide the Court and Petitioners' Counsel with Thirty Days' Advance Notice of Any Intended Transfer from Guantanamo for Purposes Other Than Release, the memorandum of points and authorities in support thereof, and any response thereto, it is hereby

ORDERED that the motion is granted. It is further

ORDERED that Respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of the Court's Order by personal service or otherwise, shall not remove Petitioners from the Guantanamo Bay Naval Base for any purpose other than release, unless the Court and counsel for Petitioners receive thirty (30) days' advance notice of such removal.

**SO ORDERED.**

Date: _____, 2005

_____
ROSEMARY M. COLLYER
United States District Judge

Attorneys to be noticed:

R. Michael Smith
D.C. Bar No. 372654
Michael.Smith@dechert.com
DECHERT LLP
1775 Eye Street, N.W.
Washington, D.C.  20006
(202) 261-3300

Preeya M. Noronha
Preeya.Noronha@usdoj.gov
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7226
Washington, D.C.  20530
(202) 514-3338