IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SHAH MOUSOVI, et al., | Case No. 1:05-CV-01124 (RMC) |
| *Petitioners/Plaintiffs,* | ORAL ARGUMENT REQUESTED |
| v. | |
| GEORGE W. BUSH, et al., | |
| *Respondents/Defendants.* | |

**PETITIONERS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS AND REPLY BRIEF IN SUPPORT OF PETITIONERS' MOTION FOR IMMEDIATE ISSUANCE OF A WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE UNDER 28 U.S.C. § 2243**

Petitioners Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah Wakil, Sabar Lal, Wali Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar Mohammed, acting on their own behalf and/or through their Next Friends, respectfully submit the following Joint Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings and Reply Brief in Support of Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243.

I.   **INTRODUCTION**

On June 7, 2005, undersigned counsel filed a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Petitioners under 28 U.S.C. § 2241. The Petition alleges that Petitioners are being held virtually *incommunicado* in military custody at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo"), without lawful basis, charge, access to counsel or any fair process by which

they might challenge their designation and potentially indefinite detention as "enemy combatants."

On July 11, 2005, Respondents filed a motion to stay all proceedings in this case pending the resolution of all appeals in *In re Guantanamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush*, No. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005). Respondents argue that, because the "core claims" of the Petition are at issue in the appeals, "[i]t makes no sense for proceedings related to the merits . . . to go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals . . . will determine the legal analyses applicable to [the Petition] and, indeed, whether and how this case should proceed." Mot. to Stay, at 1, 9-10.

A stay is inappropriate, however, because Respondents have not even tried to satisfy the stringent requirements for a stay pending appeal. In *Rasul v. Bush*, 124 S. Ct. 2686 (2004), the Supreme Court held that federal district courts have jurisdiction to hear the *habeas corpus* claims of Guantanamo detainees, noting that their allegations "unquestionably describe custody in violation of the Constitution or laws or treaties of the United States." *Id.* at 2698 n.15 (internal quotation omitted). Respondents' contention on appeal that the detainees have no rights whatsoever will not succeed. Respondents have made no credible argument that they will suffer injury absent a stay, and they completely ignore the irreparable injury Petitioners continue to suffer from years of illegal and brutal detention. Finally, the public's interest in avoiding the violation of constitutional rights weighs heavily against the entry of a stay.

Respondents, moreover, have provided no justification whatsoever for their suggestion that the Court should allow them to continue to keep secret the reasons for Petitioners' detention. Petitioners have been detained for years, and Respondents have, for years, been aware of the alleged bases for the detentions. The Court should therefore order Respondents to submit factual returns for each Petitioner immediately.

Accordingly, Petitioners respectfully request that the Court (1) deny Respondent's motion to stay; (2) grant Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause under 28 U.S.C. § 2243; and (3) issue a writ of habeas corpus or an order to show cause, returnable by Respondents in three days, or at most twenty days, as provided by § 2243.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

In or around October 2001, a coalition of forces led by the United States military ("Coalition Forces") defeated Taliban government forces and deposed the Taliban regime. Petition ¶ 24. On dates unknown to counsel for Petitioners, but known to Respondents, Coalition Forces took custody of Petitioners. *Id.* ¶ 26. After Petitioners were taken into custody, Coalition Forces transferred them to Guantanamo, where they have been held ever since, with little or no outside contact. *Id.* ¶ 27.

Petitioners are not and never have been enemy combatants. *Id.* ¶ 25. They have never been part of, or supported, forces hostile to the United States or its coalition partners in Afghanistan. *Id.* They have never engaged in armed conflict against Coalition Forces or attempted to cause any harm to Coalition Forces personnel or property. *Id.*

---

[1]     The facts described herein are as alleged in the Petition.

On June 7, 2005, Petitioners, acting on their own behalf and/or through their Next Friends, filed the Petition, alleging that they are being detained in violation of the common law, as codified, the Constitution, laws and treaties of the United States, and customary international law. On July 8, 2005, Petitioners filed (1) a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243; (2) a Motion for Preliminary Injunction Directing Respondents to Provide the Court and Counsel with Thirty Days' Advance Notice of Any Intended Transfer from Guantanamo for Purposes Other Than Release; and (3) an Unopposed Motion for Entry of the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, 344 F. Supp. 2d 174 (D.D.C. 2004).

Respondents have moved to stay all proceedings in this case. Respondents assert that Petitioners, who have already been held without charge for years, should await the outcome of all appeals in other Guantanamo *habeas corpus* cases now pending in the Court of Appeals, and ultimately to be decided in the United States Supreme Court.

### III.   ARGUMENT

#### A.   RESPONDENTS HAVE NOT EVEN ATTEMPTED TO SATISFY THE REQUIREMENTS FOR A STAY PENDING APPEAL

In *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F. 2d 841 (D.C. Cir. 1977), the District of Columbia Circuit identified the four well-established requirements that Respondents must satisfy in order to justify a stay pending appeal. Respondents must show that: (1) they are likely to prevail on the appeal; (2) they will be irreparably injured absent a stay; (3) the issuance of such a stay will not substantially harm Petitioners; and (4) the public interest favors a stay. *Id.* at 843 (citing *Virginia Petroleum*

*Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Respondents' motion to stay does not even attempt to satisfy these requirements.

### 1. Under the U.S. Supreme Court's Decision in *Rasul v. Bush*, Respondents Are Not Likely to Prevail on Appeal

The "core legal issue" on appeal has already been decided by the United States Supreme Court. In *Rasul v. Bush*, 124 S. Ct. 2686 (2004), the Supreme Court held that Guantanamo detainees have a statutory right to seek *habeas* relief from federal district courts. Five justices concluded that this right was "clear":

> In the end, the answer to the question presented is clear. Petitioners contend that they are being held in federal custody in violation of the laws of the United States. No party questions the District Court's jurisdiction over petitioners' custodians. Section 2241, by its terms, requires nothing more. We therefore hold that § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base.

*Id.* at 2698 (citation omitted). In a footnote to this passage, the majority strongly suggested that the Guantanamo detainees had substantive rights that could be redressed under § 2241:

> Petitioners' allegations – that, although they have engaged neither in combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing – unquestionably describe "custody in violation of the Constitution or laws or treaties of the United States."

*Id.* at 2698 n.15 (quoting 28 U.S.C. § 2241(c)(3)). The meaning of footnote 15 in *Rasul* is undeniable. "[I]t is difficult to imagine that the Justices would have remarked that the petitions 'unquestionably describe custody in violation of the Constitution or laws or treaties of the United States' unless they considered the petitioners to be within a territory in which constitutional rights are guaranteed." *In re Guantanamo Detainees Cases*, 355 F. Supp. 2d at 463.

The *Rasul* Court concluded by affirming the role of the district courts in cases such as Petitioners':

> Whether and what further proceedings may become necessary *after respondents make their response to the merits of petitioners' claims* are matters that we need not address now. What is presently at stake is only whether the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing. Answering that question in the affirmative, we reverse the judgment of the Court of Appeals and remand *for the District Court to consider in the first instance the merits of petitioners' claims.*

*Id.* at 2699 (emphasis added). Respondents argue in the appeals that *Rasul* was an empty vessel – that the Court of Appeals should interpret that decision as merely granting the right to file an entirely meaningless piece of paper. The Supreme Court, however, indisputably expected the district courts to adjudicate the merits of the detainees' claims.

Respondents also argue in the appeals that the district courts must defer to the results of the Department of Defense's Combatant Status Review Tribunals ("CSRTs") and dismiss the detainees' petitions. Again, the Supreme Court has already resolved this issue. In *Hamdi v. Rumsfeld*, 124 S. Ct. 2633 (2004), the Supreme Court held that due process required, at a minimum, "notice of the factual basis for [a petitioner's] classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decision maker." *Id.* at 2648. By design and in practice, the CSRT proceedings lack these basic protections. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 468-78. Moreover, the Supreme Court concluded in *Rasul* that the detainees may proceed on *habeas* grounds, 124 S. Ct. at 2698, and only Article III judges may hear such petitions, 28 U.S.C. § 2241(a).

Respondents cannot make the required "strong showing" that they are likely to prevail on appeal. *Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843. Their

motion to stay does not even try to do so. A debatable showing on the merits may not be fatal to a stay request in "a case in which the other three factors strongly favor interim relief." *Id.* This is not such a case however. Respondents make *no* showing as to their likelihood of success on appeal, and their showing as to the other factors is anemic. *Rasul* and *Hamdi* foreclose Respondents' contention that Petitioners' only right is to file a moribund petition for relief. There is therefore no reason to stay the resolution of Petitioners' claims.

### 2. Respondents Have Entirely Failed to Show That They Will Suffer Irreparable Harm Absent a Stay

The phrase "irreparable injury" never even appears in Respondents' motion to stay. Respondents unconvincingly claim that requiring a factual return in response to the Petition would result in "an immense logistical burden" on the government. Mot. to Stay, at 12. An unsubstantiated claim of administrative burden, however, is not irreparable injury. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. Respondents have not – and cannot – show that they will suffer irreparable injury absent a stay.

In *Landis v. North American Co.*, 299 U.S. 248 (1936), the Supreme Court held that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. The movant for such a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. Here, Respondents' claim of hardship is more than a little suspect. In ordering Respondents to produce factual returns in seven other detainee cases, Judge Green noted that "[m]ost, if not all, of the petitioners who have not yet received factual returns were

initially detained three years ago and have remained in custody since that time. Respondents must be able to provide forthwith the factual bases for the initial detention and continued custody . . . ." *See In re Guantanamo Detainee Cases*, No. 02-CV-299 (CKK), *et al.* (Order dated Oct. 29, 2004);[2] *see also Tumani et al. v. Bush et al.*, No. 05-CV-526 (RMU) (Order dated Apr. 19, 2005, finding that "the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns"), attached as Exh. B to the Smith Decl.[3]

By contrast, a stay of all proceedings in this case promises far greater than a "fair possibility" of damage to Petitioners. As is described below, the balance of harms weighs decidedly against the entry of a stay.

### 3. Petitioners Will Suffer More Irreparable Harm In the Event of a Stay of All Proceedings

Any balancing of harms must begin with the recognition that Petitioners have been incarcerated virtually *incommunicado* for years without charge, access to counsel or any meaningful due process protections. Further, the government has recently released military and other federal agency documents confirming reports from released detainees and news

---

[2] *See* Exhibit A to the Declaration of R. Michael Smith in Support of Petitioners' Joint Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings and Reply Brief in Support of Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 ("Smith Decl.").

[3] Numerous Judges in this District have issued Orders to Show Cause in other Guantanamo *habeas corpus* cases. *See, e.g., El-Banna v. Bush*, No. 04-CV-1144 (RWR) (Order dated July 23, 2004); *Abdah v. Bush*, No. 04-CV-1254 (HHK) (Order dated Aug. 6, 2004); *El-Mashad v. Bush*, No. 05-CV-270 (JR) (Order dated Apr. 7, 2005); *Al Joudi v. Bush*, No. 05-CV-301 (GK) (Order dated Mar. 7, 2005); *Ameziane v. Bush*, No. 05-CV-392 (ESH) (Order dated Mar. 10, 2005); *Batarfi v. Bush*, No. 05-CV-409 (EGS) (Order dated Mar. 9, 2005); *Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (Order dated Mar. 22, 2005). *See* Exhs. A-G to Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 (filed July 8, 2005).

organizations that Guantanamo detainees have been subjected to systematic physical and mental abuse that can only be described as torture.[4]

Some of the abuses known to have occurred include:

- A detainee was made to "sit[] on the floor of the interview room with an Israeli flag draped around him, loud music being played and a strobe light flashing." Smith Decl., Exh. C;

- Detainees have been "chained hand and foot in a fetal position to the floor, with no chair, food, or water. Most times they had urinated or defacated [sic] on themselves, and had been left there for 18, 24 hours or more." *Id.* Exh. D;

- Detainees have been exposed to extreme cold: "[T]he air conditioning had been turned down so far and the temperature was so cold in the room, that the barefooted detainee was shivering with cold. When I asked the MP's what was going on, I was told that the interrogators from the day prior had ordered this treatment, and the detainee was not to be moved." *Id.*;

- Detainees have been exposed to extreme heat: "[T]he A/C had been turned off, making the temperature in the unventilated room probably well over 100 degrees. The detainee was almost unconscious on the floor, with a pile of hair next to him. He had apparently been literally pulling his hair out throughout the night." *Id.*;

- Detainees have been subjected to physical and sexual abuse from female interrogators: "The detainee was shackled and his hands were cuffed to his waist. SA Clemente observed Sgt. Lacey apparently whispering in the detainee's ear, and caressing and applying lotion to his arms (this was during Ramadan when physical contact with a woman would have been particularly offensive to a Moslem male). On more than one occasion the detainee appeared to be grimacing in pain . . . . SA Clemente asked what had happened to cause the detainee to grimace in pain. The marine said Sgt. Lacey had grabbed the detainee's thumbs and bent them backwards and indicated that she also grabbed his genitals. The marine also implied that her treatment of that detainee was less harsh than her treatment of others by indicating that he had seen her treatment of other detainees result in the detainees curling into a fetal position on the floor and crying in pain." *Id.* Exh. E.

Because undersigned counsel have been unable to confer directly with Petitioners, only Respondents know whether Petitioners have been subjected to further abuse. Given the

---

[4] These documents, attached as Exhibits C through E to the Smith Declaration, were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. *See American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.).

apparent prevalence of the practices described above, and Respondents' unwillingness to file a factual return to the Petition, the burden of any such uncertainty should fall on Respondents.

Respondents' motion for a stay never mentions the possibility of harm to Petitioners, although Respondents bear the burden to show that the balance of harms favors a stay. *Washington Metropolitan Area Transit Comm'n*, 559 F.2d at 843; *id.* at 844 (stay is appropriate "when little if any harm will befall other interested persons"). "[U]nnecessary deprivation of liberty clearly constitutes irreparable harm." *United States v. Bogle*, 855 F.2d 707, 710-711 (11th Cir. 1988); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2nd Cir. 1996) (unconstitutional confinement raises presumption of irreparable harm). In the face of the virtual certainty that a stay "will work damage" to Petitioners by needlessly perpetuating their illegal confinement, Respondents have entirely failed to present the "clear case of hardship" that the Supreme Court required in *Landis*. 299 U.S. at 255.

The District of Columbia Circuit has held that staying one case until the completion of proceedings in another requires a finding that the movant's "need overrides the injury to the parties being stayed." *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (invalidating total stay of proceedings pending completion of related appeals). Respondents cannot possibly satisfy this requirement. "This consideration is of particular importance where the claim being stayed involves a not insubstantial claim of present and continuing infringement of constitutional rights." *Id.* Here, Petitioners allege present and continuing violations of the most fundamental constitutional and legal protections.[5]

---

[5]     Respondents argue that the Court would retain jurisdiction to intervene in "emergency" circumstances (Mot. to Stay, at 10 n.7), as if Petitioners' years of confinement without notice of the cause for their detention or being given a real opportunity to challenge that cause is not sufficient in and of itself to justify immediate judicial intervention. It is

Petitioners have been imprisoned for years. Should a stay be granted, their confinement will continue at least another full year without charge or redress. Oral argument for the cases on appeal is scheduled to occur on October 6, 2005. The District of Columbia Circuit's decisions will be appealed to the Supreme Court.[6] At the earliest, the Supreme Court could consider the cases during October Term 2006. Even assuming expedited briefing and consideration, however, the Supreme Court would not likely issue a decision until sometime in 2007. In the meantime, some of the Petitioners will have entered their fifth year of illegal detention, with only limited access to counsel. Indeed, if Respondents succeed in avoiding their duty under 28 U.S.C. § 2243 to provide a factual return, *see* Mot. to Stay, at 11, neither counsel nor Petitioners will know by the end of 2006 the alleged cause for their detention.

In *Landis*, the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the brutal conditions of Petitioners' years of incarceration – and its potentially indefinite duration – it is difficult to conceive of a delay more immoderate or consequences more oppressive than to require them to wait at least another full year to learn the cause of their imprisonment. In *Landis*, the Supreme Court vacated a stay in a securities case intended to last through intermediate and Supreme Court appeals, holding that "[r]elief so drastic and unusual overpasses the limits of any reasonable need." *Id.* at 257. Here, without any substantial showing of need, Respondents seek a stay of similar duration regarding present and continuing violations of the most fundamental legal and human rights.

---

difficult to imagine what would qualify as an "emergency" if confinement under such circumstances – including exposure to abuse – does not do so.

[6] Although Respondents' motion to stay never mentions the Supreme Court, Respondents request a stay "pending resolution of all appeals." Mot. to Stay, at 1.

Because of the undeniably irreparable harm that Petitioners will suffer as a result of the requested stay, the Court should deny Respondents' motion.

### 4. The Public Interest Strongly Disfavors a Stay of All Proceedings

The public interest in the vitality of the writ of *habeas corpus* weighs strongly against the entry of a stay, as "it is always in the public interest to protect the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994). Thus, while the Guantanamo detainee cases are of "extraordinary public moment," as Respondents indicate, *see* Mot. to Stay, at 8-9 n.6 (quoting *Landis*, 299 U.S. at 256), their singular importance lies in whether the *habeas* remedy will remain the safeguard against arbitrary and indefinite executive detention. Because of the great public interest in a prompt and fair adjudication, the Court should deny Respondents' motion.

### B. RESPONDENTS SHOULD BE ORDERED TO PROVIDE FACTUAL RETURNS

Respondents cite to no evidence or authority whatsoever in support of the astonishing proposition that a vague and general assertion of an "immense logistical burden" trumps Petitioners' right to be given notice of the cause for their detention – the most fundamental of due process rights. Indeed, several judges have issued orders to show cause in other pending Guantanamo habeas cases. *See supra* note 3.

Those judges have done so because Respondents' contention makes no sense. Indeed, Respondents have already compiled the information that has formed the basis for Petitioners' detention and that would be included in the factual return. Respondents have had ample opportunity, including at least four factual reviews of Petitioners' status, to examine, develop, and distill the facts related to the cause for their detention. *See* Petitioners' Mot. for Order to Show Cause ¶¶ 9-14, at 3-4. Respondents' blithe assertion that "there is no reason why

counsel need access to a factual return at this time," Mot. to Stay, at 11, assumes, incredibly, that undersigned counsel can provide meaningful representation to Petitioners while having no idea of the bases for their detention.

There is no justification for delaying issuance of the writ or an order to show cause requiring a factual return. In short, if Respondents claim to have a basis to detaining Petitioners, Petitioners are entitled – after years of detention – to know what it is. Respondents' conclusory assertions of burden do not outweigh Petitioners' fundamental interests in being apprised of that basis. *See, e.g., Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated Apr. 19, 2005) ([T]he government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle the task.") (Exh. B to Smith Decl.).

Finally, Respondents baldly assert that requiring factual returns in this case in less than 10-12 weeks would be unreasonable. Mot. to Stay, at 12. Given that Respondents already possess all of the facts that purportedly support Petitioners' detention, there is no conceivable reason that they could not provide a factual return within days, as provided under § 2243. Indeed, in at least two cases, Judges in this District have ordered Respondents to produce factual returns in less than ten days, and Respondents were able to comply. *See Abdullah v. Bush*, No. 05-CV-23 (RWR) (Order dated Apr. 8, 2005 and Dkt. No. 25); *Errachidi v. Bush*, No. 05-CV-640 (EGS) (Order date Apr. 21, 2005 and Dkt. No. 15).[7]

---

[7] Respondents also suggest, unconvincingly, that requiring the production of factual returns will "increas[e] the risks of inadvertent or other disclosure or compromise of [classified] information." Mot. to Stay, at 12. On July 8, 2005, Petitioners filed an unopposed motion for entry in this case of Judge Green's November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, as supplemented by the November 10, 2004 Order Addressing Designation Procedures for "Protected Information," and the December 13, 2004 Order

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court (1) deny Respondent's motion to stay all proceedings in this case; (2) grant Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause under 28 U.S.C. § 2243; and (3) issue a writ of habeas corpus or an order to show cause, returnable by Respondents in three days, or at most twenty days, as provided by § 2243.

Dated: July 12, 2005

Respectfully submitted,

DECHERT LLP
*Counsel for Petitioners*

By: /s/ R. Michael Smith
R. Michael Smith
D.C. Bar No. 372654
1775 Eye Street, N.W.
Washington, D.C.  20006
202.261.3300

Daniel C. Malone
DECHERT LLP
30 Rockefeller Plaza
New York, NY  10112
212.698.3500

George G. Gordon
Peter M. Ryan
DECHERT LLP
1717 Arch Street
Philadelphia, PA  19103-2793
215.994.4000

---

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order.  Judge Green issued the Amended Protective Order after carefully balancing national security interests with the detainees' right to legal representation.  Entry of the Amended Protective Order in this case should allay Respondents' concerns.  *See Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated Apr. 19, 2005) ("[T]he protective orders entered in this case will guard against inadvertent disclosures.") (Exh. B to Smith Decl.).

## CERTIFICATE OF SERVICE

I, R. Michael Smith, hereby certify that on July 12, 2005, I caused to be served via email true and correct copies of (1) the foregoing Petitioners' Joint Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay Proceedings and Reply Brief in Support of Petitioners' Motion for Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243; and (2) the Declaration of R. Michael Smith in support thereof on the following counsel of record for Respondents:

Preeya M. Noronha
Preeya.Noronha@usdoj.gov
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7226
Washington, D.C. 20530
(202) 514-3338

Terry M. Henry
Terry.Henry@usdoj.gov
Senior Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C. 20530

Andrew I. Warden
Andrew.Warden@usdoj.gov
Trial Attorney
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7144
Washington, D.C. 20530

R. Michael Smith

9857635.1.LITIGATION 7/12/05 2:59 PM