IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALI SHAH MOUSOVI, et al., | : | |
| | : | |
| *Petitioners/Plaintiffs,* | : | Case No. 1:05-CV-01124 (RMC) |
| | : | |
| v. | : | |
| | : | |
| GEORGE W. BUSH, et al., | : | |
| | : | |
| *Respondents/Defendants.* | : | |

DECLARATION OF R. MICHAEL SMITH IN SUPPORT OF PETITIONERS'
JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO RESPONDENTS' MOTION TO STAY PROCEEDINGS AND REPLY
BRIEF IN SUPPORT OF PETITIONERS' MOTION FOR IMMEDIATE
ISSUANCE OF A WRIT OF HABEAS CORPUS OR ORDER
TO SHOW CAUSE UNDER 28 U.S.C. § 2243

I, R. Michael Smith, make the following statements to the best of my personal

knowledge and belief:

1.      I am an attorney at the law firm of Dechert LLP, 1775 I Street, N.W.,

Washington, D.C. 20006.  I am licensed to practice law in the District of Columbia and the

States of Maryland, New York, Virginia and Pennsylvania.  Dechert LLP represents Petitioners

Ali Shah Mousovi, Izaatullah Nusrat, Haji Nusrat, Haji Rohullah Wakil, Sabar Lal, Wali

Mohammed Morafa, Abdul Rahman Aziz Khan, Abd-Al-Rahman, and Abdul Razak Iktiar

Mohammed in the above-captioned action.  I make this declaration in support of Petitioners'

Joint Memorandum of Points and Authorities in Opposition to Respondents' Motion to Stay

Proceedings and Reply Brief in Support of Petitioners' Motion for Immediate Issuance of a Writ

of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243.

2.      Attached hereto as Exhibit A is a true and correct copy of an Order Setting

Final Deadline for Submission of Factual Returns issued by Coordinating Judge Joyce Hens

Green in *In re Guantanamo Detainee Cases*, Nos. 02-CV-299 (CKK), *et al.* (Order dated Oct. 29, 2004).

      3.     Attached hereto as Exhibit B is a true and correct copy of an Order to Show Cause issued in *Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated Apr. 19, 2005).

      4.     Attached hereto as Exhibits C through E are true and correct copies of government documents released under a court order entered in litigation brought under the Freedom of Information Act. *See American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.).

      I declare under penalty of perjury that the foregoing is true to the best of my knowledge and belief. Executed on July 12, 2005.

R. MICHAEL SMITH

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | Civil Action Nos. |
| | ) | 02-CV-0299 (CKK), 02-CV-0828 (CKK), |
| | ) | 02-CV-1130 (CKK), 04-CV-1135 (ESH), |
| | ) | 04-CV-1136 (JDB), 04-CV-1137 (RMC), |
| *In re* Guantanamo Detainee Cases | ) | 04-CV-1142 (RJL), 04-CV-1144 (RWR), |
| | ) | 04-CV-1164 (RBW), 04-CV-1166 (RJL), |
| | ) | 04-CV-1194 (HHK), 04-CV-1227 (RBW), |
| | ) | 04-CV-1254 (HHK), 04-CV-1519 (JR) |
| | ) | |

## ORDER SETTING FINAL DEADLINE FOR SUBMISSION OF FACTUAL RETURNS

Following two status conferences before the Court during the week of August 23, 2004, counsel for respondents submitted a letter dated August 31, 2004 setting forth a proposed schedule for the filing of factual returns in these coordinated cases. The returns were to provide detailed factual bases for the government's detention of the petitioners seeking habeas relief in this jurisdiction. Under the respondents' proposed schedule, all returns were to be filed for petitioners in the pending cases before the end of the week commencing October 18, 2004. The Court approved the respondents' proposed schedule and incorporated the deadline in a scheduling order dated September 20, 2004. As of this date, respondents have yet to file the required returns for seven petitioners. Those petitioners are: Omar Rajab Amin (in Al Odah v. United States, 02-CV-0828 (CKK)), Moazzam Begg (in Begg v. Bush, 04-CV-1137 (RMC)), Martin Mubanga (in El-Banna v. Bush, 04-CV-1144 (RWR)), Mohammed Nechla and Hadj Boudella (in Boumediene v. Bush, 04-CV-1166 (RJL)), and Abdullah Majed Sayyah Hasan Alnoaimi and Salman Bin Ibrahim Bin Mohammed Bin Ali Al-Khalifa (in Almurbati v. Bush,

04-CV-1227 (RBW)).[1]

Respondents filed a status report on October 22, 2004 explaining why factual returns have not been filed for the above mentioned petitioners. In all seven instances, respondents explained that they have not yet filed the returns because they have not been able to complete Combatant Status Review Tribunal ("CSRT") proceedings for those petitioners. Specifically, respondents claim that the delays have occurred as a result of the petitioners' requests for the production of witnesses and documents that the petitioners presumably believe would help them refute the government's charges in the CSRT proceedings that they are enemy combatants.

On the same date as the filing of the respondents' status report regarding factual returns, counsel for petitioner Martin Mubanga in the El-Banna case filed a motion to compel respondents to file an immediate reply to Mr. Mubanga's petition for writ of habeas corpus or in the alternative for issuance of the writ itself. Citing 28 U.S.C. § 2243 and previous orders issued in El-Banna, counsel claims that respondents have no legal right to refuse to respond to the petition pending the completion of CSRT proceedings, which commenced long after the petitioner was detained in Africa and incarcerated at the Guantanamo Bay Naval Base.

The Court is aware that respondents have sought to dismiss the petitions for writ of habeas corpus of Martin Mubanga and the other detainees based in part on the argument that the CSRT proceedings provide more than sufficient due process to allow the government's continued

---

[1] In an Order dated October 4, 2004, the Court clarified that respondents were not required to file a factual return addressing the detention of Salim Ahmed Hamdan in Hamdan v. Rumsfeld, 04-CV-1519 (JR) given the unique circumstances of that case. In addition, although a petition was filed on behalf of an alleged detainee named Aref Abd Il Rheem in Abdah v. Bush, 04-CV-1254 (HHK), respondents have stated that they have been unable to identify him as a detainee at Guantanamo Bay and counsel for the petitioners in that case have not raised any objection relating to that statement.

2

custody of the petitioners. The Court expects, however, that the petitioners will challenge respondents' position when they file their responses to the motion to dismiss. Those responses are not due until November 5, 2004 and, therefore, the issue regarding the alleged appropriateness and sufficiency of the CSRT proceedings is not yet ready for judicial resolution in most of these cases.[2]

Notwithstanding pending issues concerning the appropriateness and sufficiency of the CSRT proceedings, and without prejudice to the future resolution of those issues, the reasons cited by respondents in their October 22, 2004 status report do not justify the respondents' failure to comply with this Court's September 20, 2004 Order requiring factual returns to be submitted by the end of the week commencing October 18, 2004. Most, if not all, of the petitioners who have not yet received factual returns were initially detained nearly three years ago and have remained in custody since that time. Respondents must be able to provide forthwith the factual bases for the initial detention and continued custody without waiting for the production of the evidence referenced in the respondents' status report. According to the respondents' own representations, that evidence is being sought by the petitioners themselves in support of their efforts to establish that they are not enemy combatants. It is therefore unlikely that the respondents will rely on such evidence to justify the detention of the petitioners. More importantly, if such evidence is not yet in the possession of the respondents, it could not have formed the basis for respondents' continued custody of the petitioners and is therefore unnecessary for the filing of factual returns in opposition to the petitioners' claims that they are

---

[2] The issues concerning the validity of the CSRT proceedings has been fully briefed in one of these cases. The petitioners in <u>Al Odah</u> filed their reply to the government's motion to dismiss on October 20, 2004 and the respondents filed a reply thereto on October 27, 2004.

being held unlawfully.

Accordingly, and for the foregoing reasons, it is hereby

ORDERED that respondents shall file on or before November 3, 2004 factual returns for

the following petitioners:

Omar Rajab Amin (Al Odah v. United States, 02-CV-0828 (CKK)),

Moazzam Begg (Begg v. Bush, 04-CV-1137 (RMC)),

Martin Mubanga (El-Banna v. Bush, 04-CV-1144 (RWR)),

Mohammed Nechla (Boumediene v. Bush, 04-CV-1166 (RJL)),

Hadj Boudella (Boumediene v. Bush, 04-CV-1166 (RJL)),

Abdullah Majed Sayyah Hasan Alnoaimi  (Almurbati v. Bush, 04-CV-1227 (RBW)), and

Salman Bin Ibrahim Bin Mohammed Bin Ali Al-Khalifa (Almurbati v. Bush, 04-CV-1227 (RBW)).


There shall be no further extensions.


IT IS SO ORDERED.

October 29, 2004                                    _____/s/_____
                                                              JOYCE HENS GREEN
                                                              United States District Judge

4

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MUHAMMED KAHN TUMANI,           :
et al.,                         :
                                :
            Petitioners/        :
            Plaintiffs,         :        Civil Action No.:    05-0526 (RMU)
                                :
        v.                      :
                                :
GEORGE W. BUSH et al.,          :
                                :
            Respondents/        :
            Defendants          :

## ORDER

### DIRECTING THE DEFENDANTS TO SHOW CAUSE AND SUBMIT FACTUAL RETURNS

Before the court is the plaintiffs' petition for a writ of habeas corpus. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. In addition, "[t]he person to whom the . . . order is directed *shall* make a return certifying the true cause of the detention." *Id.* (emphasis added).

The government takes the position that "[i]t makes no sense for proceedings related to the merits of these cases, such as submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decisions from the D.C. Circuit . . . will determine the legal analyses applicable to the cases[.]" Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns burdens the

government's resources and risks the inadvertent disclosure of classified information. *Id.* at 12-13.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 19th day of April, 2005,

**ORDERED** that the defendants shall show cause why the writ should not be granted and submit factual returns within 90 days of this order.

**SO ORDERED.**

RICARDO M. URBINA
United States District Judge

# EXHIBIT C



{{MSG001 RTF    Page 1

b6 -1
b7C -1

From  Caproni, Valerie E  (OGC) (FBI)
To                              (INSD) (FBI)
cc
Subject  RE  GTMO

b6 -1
b7C -1

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b5 -3

-----Original Message-----
From                              (INSD) (FBI)
Sent  Monday, August 16, 2004 2 49 PM
To  Caproni, Valerie E  (OGC) (FBI)
Subject  FW  GTMO

b6 -1
b7C -1

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

This should be the last one   Let me know followup or not

-----Original Message-----
From                              (OM) (FBI)
Sent  Friday, July 30, 2004 1 56 PM
To                              (INSD) (FBI)
Subject  RE  GTMO

b6 -1
b7C -1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-03-2004 BY 61579 DMH/KPS/JAG [04-cv-xxx-181]

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b6 -1
b7C -1

Following a detainee interview exact date unknown,  while leaving the interview building at Camp Delta
at approximately 8 30 p m  or later, I heard and observed in the hallway loud music and flashes of light  I
walked from the hallway into the open door of a monitoring room to see what was going on  From the
monitoring room,  I looked inside the adjacent interview room   At that time I saw another detainee
sitting on the floor of the interview room with an Israeli flag draped around him, loud music being played
and a strobe light flashing  I left the monitoring room immediately after seeing this activity   I did not see
any other persons inside the interview room with the Israeli flag draped detainee, but suspect that this
was a practice used by the DOD DHS since the only other persons inside the hallway near this particular
interview room were dressed in green military fatigues, similar to the ones worn by DOD DHS and the
DOD MP Uniformed Reservists  At no time did I observe any physical assaults take place of this
detainee nor any others while assigned to GTMO
   I understood prior to deployment to GTMO,  that such techniques were not allowed, nor approved by
FBI policy  While at GTMO no such techniques were never conducted to my knowledge by any of the

DETAINEES-1414

1414

4737



{{MSG001 RTF                                                        Page 2

b6 -1
b7C -1

CITF personnel assigned at GTMO
    Approximately one or two days later, DHS tactics were discussed at a weekly held CITF staff meeting
Many of the CITF investigators discussed how some of the DHS tactics had been counterproductive in
building rapport with detainees who were being interviewed by CITF members  Acting FBI SSA
[        ] advised that no CITF personnel including FBI agents were to take part in any such
interviews or interrogations which fell outside the FBI's policy of interviewing detainees  ASSA
[        ] also advised us that if we became aware of any similar instances where agressive DHS
tactics had been observed to notify him, provide details, and he would make these instances known to
appropriate GTMO DOD and DOJ officials  It should be noted that while at GTMO, ASSA [        ]
acted in an exemplary manner and represented the FBI as a consummate professional  This summary
details the only incident I have to report regarding observing a non-FBI approved tactic being used on a
detainee at GTMO

b6 -1
b7C -1

FBI Omaha
Des Moines R A

b2 -1

b6 -1
b7C -1

-----Original Message-----
From [        ] (INSD) (FBI)
Sent  Thursday, July 29, 2004 9 59 AM
To [        ] (OM) (FBI)
Subject  RE  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD


Could you please provide a short summary of what you observed   Thanks

b6 -1
b7C -1

-----Original Message-----
From [        ] (OM) (FBI)
Sent  Friday, July 09, 2004 4 20 PM
To [        ] (INSD) (FBI)
Subject  RE  GTMO


SENSITIVE BUT UNCLASSIFIED
NON-RECORD


b6 -1
b7C -1

    While at GTMO I observed some non-FBI policy treatment which was conducted by non-Bureau and
non-CITF personnel being used on one detainee  I did not observe any physical mistreatment of any
detainee

b6 -1
b7C -1

FBI Omaha
Des Moines R A

b2 -1

-----Original Message-----

                                        DETAINEES-1415

                                                                1415

                                                        4738

# EXHIBIT D



((MSG016 RTF    ~~SECRET~~                                                    Page 1

b6 -1
b7C -1

From                    (INSD) (FBI)    b6 -1
To  Caproni, Valerie E ,(OGC) (FBI)    b7C -1
cc
Subject  FW  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

Here is the second summary  One more to go
-----Original Message-----
From                        BS) (FBI)    b6 -1
Sent  Monday, August 02, 2004 10 46 AM    b7C -1
To                      (INSD) (FBI)
Subject  RE  GTMO

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

Mr                          b6 -1
                            b7C -1

As requested, here is a brief summary of what I observed at GTMO

On a couple of occassions, I entered interview rooms to find a detainee chained hand and foot in a fetal position to the floor, with no chair, food, or water  Most times they had urinated or defacated on themselves, and had been left there for 18, 24 hours or more  On one occassion, the air conditioning had been turned down so far and the temperature was so cold in the room, that the barefooted detainee was shaking with cold  When I asked the MP's what was going on, I was told that interrogators from the day prior had ordered this treatment, and the detainee was not to be moved  On another occassion, the A/C had been turned off, making the temperature in the unventilated room probably well over 100 degrees  The detainee was almost unconcious on the floor, with a pile of hair next to him  He had apparently been literally pulling his own hair out throughout the night  On another occassion, not only was the temperature unbearably hot, but extremely loud rap music was being played in the room, and had been since the day before, with the detainee chained hand and foot in the fetal position on the tile floor

Any questions, feel free to call or ask via email                          b2 -1
                                                                            b6 -1
-----Original Message-----                                                  b7C -1
From                    (INSD) (FBI)    b6 -1
Sent  Thursday, July 29, 2004 10 58 AM    b7C -1
To                      (BS) (FBI)
Subject  RE  GTMO

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

DATE: 11-09-2004
CLASSIFIED BY 61579DMH/BCP/bJg  05-CV-4131
REASON: 1.4 (C)
DECLASSIFY ON: 11-09-2023

                    ~~SECRET~~

                                        DETAINEES-1760    1760

                                                         5053

# EXHIBIT E



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

July 14, 2004

Major General Donald J. Ryder
Department of the Army
Criminal Investigation Command
6010 6th Street
Fort Belvoir, Virginia 22060-5506

Re: Suspected Mistreatment of Detainees

Dear General Ryder:

I appreciate the opportunity I had to meet with you last week. As part of a follow up on our discussion on detainee treatment, I would like to alert you to three situations observed by agents of the Federal Bureau of Investigation (FBI) of highly aggressive interrogation techniques being used against detainees in Guantanamo (GTMO). I refer them to you for appropriate action.

1. During late 2002, FBI Special Agent James Clemente was present in an observation room at GTMO and observed Sergeant (first name unknown) Lacey conducting an interrogation of an unknown detainee. (SA Clemente was present to observe the interrogation occurring in a different interrogation room.) Sgt. Lacey entered the observation room and complained that curtain movement at the observation window was distracting the detainee, although no movement of the curtain had occurred. She directed a marine to duct tape a curtain over the two-way mirror between the interrogation room and the observation room. SA Clemente characterized this action as an attempt to prohibit those in the observation room from witnessing her interaction with the detainee. Through the surveillance camera monitor, SA Clemente then observed Sgt. Lacey position herself between the detainee and the surveillance camera. The detainee was shackled and his hands were cuffed to his waist. SA Clemente observed Sgt. Lacey apparently whispering in the detainee's ear, and caressing and applying lotion to his arms (this was during Ramadan when physical contact with a woman would have been particularly offensive to a Moslem male). On more than one occasion the detainee appeared to be grimacing in pain, and Sgt. Lacey's hands appeared to be making some contact with the detainee. Although SA Clemente could not see her hands at all times, he saw them moving towards the detainee's lap. He also observed the detainee pulling away and against the restraints. Subsequently, the marine who had previously taped the curtain and had been in the interrogation room with Sgt. Lacey during the interrogation re-entered the observation room.

General Donald J. Ryder

SA Clemente asked what had happened to cause the detainee to grimace in pain. The marine said Sgt. Lacey had grabbed the detainee's thumbs and bent them backwards and indicated that she also grabbed his genitals. The marine also implied that her treatment of that detainee was less harsh than her treatment of others by indicating that he had seen her treatment of other detainees result in detainees curling into a fetal position on the floor and crying in pain.

2. Also in October 2002, FBI Special Agent Robert Morton was observing the interrogation of a detainee when Dave Becker, a civilian contractor, came into the observation room and asked SA Morton to come see something. SA Morton then saw an unknown bearded, long-haired detainee in another interrogation room. The detainee had been gagged with duct tape that covered much of his head. SA Morton asked Mr. Becker whether the detainee had spit at the interrogators. Mr. Becker laughed and stated that the detainee had been chanting the Koran and would not stop. Mr. Becker did not answer when SA Morton asked how the duct tape would be removed from the detainee.

3. In September or October of 2002 FBI agents observed that a canine was used in an aggressive manner to intimidate detainee #63 and, in November 2002, FBI agents observed Detainee #63 after he had been subjected to intense isolation for over three months. During that time period, #63 was totally isolated (with the exception of occasional interrogations) in a cell that was always flooded with light. By late November, the detainee was evidencing behavior consistent with extreme psychological trauma (talking to non-existent people, reporting hearing voices, crouching in a corner of the cell covered with a sheet for hours on end). It is unknown to the FBI whether such extended isolation was approved by appropriate DoD authorities.

These situations were referenced in a May 30, 2003 electronic communication (EC) from the Behavioral Analysis Unit of the FBI to FBI Headquarters. That EC attached, among other documents, a draft Memorandum for the Record dated 15 January 2003 from Capt. Mark E. McCary (USAFR), that refers to the first two events among others in a time line of events related to discussions concerning the use of aggressive interrogation techniques. Marion Bowman of the FBI's Office of General Counsel discussed the contents of those communications with Mr. Dietz, Deputy General Counsel (Intelligence) and Mr. Del'Orto, Deputy General Counsel of DoD, around the time the EC was received. Although he was assured that the general concerns expressed, and the debate between the FBI and DoD regarding the treatment of detainees was known to officials in the Pentagon, I have no record that our specific concerns regarding these three situations were communicated to DoD for appropriate action.

2

General Donald J. Ryder

If I can provide any further information to you, please do not hesitate to call.

Sincerely yours,

T. J. Harrington
Deputy Assistant Director
Counterterrorism Division

3