IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALI SHAH MOUSOVI, *et al.*, : <br> : <br> Petitioner/Plaintiffs, : <br> : <br> v. : <br> : <br> GEORGE W. BUSH, *et al.* : <br> : <br> Respondents/Defendants. : <br> : | Case No. 1:05-CV-1124 (RMC) |

**PETITIONERS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
TO STAY AND ABEY THIS ACTION
OR, IN THE ALTERNATIVE, TRANSFER IT TO THE COURT OF APPEALS**

Respondents fail to address Petitioners' central point: that a majority of the Supreme Court has expressed an interest in reviewing the continued viability of *habeas corpus* petitions filed by Guantanamo detainees such as Petitioners. Therefore, this *habeas* action should be preserved – stayed and abeyed – in order that the Supreme Court may undertake that review when Petitioners' remedies under the Detainee Treatment Act of 2005 have been exhausted, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), and the Supreme Court has issued a final judgment regarding the constitutional sufficiency of a DTA appeal as a substitute for this *habeas* action.[1]

---

[1] Should the Court determine to grant Respondents' Motion to Dismiss, for the reasons set forth in this brief and Petitioners' opening brief in support of their motion to stay and abey, this action should be dismissed ***without prejudice*** to its refiling should the suspension of *habeas corpus* worked in the Military Commissions Act be held unconstitutional. Military Commissions Act of 2006, Pub. L. No. 109-366 § 7, 120 Stat. 2600 ("MCA").

*1. The Supreme Court Has Made Clear That Petitioners'* Habeas *Action May Be Heard*

Respondents do not contest that the right to petition for a writ of *habeas corpus*, provided in the Constitution, occupies a central position in Anglo-American law. By the end of the seventeenth century, "'the writ of habeas corpus [had become] the most usual remedy by which a man is restored again to his liberty, if he have been against law deprived of it.'" *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), *quoting Bushell's Case*, 124 Eng. Rep. 1006, 1007 (1670). *Habeas corpus* is the only common-law writ to be expressly preserved in the Constitution. U.S. Const. art I § 9, cl. 2.

Respondents do not deny that the Supreme Court has consistently recognized the importance of the great writ. *See, e.g., Harris v. Nelson*, 394 U.S. 286, 292 (1969) ("There is no higher duty of a court . . . than the careful processing and adjudication of petitions for writs of *habeas* corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law."). Even during war or rebellion, the Supreme Court has been wary of suspension of the writ. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976) ("The history of even wartime suspension of categorical guarantees, such as habeas corpus . . . cautions against suspending explicit guarantees."). *See generally, Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2799 (2006) (Breyer, J., concurring) ("The Constitution is best preserved by reliance on standards tested over time and insulated from the pressures of the moment.").

The reasoning of the Supreme Court's holding in *Rasul* that the writ of *habeas corpus* runs to Guantanamo as a statutory matter supports the conclusion that the writ as safeguarded in the Constitution runs to Guantanamo as well. There, the Court emphasized that "[h]abeas corpus

2

is . . . 'a writ antecedent to statute . . . throwing its root deep into the genius of our common law,' . . . [and] 'an integral part of our common-law heritage' by the time the Colonies achieved independence, . . . ." *Rasul v. Bush*, 542 U.S. 466, 473-74 (2004), *quoting Williams v. Kaiser*, 323 U.S. 471, 484 n.2 (1945) and *Preiser*, 411 U.S. at 485. *But see, Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007).

The Court then held that the statutory grant of *habeas* rights, 28 U.S.C. § 2241, extends to the United States military facility at Guantanamo Bay, Cuba, where "the United States exercises plenary and exclusive jurisdiction, but not 'ultimate sovereignty.'" *Rasul*, 542 U.S. at 466, *quoting* Lease of Lands for Coaling and Naval Stations, Feb. 23, 1903, U.S.-Cuba, Art III. T.S. No. 418. The Court relied on the fact that, "[b]y the express terms of its agreements with Cuba, the United States exercises 'complete jurisdiction and control' over the Guantanamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses. 1903 Lease Agreement, Art. III; 1934." *Rasul*, 542 U.S. at 480; *cited in Boumediene v. Bush*, Statement of JJ. Stevens and Kennedy, No. 06-1195 (April 2, 2007) Slip Op at 2. Ex. A. to Dick Decl., Petitioners' Opening Brief.

All that the Supreme Court required in *Boumediene* is for Guantanamo *habeas* petitioners, such as Petitioners here, to exhaust their potential remedies under the DTA before the Court decides whether to consider the constitutionality of the MCA's attempt to work a suspension of *habeas corpus*. Among five Justices, the timing of the Court's review of the MCA was in dispute, but their reasoning compels the conclusion that, should the remedies the DTA affords prove inadequate, a substantial question as to whether, in effect, the MCA constitutionally suspended *habeas*, would arise. Two justices voted to deny *certiorari* "at this

3

time," pending development of what they found to be a necessary record for appropriate evaluation of the MCA's *habeas*-suspending provision. *Boumediene*, Statement of JJ. Stevens & Kennedy, Slip Op. at 1, *citing Ashwander v. TVA*, 297 U.S. 288, 341 (1936) (emphasizing the reluctance of courts to find a law invalid if the underlying dispute can be resolved in some other manner). Three other justices dissented from the denial of *certiorari*, writing that the questions raised by the action "deserve this Court's immediate attention." *Boumediene v. Bush*, No. 06-1195 (April 2, 2007) (Breyer, J., joined by Souter and Ginsburg, JJ., dissenting), Slip Op. at 1. Ex. A. to Dick Decl., Petitioners' Opening Brief. Since the constitutionality of the MCA's suspension provision likely will be reviewed by the Supreme Court, this *habeas* action should be preserved against that day.

*2. Dismissal of This Action Would Compromise Petitioners' Ability to Seek* Habeas *in the Future*

Justices Stevens and Kennedy, in casting the determinative votes in *Boumediene,* warned that should Respondents "take additional steps to prejudice the position of petitioners in this [Supreme] Court, 'courts of competent jurisdiction,' including this [Supreme] Court, 'should act promptly to ***ensure that the office and purposes of the writ of habeas corpus are not compromised.***'" *Boumediene*, Statement of JJ. Stevens and Kennedy at 2, *quoting Padilla v. Hanft*, 547 U.S. 1062, 1064 (2006) (Kennedy, J., concurring in denial of *certiorari*) (emphasis added). Respondents seek through dismissal of this action to contravene this admonition by jeopardizing the attorney-client relationship necessary for Petitioners effectively to pursue *habeas* remedies, by activating a Protective Order provision that may require Respondents to destroy relevant evidence. This Court should deny the motion to dismiss to ensure that Petitioners' rights are not so compromised.

4

A. Respondents Should Not be Permitted to Disrupt Petitioners' Attorney-Client Relationships

The Protective Order in this action has governed all communications between Petitioners and counsel, and while it imposes certain burdens on Petitioners and Respondents alike, it has worked well. Respondents have not raised any violations with this Court, as the Protective Order itself would require, relating to any of the myriad counsel visits to Guantanamo under the Order. Protective Order ¶ 49 ("any violation of the of the terms of this Protective Order shall be immediately brought to the attention of the Court"). Moreover, Respondents have not raised, even unofficially, *any* violation of that order with respect to Petitioners' counsel. The present Protective Order is also known and understood by all participants. The parties and their counsel can continue to comply with it, and this Court can continue to enforce it, without significant misunderstandings or disputes.

Respondents argue here that the issue of a protective order is for the Court of Appeals, not this Court. Resp. Brief at 9 ("To the extent that an issue such as counsel access . . . is to be addressed, it must be addressed in the Court of Appeals"). But in the Court of Appeals, Respondents argue that DTA appeals are much narrower than the pending *habeas* action. Transcript of Oral Argument, *Bismullah v. Gates,* No. 06-1197; *Parhat v. Gates*, No. 06-1397 at 45 (May 15, 2007) (Respondents seek a more restrictive protective order for "a completely different system of litigation") Dick Decl., Ex. C (attached). If the Court of Appeals accepts that argument for purposes of the DTA appeals pending before it, it will enter a much narrower protective order. Only this Court can preserve the *habeas* Protective Order, necessary for any effective future pursuit by Petitioners of *habeas* relief.

5

Shortly before oral argument in the Court of Appeals on their proposed new protective order, Respondents dropped one of the most disturbing aspects of the proposal, the 4-visits-in-a-lifetime rule. [Respondents'] Motion for Leave to Submit Revision to Government's Proposed Protective Order, *Parhat v. Gates*, No. 06-1397; *Bismullah v. Gates*, No. 06-1197 (May 11, 2007), Dick Decl. Ex. D (attached). Other provisions Respondents still seek to impose would, however, as effectively destroy the attorney-client relationship of trust and confidence that the Petitioners and their counsel have slowly built, across substantial physical and cultural distances. For example, the new order would dramatically narrow the topics Petitioners could discuss with their counsel. It would lift the privilege from many of the communications between Petitioners and counsel. It would bar counsel from taking into the meeting an outline of matters to discuss or relevant legal papers, limiting the usefulness of the visit. It would also lend credence to comments Petitioners already hear from other detainees and occasionally from U.S. personnel that lawyers can do nothing for them and are tolerated only because they lend an air of legitimacy to the detainees' incarceration. Dismissal of this action and the accompanying Protective Order would increase the likelihood that, in the event of a holding that the MCA's suspension of *habeas* is unconstitutional, Petitioners would no longer have a functional attorney-client relationship through which to pursue their *habeas* petitions effectively.

B. Respondents Should Not Be Permitted to Destroy Relevant Evidence

Respondents were invited in Petitioners' Opening Brief to advise the Court of their reading of ¶ 45 of the this Court's Protective Order, which appears to require them to destroy all "protected documents or information" regarding this proceeding within sixty days of the

termination of this action. Respondents remained silent on this issue, *see* Resp. Brief, so it appears they do not disagree that ¶ 45 requires such destruction.[2]

Respondents argued before the Court of Appeals that only a very limited amount of the information relating to Petitioners is admissible in connection with DTA appeals.[3] They may take the view that ¶ 45 requires them to dispose of material that they consider "protected information," especially if they further consider it not producible in connection with DTA appeals.

When ¶ 45 was adopted, of course, none of the participants anticipated the present exhaustion of remedies situation, in which this action would fail to proceed for a time but might later be revived.[4] Respondents should not be enabled through dismissal of this action to use

---

[2] Respondents wrote only, "[p]ortions of the Protective Order detail how classified and protected information will be handled after termination of the case." Resp. Brief at 9 n.2.

It is not clear how much evidence is at risk. At ¶ 11, the Protective Order entered in this action limits "protected information" to material so identified by this Court. Memorandum Order, July 22, 2005. No information has been so identified by this Court. The related Order Addressing Designation Procedures for "Protected Information" (also entered by this Court on July 22, 2005), however, could arguably be read to categorize some material designated by Respondents relating to this action as "protected." Clearly, since Petitioners may eventually be permitted to pursue *habeas* remedies, potentially discoverable evidence relating to those potential *habeas* claims must be preserved. The Order Addressing Designation Procedures should not be read to categorize any materials relating to Petitioners as "protected."

[3] The precise extent of material Respondents deem admissible on DTA appeals is still unclear, more than a week after oral argument on the issue before the Court of Appeals. *See* May 17, 2007, Letter from Douglas Letter to Mark Langer (promising to provide information "of value to the Court . . . as quickly as possible"), Dick Decl. Ex. E (attached).

[4] Whether ¶ 45 can legally authorize Respondents' destruction of records is unclear, given the statutory requirement of selective retention of government records of "continuing value." *See* 44 U.S.C. § 2905 (a).

7

¶ 45 to destroy any evidence potentially discoverable in a possible *habeas* action on Petitioners' behalf in the future.

*3. This Action Should be Stayed Rather Than Dismissed Pending Exhaustion of New Remedies*

Another reason to stay rather than dismiss this action is that the remedies Petitioners have been directed to exhaust did not exist when this action was filed. The Supreme Court has stated that when plaintiffs failed to exhaust remedies that became available only after they filed their cases, the cases should be stayed rather than dismissed while the new remedies were exhausted. *See, e.g., Gusik v. Schilder*, 340 U.S. 128, 133-134 (1950) ("[t]rial of the case . . . had ended before the effective date of Article 53 . . . We conclude that in the interests of justice the Court of Appeals, instead of reversing the District Court and ordering the petition to be dismissed, should [have] . . . **held the case pending resort to the new remedy** . . . . If relief is obtained . . . the case will then be remanded for dismissal. If the relief is not obtained . . . , **petitioner will not be put to the time and expense of trying anew the case which he tried when he had no relief other than habeas corpus**.") (emphasis added); *Whelchel v. McDonald*, 340 U.S. 122, 123 (1950). Petitioners filed this *habeas* action on June 7, 2005. The DTA was enacted on December 30, 2005, but its remedy did not become mandatory for Guantanamo detainees until enactment of the Military Commissions Act in the fall of 2006, almost a year later. *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006) (permitting *habeas* actions already filed when Detainee Treatment Act of 2005 was enacted to proceed). In these circumstances, this Court should stay and abey this action while the constitutional sufficiency of Petitioners' DTA appeals, provided for by the MCA, is tested.

*4. This Action May Not be Dismissed Until the Mandate Issues in* Boumediene

The Court of Appeals has not yet issued the mandate in *Boumediene*. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Respondents in that case have moved to dismiss and Petitioners in that case have opposed, asking the Court of Appeals to hold the case in abeyance pending litigation of their DTA appeals. Respondents' argument that this action should be dismissed is based primarily on the Court of Appeals' decision in *Boumediene*. As long as the Court of Appeals has not issued the mandate in that case, dismissal here would be inappropriate, especially if it would create a gap during which no court-approved protective order of any kind is in place.

*Conclusion*

For all of the reasons stated in this Reply Brief and Petitioners' Opening Brief in Support of Their Motion to Stay and Abey, this Court should stay and abey this action pending exhaustion of Petitioners' remedies pursuant to the DTA and MCA. This is the only course of action consistent with the stated positions of five justices of the United States Supreme Court, and the only course that would effectively preserve Petitioners' ability to pursue *habeas* relief.

Respectfully submitted,

_____
Rebecca P. Dick
 D.C. Bar No. 489120
Carolyn Welshhans
D.C. Bar No. 463197
DECHERT LLP
1775 I Street, N.W.
Washington, D.C. 20006
(202) 261-3300 (Tel.)
(202) 261-3333 (Fax)

9

        George G. Gordon
        Peter M. Ryan
        Juliet Sarkessian
        DECHERT LLP
        Cira Centre
        2929 Arch Street
        Philadelphia, PA 19104-2808
        (215) 994-4000 (Tel.)

        Daniel C. Malone
        DECHERT LLP
        30 Rockefeller Plaza
        New York, NY 10112
        (212) 698-3500 (Tel.)

        Counsel for Petitioners

May 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2007, I served the foregoing Petitioners' Reply Brief in Support of Their Motion to Stay and Abey This Action or, in the Alternative, Transfer it to the Court of Appeals, on the counsel listed below by causing an original and six copies to be filed with the Court Security Officer via messenger, with one copy to be conformed and returned to our office.

Peter D. Keisler
Douglas N. Letter
Joseph H. Hunt
Vincent M. Garvey
Judry L. Subar
Terry M. Henry
James J. Schwartz
Edward H. White
Robert J. Katerberg
Andrew I. Warden
Nicholas J. Patterson
Jean Lin
Nicholas A. Oldham
James C. Luh

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530

Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents

Carolyn M. Welshhans