*PREVIOUSLY FILED WITH CSO AND*
*CLEARED FOR PUBLIC FILING*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ALI SHAH MOUSOVI**, *et al.*, | : | |
| *Petitioners/Plaintiffs,* | : | |
| v. | : | **Case No. 1:05-CV-1124 (RMC)** |
| **GEORGE W. BUSH**, *et al.*, | : | **ORAL ARGUMENT REQUESTED** |
| *Respondents/Defendants.* | : | |

**DECLARATION OF PETER M. RYAN IN SUPPORT OF PETITIONERS' MOTION UNDER RULE 60(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE TO REINSTATE AND STAY THIS PETITION UNTIL THE SUPREME COURT'S DECISION IN *BOUMEDIENE v. BUSH*, NO. 06-1195, & *AL ODAH v. U.S.*, NO. 06-1196**

I, Peter M. Ryan, make the following statements to the best of my personal knowledge and belief:

1.      I am an attorney at the law firm of Dechert LLP, Cira Center, 2929 Arch Street, Philadelphia, Pennsylvania 19104-2808.  I am licensed to practice law in the Commonwealth of Pennsylvania and the State of New York.  Dechert LLP represents petitioners Izaatullah Nusrat, Haji Rohullah Wakil, Sabar Lal and Wali Mohammed in the above-captioned action.  I make this declaration in support of Petitioners' Motion Under Rule 60(b)(6) of the Federal Rules of Civil Procedure to Reinstate and Stay this Petition Until the Supreme Court's Decision in *Boumediene v. Bush*, No. 06-1195, and *Al Odah v. United States*, No. 06-1196.

2.      Attached hereto as Exhibit A is a true and correct copy of an Order dated January 27, 2006, in *Mousovi v. Bush*, No. 05-CV-1124 (RMC) (D.D.C.).

3.      Attached hereto as Exhibit B is a true and correct copy of an email dated June 1, 2007, from Andrew I. Warden, Esq., of the U.S. Department of Justice to Peter M. Ryan, Esq., of Dechert LLP.

4.     Attached hereto as Exhibit C is a true and correct copy of an email dated June 7, 2007, from the U.S. Department of Justice Privilege Team to Peter M. Ryan, Esq., of Dechert LLP.

5.     Attached hereto as Exhibit D are true and correct copies of Orders dated July 26, 2007,in *Boumediene v. Bush*, No. 05-5062 (D.C. Cir.), and *Al Odah v. United States*, No. 05-5064 (D.C. Cir.).

6.     Attached hereto as Exhibit E is a true and correct copy of an Order dated July 27, 2007, in *Bacha v. Bush*, No. 05-CV-2349 (RMC) (D.D.C.).

7.     Attached hereto as Exhibit F is a true and correct copy of the Declaration of Stephen Abraham, Lieutenant Colonel, United States Army Reserve, dated June 15, 2007.

8.     Attached hereto as Exhibit G is a true and correct copy of an Order dated June 7, 2007, in *Al Ginco v. Bush*, No. 06-5191 (D.C. Cir.).

9.     Attached hereto as Exhibit H is a true and correct copy of an Order dated July 24, 2007, in *Hamdan v. Gates*, No. 07-5042 (D.C. Cir.).

10.     Attached hereto as Exhibit I is a true and correct copy of an Order dated August 9, 2007, in *Abdah v. Bush*, No. 05-5224 (D.C. Cir.).

11.     Attached hereto as Exhibit J is a true and correct copy of an Order dated July 18, 2007, in *Maqaleh v. Gates*, No. 06-CV-1669 (JDB) (D.D.C.).

12.     Attached hereto as Exhibit K is a true and correct copy of an Order dated July 27, 2007, in *Faraj v. Bush*, No. 05-CV-1490 (PLF) (D.D.C.).

13.     Attached hereto as Exhibit L is a true and correct copy of an Order dated July 28, 2007, in *Ba Odah v. Bush*, No. 06-CV-1668 (HHK) (D.D.C.).

I declare under penalty of perjury that the foregoing is true to the best of my knowledge and belief.  Executed on August 17, 2007.


/s/Peter M. Ryan
PETER M. RYAN

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOAZZAM BEGG, *et al.*,<br><br>        Petitioners,<br><br>    v.<br><br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 04-1137 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| OMAR DEGHAYES, *et al.*,<br><br>        Petitioners,<br><br>    v.<br><br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 04-2215 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| ABDUL SALAM ZAEEF, *et al.*,<br><br>        Petitioners,<br><br>    v.<br><br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-660 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

MOHSEN ABDRUB ABOASSY, *et al.*, )
)
Petitioners, )
)
v. )                    Civil Action No. 05-748 (RMC)
)
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.*, )
)
Respondents. )

MUHIBULLAH, *et al.*, )
)
Petitioner, )
)
v. )                    Civil Action No. 05-884 (RMC)
)
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.*, )
)
Respondents. )

SHARBAT KHAN, *et al.*, )
)
Petitioners, )
)
v. )                    Civil Action No. 05-890 (RMC)
)
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.*, )
)
Respondents. )

| | |
|---|---|
| ALI SHAH MOUSOVI, *et al.*,       )<br>      )<br>Petitioners,       )<br>      )<br>v.       )<br>      )<br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,       )<br>      )<br>Respondents.       ) | Civil Action No. 05-1124 (RMC) |

| | |
|---|---|
| ABDUL HAKIM ABDUL KARIM AMIN )<br>BUKHARI, *et al.*,       )<br>      )<br>Petitioners,       )<br>      )<br>v.       )<br>      )<br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,       )<br>      )<br>Respondents.       ) | Civil Action No. 05-1241 (RMC) |

| | |
|---|---|
| MOTAI SAIB, *et al.*,       )<br>      )<br>Petitioners,       )<br>      )<br>v.       )<br>      )<br>GEORGE W. BUSH, PRESIDENT<br>OF THE UNITED STATES, *et al.*,       )<br>      )<br>Respondents.       ) | Civil Action No. 05-1353 (RMC) |

-3-

JAWAD JABBAR SADKHAN,  )
           )
   Petitioner,    )
           )
  v.        )  **Civil Action No. 05-1487 (RMC)**
           )
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.,* )
           )
   Respondents.   )
           )

NABIL, *et al.,*     )
           )
   Petitioners,   )
           )
  v.        )  **Civil Action No. 05-1504 (RMC)**
           )
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.,* )
           )
   Respondents.   )
           )

ABBAR SUFIAN AL HAWARY, *et al.,* )
           )
   Petitioners,   )
           )
  v.        )  **Civil Action No. 05-1505 (RMC)**
           )
GEORGE W. BUSH, PRESIDENT )
OF THE UNITED STATES, *et al.,* )
           )
   Respondents.   )
           )

| | |
|---|---|
| SHAFIIQ, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 05-1506 (RMC) |
| | ) |
| GEORGE W. BUSH, PRESIDENT | ) |
| OF THE UNITED STATES, *et al.*, | ) |
| | ) |
| Respondents. | ) |

| | |
|---|---|
| MOHAMMED AL-QAHTANI, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 05-1971 (RMC) |
| | ) |
| GEORGE W. BUSH, PRESIDENT | ) |
| OF THE UNITED STATES, *et al.*, | ) |
| | ) |
| Respondents. | ) |

| | |
|---|---|
| DR. ABU MUHAMMED, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 05-2087 (RMC) |
| | ) |
| GEORGE W. BUSH, PRESIDENT | ) |
| OF THE UNITED STATES, *et al.*, | ) |
| | ) |
| Respondents. | ) |

MOHAMMED ABDUL RAHMAN AL-
SHIMRANI, *et al.*,

  Petitioners,

 v.

GEORGE W. BUSH, PRESIDENT
OF THE UNITED STATES, *et al.*,

  Respondents.

Civil Action No. 05-2249 (RMC)

---

AHMED BEN BACHA, *et al.*,

  Petitioners,

 v.

GEORGE W. BUSH, PRESIDENT
OF THE UNITED STATES, *et al.*,

  Respondents.

Civil Action No. 05-2349 (RMC)

---

JOBRAN SAAD AL-QUHTANI, *et al.*,

  Petitioners,

 v.

GEORGE W. BUSH, PRESIDENT
OF THE UNITED STATES, *et al.*,

  Respondents.

Civil Action No. 05-2387 (RMC)

|  |  |
|---|---|
| **TALAH AHMED MOHAMMED ALI ALMJRD**, *et al.*, | ) ) ) ) |
| **Petitioners**, | ) ) |
| v. | ) |
| **GEORGE W. BUSH, PRESIDENT OF THE UNITED STATES,** *et al.*, | ) ) ) |
| **Respondents.** | ) ) ) |

Civil Action No. 05-2444 (RMC)

## ORDER

On December 30, 2005, President Bush signed into law H.R. 2863, the Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act of 2006 ("the Act"). Section 1005(e) of the Act, entitled Judicial Review of Detention of Enemy Combatants, raises serious questions concerning whether this Court retains jurisdiction to hear the above-captioned cases. The question of whether this Court retains jurisdiction to entertain these matters is currently pending resolution by the United States Court of Appeals for the District of Columbia Circuit. Accordingly, it is this 27th day of January, 2006, hereby

**ORDERED** that all pending motions in the above-captioned cases are **DENIED WITHOUT PREJUDICE** until such time as the District of Columbia Circuit resolves the question of this Court's jurisdiction to adjudicate these cases.[1] It is further

**ORDERED** that all action in the above-captioned cases is **STAYED** pending the

---

[1] If the District of Columbia Circuit concludes that this Court retains jurisdiction of these cases, the parties may file motions to reinstate the pending motions.

-7-

jurisdictional ruling of the District of Columbia Circuit.

**SO ORDERED.**

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

Date: January 27, 2006.

# EXHIBIT B

**Ryan, Peter**

| | |
|---|---|
| **From:** | Warden, Andrew (CIV) [Andrew.Warden@usdoj.gov] |
| **Sent:** | Friday, June 01, 2007 5:13 PM |
| **To:** | Ryan, Peter |
| **Subject:** | Mousovi v. Bush (05-1124) |
| **Attachments:** | Proposed PO.pdf |

Dear Peter,

As you are aware, Judge Collyer's May 30, 2007 Order dismissed Mousovi v. Bush (05-CV-1124) for lack of jurisdiction. In light of this development, counsel access (both legal mail and in-person visits) is no longer permitted under the terms of the now-dismissed district court counsel access regime. Accordingly, any further counsel access to petitioners must be governed by a jurisdictionally-appropriate protective order entered in a pending DTA case. Thus, you must satisfy the following criteria prior to resuming access to petitioners: 1) the filing of a DTA petition in the Court of Appeals; and 2) entry by the Court of Appeals of the government's proposed DTA protective order on an interim basis without prejudice to any challenge you may raise regarding the government's proposed protective order. If you choose to pursue entry of the government's proposed protective order, please contact August Flentje (august.flentje@usdoj.gov) who is handling the DTA litigation in the Court of Appeals. A copy of the government's proposed protective order is attached.

With respect to any legal mail that you may have sent petitioners pursuant to the district court counsel access regime since dismissal of the habeas cases, the mail will held by the Privilege Team (or returned to you at your request) pending satisfaction of the above criteria for counsel access in the DTA litigation, unless the mail has already been processed by the Privilege Team. In the event the Privilege Team has conducted its contraband review of the incoming legal mail and forwarded it to Guantanamo for delivery, the mail will be delivered to petitioners consistent with the prior district court protective order regime. Similarly, the Privilege Team will hold at the secure facility any outgoing legal mail sent by petitioners to you, pending satisfaction of the above criteria for counsel access in the DTA litigation. Thus, Privilege Team would not perform classification review of outgoing legal mail written by petitioners to you, nor would you be permitted to read such mail at the secure facility until the government's proposed protective order is entered in a DTA case.

Finally, please remember that certain requirements of the district court protective order, i.e., requirements pertaining to the handling of classified and "protected" information appropriately, retain vitality beyond dismissal of the habeas case. See Protective Order, 344 F. Supp. 2d 174, ¶¶ 17, 35, 50, Exhibit B (for access to classified information, counsel required to sign Memorandum of Understanding that nondisclosure requirements survive litigation); Exhibit C (for access to protected information, counsel required to sign Acknowledgment that nondisclosure requirements survive litigation). Thank you in advance for your compliance in this regard.

Best regards,

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

# EXHIBIT C

**Ryan, Peter**

**From:**     Privilege Team [privilege.team@gmail.com]
**Sent:**     Thursday, June 07, 2007 2:03 PM
**To:**       Ryan, Peter
**Subject:**  Fwd: Detainee Letter: ISN 560 Seq# 2013

Pls disregard the below notice.  We have received a letter for you
from Detainee ISN 560 (Seq# 2013) however, in accordance with current
guidance from DOJ, ISN 560 is no longer authorized to use the legal
mail system. His Habeas case has been dismissed.

In accordance with current guidance, we will hold this letter at the
secure facility pending your completion of the appropriate
documentation that will again authorize you to send/receive legal from
this particular detainee.  Sorry for the confusion in this matter.

Privilege Team

---------- Forwarded message ----------
From: Privilege Team <privilege.team@gmail.com>
Date: Jun 7, 2007 12:22 PM
Subject: Detainee Letter: ISN 560 Seq# 2013
To: "Ryan, Peter" <peter.ryan@dechert.com>


We have received a letter from your client addressed to you and /or
your firm. Please advise what you wish done with it.  You may have us
place it in your safe or submit it for classification review.

When submitting mail, please identify the specific language in which
you communicate with your client (e.g. Arabic, Farsi, Pashto, etc.)

Please respond via reply email.

Thank you,

Privilege Team

# EXHIBIT D

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 05-5062**                                    **September Term, 2006**

04cv01142
04cv01166

**Filed On: July 26, 2007** [1056472]

Lakhdar Boumediene, Detainee, Camp Delta, et al.,
        Appellants

        v.

George W. Bush, President of the United States, et
al.,
        Appellees

———————————————————————

Consolidated with 05-5063

**BEFORE:**     Sentelle,* Rogers, and Griffith, Circuit Judges

## O R D E R

        Upon consideration of appellants' motion to recall the mandate and the
opposition thereto, it is

        **ORDERED** that the motion be granted and the mandate be recalled.  The Clerk
of the United States District Court for the District of Columbia is directed to return
forthwith to the United States Court of Appeals for the District of Columbia Circuit the
mandate issued June 27, 2007.

## Per Curiam

                                **FOR THE COURT:**
                                Mark J. Langer, Clerk

                BY:

                                Nancy G. Dunn
                                Deputy Clerk

*Circuit Judge Sentelle would deny the motion.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 05-5064**                                           **September Term, 2006**

**02cv00299, 02cv00828**
**02cv01130, 04cv01135**
**04cv01136, 04cv01137,**
**04cv01144, 04cv01164**
**04cv01194, 04cv01227**
**04cv01254**

**Filed On: July 26, 2007** [1056486]

Khaled A. F. Al Odah, Next Friend of Fawzi Khalid
Abdullah Fahad Al Odah, et al.,
            Appellants

      v.

United States of America, et al.,
            Appellees

_____
Consolidated with 05-5095, 05-5096, 05-5097, 05-5098,
05-5099, 05-5100, 05-5101, 05-5102, 05-5103, 05-5104,
05-5105, 05-5106, 05-5107, 05-5108, 05-5109, 05-5110,
05-5111, 05-5112, 05-5113, 05-5114, 05-5115, 05-5116

        **BEFORE:**     Sentelle,* Rogers, and Griffith, Circuit Judges

## O R D E R

        Upon consideration of appellants' motion to recall the mandate and the opposition
thereto, it is

        **ORDERED** that the motion be granted and the mandate be recalled.  The Clerk of the
United States District Court for the District of Columbia is directed to return forthwith to the
United States Court of Appeals for the District of Columbia Circuit the mandate issued June
27, 2007.

### Per Curiam

                            **FOR THE COURT:**
                            Mark J. Langer, Clerk

            BY:

                            Nancy G. Dunn
                            Deputy Clerk

        *Circuit Judge Sentelle would deny the motion.

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED BEN BACHA (BELBACHA),** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **Civil Action No. 05-2349 (RMC)** |
| ) | |
| **GEORGE W. BUSH,** *et al.,* ) | |
| ) | |
| **Respondents.** ) | |

## ORDER

Petitioner Ahmed Belbacha, a detainee at the United States Naval Station in Guantanamo Bay, Cuba, filed a petition for a writ of habeas corpus on December 8, 2005. On July 26, 2007, Mr. Belbacha filed an emergency motion for a temporary restraining order asking the Court to enjoin the United States from transferring him from Guantanamo Bay to Algeria, his country of citizenship. Mr. Belbacha contends that it is more likely than not that he will face torture and other forms of abuse from radical Islamist groups in Algeria who oppose his prior service in the Algerian military and his prior employment at a company owned by the Algerian government.

In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 75 U.S.L.W. 3707 (June 29, 2007), the Court of Appeals held that the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), deprives this Court of jurisdiction to hear petitions for habeas corpus brought by Guantanamo detainees, that the deprivation of jurisdiction applies to petitions pending at the time the MCA was passed, and that the deprivation of jurisdiction does not violate the Suspension Clause of the Constitution. The Court also noted that Section 7(a)(2) of the MCA deprives this Court of jurisdiction to "hear or consider any other action against the United

States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of

confinement of an alien who is or was detained by the United States and has been determined by the

United States to have been properly detained as an enemy combatant or is awaiting such

determination." *Boumediene*, 476 F.3d at 985-86.

Mr. Belbacha argues that, despite *Boumediene*, this Court has jurisdiction to hear his

motion for a temporary restraining order because (1) the Supreme Court has granted certiorari in

*Boumediene*, which puts the ongoing validity of that decision in doubt; (2) the D.C. Circuit has

withdrawn the mandate in *Boumediene*, which indicates that the Circuit no longer believes that this

Court should dismiss habeas petitions pursuant to that decision; and (3) district courts always have

jurisdiction to protect their jurisdiction, and thus this Court can enjoin Mr. Belbacha's transfer to

Algeria to ensure that it has jurisdiction to adjudicate his habeas petition should the Supreme Court

reverse *Boumediene*.   The United States disagrees, of course, and argues that the MCA and

*Boumediene* strip this Court of jurisdiction to consider the instant motion.

The Court finds Mr. Belbacha's arguments persuasive as far as they go, and if the

question now pending were whether the Court should dismiss Mr. Belbacha's habeas petition, it may

well agree with him.  But that is not the question; rather, the question is whether this Court has

jurisdiction to hear a motion to prevent Mr. Belbacha's transfer from Guantanamo to Algeria.  And

on that question the MCA is clear: the Court lacks jurisdiction over any and all non-habeas claims

raised by aliens who are detained as enemy combatants.  Mr. Belbacha argues that if the Court denies

his motion on that basis, it will lose jurisdiction over his underlying habeas petition because Mr.

Belbacha will be released from U.S. custody.  The Court appreciates that point but notes that the

D.C. Circuit implicitly rejected that argument when it recently denied a similar motion to enjoin the

2

transfer of a Guantanamo detainee based on lack of jurisdiction. *See Zalita v. Bush*, Case. No. 07-5129 (Order of April 25, 2007). The D.C. Circuit presumably followed that reasoning again when it denied for lack of jurisdiction a Guantanamo detainee's motion for an order requiring the United States to provide 30 day's notice before transferring the detainee from Guantanamo. *See Hamlily v. Gates*, No. 07-1127 (Order of July 16, 2007).

The Supreme Court's recent decision to grant certiorari in *Boumediene* notwithstanding, this Court cannot ignore the plain language of the MCA and the D.C. Circuit's holding that the MCA is constitutional. As the D.C. Circuit made clear, the MCA "eliminates jurisdiction over non-habeas claims by aliens detained as enemy combatants. That alone is sufficient to require dismissal even of pending non-habeas claims." *Boumediene*, 476 F.3d at 98 n.1. Accordingly, it is hereby

**ORDERED** that Petitioner's Emergency Motion for Order Enjoining Transfer of Petitioner to Likely Abuse and Torture in Algeria [Dkt. No. 26] is **DENIED** for lack of jurisdiction.

**SO ORDERED**.

DATE:  July 27, 2007                                   /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge

# EXHIBIT F

i

## Appendix

### DECLARATION OF STEPHEN ABRAHAM
#### Lieutenant Colonel, United States Army Reserve

I, Stephen Abraham, hereby declare as follows:

1.     I am a lieutenant colonel in the United States Army Reserve, having been commissioned in 1981 as an officer in Intelligence Corps.  I have served as an intelligence officer from 1982 to the present during periods of both reserve and active duty, including mobilization in 1990 ("Operation Desert Storm") and twice again following 9-11.  In my civilian occupation, I am an attorney with the law firm Fink & Abraham LLP in Newport Beach, California.

2.     This declaration responds to certain statements in the Declaration of Rear Admiral (Retired) James M. McGarrah ("McGarrah Dec."), filed in *Bismullah v. Gates*, No. 06-1197 (D.C. Cir.).  This declaration is limited to unclassified matters specifically related to the procedures employed by Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") and the Combatant Status Review Tribunals ("CSRTs") rather than to any specific information gathered or used in a particular case, except as noted herein. The contents of this declaration are based solely on my personal observations and experiences as a member of OARDEC.  Nothing in this declaration is intended to reflect or represent the official opinions of the Department of Defense or the Department of the Army.

3.     From September 11, 2004 to March 9, 2005, I was on active duty and assigned to OARDEC.  Rear Admiral McGarrah served as the Director of OARDEC during the entirety of my assignment.

4.     While assigned to OARDEC, in addition to other duties, I worked as an agency liaison, responsible for coordinating with government agencies, including certain Department of Defense ("DoD") and non-DoD organizations, to gather or

ii

validate information relating to detainees for use in CSRTs. I also served as a member of a CSRT, and had the opportunity to observe and participate in the operation of the CSRT process.

5.      As stated in the McGarrah Dec., the information comprising the Government Information and the Government Evidence was not compiled personally by the CSRT Recorder, but by other individuals in OARDEC. The vast majority of the personnel assigned to OARDEC were reserve officers from the different branches of service (Army, Navy, Air Force, Marines) of varying grades and levels of general military experience. Few had any experience or training in the legal or intelligence fields.

6.      The Recorders of the tribunals were typically relatively junior officers with little training or experience in matters relating to the collection, processing, analyzing, and/or dissemination of intelligence material. In no instances known to me did any of the Recorders have any significant personal experience in the field of military intelligence. Similarly, I was unaware of any Recorder having any significant or relevant experience dealing with the agencies providing information to be used as a part of the CSRT process.

7.      The Recorders exercised little control over the process of accumulating information to be presented to the CSRT board members. Rather, the information was typically aggregated by individuals identified as case writers who, in most instances, had the same limited degree of knowledge and experience relating to the intelligence community and intelligence products. The case writers, and not the Recorders, were primarily responsible for accumulating documents, including assembling documents to be used in the drafting of an unclassified summary of the factual basis for the detainee's designation as an enemy combatant.

8.      The information used to prepare the files to be used by the Recorders frequently consisted of finished intelligence

iii

products of a generalized nature - often outdated, often "generic," rarely specifically relating to the individual subjects of the CSRTs or to the circumstances related to those individuals' status.

9.     Beyond "generic" information, the case writer would frequently rely upon information contained within the Joint Detainee Information Management System ("JDIMS"). The subset of that system available to the case writers was limited in terms of the scope of information, typically excluding information that was characterized as highly sensitive law enforcement information, highly classified information, or information not voluntarily released by the originating agency. In that regard, JDIMS did not constitute a complete repository, although this limitation was frequently not understood by individuals with access to or who relied upon the system as a source of information. Other databases available to the case writer were similarly deficient. The case writers and Recorders did not have access to numerous information sources generally available within the intelligence community.

10.     As one of only a few intelligence-trained and suitably cleared officers, I served as a liaison while assigned to OARDEC, acting as a go-between for OARDEC and various intelligence organizations. In that capacity, I was tasked to review and/or obtain information relating to individual subjects of the CSRTs. More specifically, I was asked to confirm and represent in a statement to be relied upon by the CSRT board members that the organizations did not possess "exculpatory information" relating to the subject of the CSRT.

11.     During my trips to the participating organizations, I was allowed only limited access to information, typically prescreened and filtered. I was not permitted to see any information other than that specifically prepared in advance of my visit. I was not permitted to request that further searches

iv

be performed. I was given no assurances that the information provided for my examination represented a complete compilation of information or that any summary of information constituted an accurate distillation of the body of available information relating to the subject.

12.    I was specifically told on a number of occasions that the information provided to me was all that I would be shown, but I was never told that the information that was provided constituted all available information. On those occasions when I asked that a representative of the organization provide a written statement that there was no exculpatory evidence, the requests were summarily denied.

13.    At one point, following a review of information, I asked the Office of General Counsel of the intelligence organization that I was visiting for a statement that no exculpatory information had been withheld. I explained that I was tasked to review all available materials and to reach a conclusion regarding the non-existence of exculpatory information, and that I could not do so without knowing that I had seen all information.

14.    The request was denied, coupled with a refusal even to acknowledge whether there existed additional information that I was not permitted to review. In short, based upon the selective review that I was permitted, I was left to "infer" from the absence of exculpatory information in the materials I was allowed to review that no such information existed in materials I was not allowed to review.

15.    Following that exchange, I communicated to Rear Admiral McGarrah and the OARDEC Deputy Director the fundamental limitations imposed upon my review of the organization's files and my inability to state conclusively that no exculpatory information existed relating to the CSRT subjects. It was not possible for me to certify or validate the non-existence of exculpatory evidence as related to any individual undergoing the CSRT process.

v

16.     The content of intelligence products, including data-bases, made available to case writers, Recorders, or liaison officers, was often left entirely to the discretion of the or-ganizations providing the information.  What information was not included in the bodies of intelligence products was typically unknown to the case writers and Recorders, as was the basis for limiting the information.  In other words, the person preparing materials for use by the CSRT board mem-bers did not know whether they had examined all available information or even why they possessed some pieces of in-formation but not others.

17.     Although OARDEC personnel often received large amounts of information, they often had no context for deter-mining whether the information was relevant or probative and no basis for determining what additional information would be necessary to establish a basis for determining the reasonableness of any matter to be offered to the CSRT board members.  Often, information that was gathered was dis-carded by the case writer or the Recorder because it was con-sidered to be ambiguous, confusing, or poorly written.  Such a determination was frequently the result of the case writer or Recorder's lack of training or experience with the types of in-formation provided.  In my observation, the case writer or Recorder, without proper experience or a basis for giving context to information, often rejected some information arbi-trarily while accepting other information without any articu-lable rationale.

18.     The case writer's summaries were reviewed for qual-ity assurance, a process that principally focused on format and grammar.  The quality assurance review would not ordi-narily check the accuracy of the information underlying the case writer's unclassified summary for the reason that the quality assurance reviewer typically had little more experi-ence than the case writer and, again, no relevant or meaning-ful intelligence or legal experience, and therefore had no

vi

skills by which to critically assess the substantive portions of the summaries.

19.     Following the quality assurance process, the unclassified summary and the information assembled by the case writer in support of the summary would then be forwarded to the Recorder. It was very rare that a Recorder or a personal representative would seek additional information beyond that information provided by the case writer.

20.     It was not apparent to me how assignments to CSRT panels were made, nor was I personally involved in that process. Nevertheless, I discerned the determinations of who would be assigned to any particular position, whether as a member of a CSRT or to some other position, to be largely the product of ad hoc decisions by a relatively small group of individuals. All CSRT panel members were assigned to OARDEC and reported ultimately to Rear Admiral McGarrah. It was well known by the officers in OARDEC that any time a CSRT panel determined that a detainee was not properly classified as an enemy combatant, the panel members would have to explain their finding to the OARDEC Deputy Director. There would be intensive scrutiny of the finding by Rear Admiral McGarrah who would, in turn, have to explain the finding to his superiors, including the Under Secretary of the Navy.

21.     On one occasion, I was assigned to a CSRT panel with two other officers, an Air Force colonel and an Air Force major, the latter understood by me to be a judge advocate. We reviewed evidence presented to us regarding the recommended status of a detainee. All of us found the information presented to lack substance.

22.     What were purported to be specific statements of fact lacked even the most fundamental earmarks of objectively credible evidence. Statements allegedly made by percipient witnesses lacked detail. Reports presented generalized statements in indirect and passive forms without stating the

vii

source of the information or providing a basis for establishing the reliability or the credibility of the source. Statements of interrogators presented to the panel offered inferences from which we were expected to draw conclusions favoring a finding of "enemy combatant" but that, upon even limited questioning from the panel, yielded the response from the Recorder, "We'll have to get back to you." The personal representative did not participate in any meaningful way.

23.    On the basis of the paucity and weakness of the information provided both during and after the CSRT hearing, we determined that there was no factual basis for concluding that the individual should be classified as an enemy combatant. Rear Admiral McGarrah and the Deputy Director immediately questioned the validity of our findings. They directed us to write out the specific questions that we had raised concerning the evidence to allow the Recorder an opportunity to provide further responses. We were then ordered to reopen the hearing to allow the Recorder to present further argument as to why the detainee should be classified as an enemy combatant. Ultimately, in the absence of any substantive response to the questions and no basis for concluding that additional information would be forthcoming, we did not change our determination that the detainee was not properly classified as an enemy combatant. OARDEC's response to the outcome was consistent with the few other instances in which a finding of "Not an Enemy Combatant" (NEC) had been reached by CSRT boards. In each of the meetings that I attended with OARDEC leadership following a finding of NEC, the focus of inquiry on the part of the leadership was "what went wrong."

24.    I was not assigned to another CSRT panel.

I hereby declare under the penalties of perjury based on my personal knowledge that the foregoing is true and accurate.

viii



Dated: June 15, 2007

# EXHIBIT G

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 06-5191**

**September Term, 2006**

05cv001490
05cv00882
05cv00885
05cv00886
05cv00888
05cv00889
05cv00892
05cv01234
05cv01238
05cv01310
05cv01607
05cv01894
05cv02367
05cv02369
05cv02370
05cv02384
05cv02398
05cv02452
05cv02458
05cv02479
06cv00618

**Filed On: June 7, 2007** [1045791]

Abdulrahim Abdul Razak Al Ginco,
      Appellant

    v.

George W. Bush, President of the United States, et al.,
      Appellees

_____

Consolidated with 06-5196, 06-5197, 06-5198,
06-5205, 06-5235, 06-5236, 06-5265, 06-5284,
06-5285, 06-5286, 06-5287, 06-5320, 06-5325,
06-5326, 06-5328, 06-5329, 06-5330, 06-5384,
06-5385, 06-5420, 07-5046

    **BEFORE**:   Randolph, Garland, and Griffith, Circuit Judges

## O R D E R

    Upon consideration of the motions to vacate and dismiss in Nos. 06-5191, et al., and the notice of additional authority; the motion to vacate and dismiss in Nos. 06-5265 and 07-5046; the consolidated opposition to the motions, the supplements thereto, and notices of district court filings; and the reply; the motion to sever and to set a separate briefing schedule in No. 06-5191, the response thereto, and the reply; the motion to

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 06-5191**                                   **September Term, 2006**

sever in No. 06-5384, the response thereto, and the reply; and the motion to sever and to set a separate briefing schedule in No. 06-5385, the response thereto, and the reply, it is

**ORDERED** that the motions to sever and to set a separate briefing schedule in Nos. 06-5191 and 06-5385 be denied.  It is

**FURTHER ORDERED** that the government's motions to dismiss its own appeals and the appeal of Abdulrahim Abdul Razak Al Ginco be granted and Nos. 06-5191, et al., be dismissed for lack of subject matter jurisdiction.  See Boumediene v. Bush, 476 F.3d 981 (D.C. Cir. 2007).  It is

**FURTHER ORDERED** that the motion to sever No. 06-5384 be dismissed as moot.  It is

**FURTHER ORDERED** that the government's motions to vacate the notice orders and to dismiss the habeas petitions be denied without prejudice.  The district court may consider in the first instance respondents' motion to dismiss and petitioners' motions to stay and hold in abeyance, which are currently pending before the district court in the actions underlying these consolidated appeals.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc.  See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**<u>Per Curiam</u>**

# EXHIBIT H

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

No. 07-5042                                  September Term, 2006

04cv01519

Filed On: July 24, 2007 [1055937]

Salim Ahmed Hamdan,
            Appellant

            v.

Robert M. Gates,
            Appellee

BEFORE:        Ginsburg, Chief Judge, and Sentelle, Henderson, Randolph,
               Rogers, Tatel, Garland, Brown, Griffith, and Kavanaugh,
               Circuit Judges

## O R D E R

Upon consideration of the petition for hearing en banc and the response thereto, it is

**ORDERED** that consideration of the petition be deferred pending further order of the court.  The parties are ordered to file motions to govern further proceedings within thirty days of the Supreme Court's disposition of <u>Boumediene v. Bush</u> and <u>Al Odah v. United States</u>, Nos. 06-1195 & 06-1196, <u>cert. granted</u> (U.S. Jun. 29, 2007).

## Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:

Sabrina M. Crisp
Deputy Clerk

# EXHIBIT I

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 05-5224**

**September Term, 2006**

01cv01001, 04cv01135, 04cv01144,
04cv01194, 04cv01254, 04cv02035,
04cv02215, 05cv00023, 05cv00247,
05cv00270, 05cv00280, 05cv00301,
05cv00329, 05cv00359, 05cv00392,
05cv00454, 05cv00490, 05cv00492,
05cv00520, 05cv00526, 05cv00551,
05cv00569, 05cv00586, 05cv00621,
05cv00634, 05cv00665, 05cv00723,
05cv00877, 05cv00881, 05cv00887,
05cv00993, 05cv00998, 05cv01048,
05cv01189, 05cv01220, 05cv01236,
05cv01246, 05cv01429, 05cv01453,
05cv01489, 05cv01491, 05cv01555,
05cv01635, 05cv01645, 05cv01649,
05cv01666, 05cv01668, 05cv01714,
05cv01806, 05cv01857, 05cv01983,
05cv02185, 05cv02186, 05cv02197,
05cv02248, 05cv02379

Mahmoad Abdah, Detainee, Camp Delta, et al.,
　　　　Appellees

　　　v.

George W. Bush, Jr., President of the United States,
et al.,
　　　　Appellants

**Filed On:**



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

AUG 9 2007

CLERK

Consolidated with 05-5225, 05-5226, 05-5227,
05-5228, 05-5229, 05-5230, 05-5231, 05-5232,
05-5233, 05-5234, 05-5235, 05-5236, 05-5237,
05-5238, 05-5239, 05-5241, 05-5242, 05-5243,
05-5244, 05-5245, 05-5246, 05-5247, 05-5248,
05-5337, 05-5338, 05-5339, 05-5340, 05-5341,
05-5353, 05-5374, 05-5390, 05-5398, 05-5399,
05-5478, 05-5479, 05-5480, 05-5482, 05-5483,
05-5484, 05-5486, 06-5037, 06-5039, 06-5040,
06-5041, 06-5043, 06-5044, 06-5061, 06-5062,
06-5063, 06-5064, 06-5065, 06-5066, 06-5067,
06-5068, 06-5094

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 05-5224**                              **September Term, 2006**

**BEFORE:**    Sentelle, Henderson, and Tatel, Circuit Judges

## O R D E R

Upon consideration of the motion to vacate and dismiss in Nos. 05-5224, et al., and the notice of additional authority, the oppositions thereto, and the replies; the motion to hold in abeyance and to stay dismissal or order reinstatement in Nos. 05-5224, et al., and the opposition thereto; the motion to defer ruling on the motion to dismiss in No. 05-5226 and the opposition thereto; and the Supreme Court's orders granting the petitions for writ of certiorari in Boumediene v. Bush and Al Odah v. United States, Nos. 06-1195 and 06-1196, it is

**ORDERED** that the motion to defer ruling on the motion to dismiss in No. 05-5226 be denied. It is

**FURTHER ORDERED** that the motion to dismiss the appeals be granted in part. Nos. 05-5226, -5233, -5234, -5241, -5245, -5340, -5341, -5399, -5480, -5482, -5483, and Nos. 06-5044, -5061, -5063, -5066, and -5068 are hereby dismissed as moot in light of the release of the petitioners from United States custody. No. 06-5040 is hereby dismissed as moot because petitioner is deceased. It is

**FURTHER ORDERED** that the motion to vacate the notice orders and to dismiss the habeas petitions of appellees in Nos. 05-5234, 05-5483, 06-5061, and 06-5066 be dismissed as moot in light of petitioners' release and the district court's dismissal of the petitions for writ of habeas corpus. It is

**FURTHER ORDERED** that the motion to vacate the notice orders and to dismiss the habeas petitions of appellees in Nos. 05-5226, -5233, -5241, -5245, -5340, -5341, -5399, -5480, -5482, and Nos. 06-5040, -5044, -5063, and -5068 be denied without prejudice. The district court is the appropriate forum to determine whether petitioners' remaining claims in their habeas actions are moot. See Kiyemba v. Bush, 219 Fed. Appx. 7 (D.C. Cir. 2007). It is

**FURTHER ORDERED** that consideration of the government's motion to vacate and dismiss the remaining cases in Nos. 05-5224, et al., and appellees' motion to stay dismissal or order reinstatement, be deferred and these consolidated cases held in abeyance pending further order of the court. The parties are directed to file motions to govern further proceedings within thirty days of the Supreme Court's decision in Boumediene v. Bush and Al Odah v. United States, Nos. 06-1195 & 06-1196, cert. granted (U.S. Jun. 29, 2007). It is

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 05-5224**                                    **September Term, 2006**

      **FURTHER ORDERED** that the consolidation of Nos. 05-5226, -5233, -5234, -5241, -5245, -5340, -5341, -5399, -5480, -5482, -5483, and Nos. 06-5040, -5044, -5061, -5063, -5066, and -5068 with Nos. 05-5224, et al., be terminated.

      Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate in Nos. 05-5226, -5233, -5234, -5241, -5245, -5340, -5341, -5399, -5480, -5482, -5483, and Nos. 06-5040, -5044, -5061, -5063, -5066, and -5068 until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. <u>See</u> Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

<u>**Per Curiam**</u>

**FOR THE COURT:**<br>Mark J. Langer, Clerk

BY:        _MaryAnne McMain_<br>               MaryAnne McMain<br>               Deputy Clerk/LD

EXHIBIT J

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FADI AL MAQALEH,

    Petitioner,

       v.

ROBERT GATES, et al.,

    Respondents.

Civil Action No.  06-1669 (JDB)

### ORDER

Petitioner Fadi Al Maqaleh, a Yemeni citizen detained at the Bagram Airfield in Afghanistran, seeks a writ of habeas corpus ordering, among other things, his release from the allegedly unlawful custody of the United States.  Respondents have moved to dismiss his petition for lack of subject-matter jurisdiction.  They argue that the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7(a), 120 Stat. 2636, unambiguously eliminates the statutory basis for subject-matter jurisdiction, and that petitioner has no independent right to habeas review under the Constitution or the common law.  Respondents' argument on the latter point is based in substantial part on the D.C. Circuit's decision in Boumediene v. Bush, 476 F.3d 981 (D.C. Cir. 2007), in which the court held that the MCA divests federal courts of jurisdiction over all actions filed by aliens captured abroad and detained as enemy combatants at the Guantanamo Bay Naval Base (except for the specific review available under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2742), and also that such aliens have no constitutional or common-law right to habeas review. 476 F.3d at 988-994.

By the time that briefing on respondents' motion was completed in late April of this year, the

Supreme Court had denied two petitions for certiorari seeking review of the Boumediene decision. 127 S. Ct. 1478 (April 2, 2007).  The court of appeals later issued its mandate on June 27, 2007.  As of that date, then, the Boumediene decision was by all appearances final, and the law of this circuit firmly established.  But on the final day of its term, the Supreme Court reversed course and granted the two petitions for certiorari.  Boumediene v. Bush, -- S. Ct. --, 2007 WL 1854132 (June 29, 2007) (No. 06-1195); Al Odah v. United States, -- S. Ct. --, 2007 WL 681992 (June 29, 2007) (No. 06-1196).  Those petitions directly challenge the D.C. Circuit's resolution of, among other issues, the following question: whether aliens captured and detained by the United States outside of the United States have a right under the Constitution or at common law to challenge their detentions via habeas corpus petitions.  Petition for a Writ of Certiorari at i, Al Odah v. United States (No. 06-1196).

Putting to one side what may ultimately be significant differences between the Guantanamo detainees and those confined at Bagram, the answer to this question is equally relevant here.  Even if respondents are correct that the MCA eliminates any statutory basis for subject-matter jurisdiction, the Court will still need to address petitioner's contention that he enjoys a constitutional or common-law right to habeas review.  Definitive resolution of that issue, however, should await the Supreme Court's ruling in Boumediene.  If the Supreme Court accepts the D.C. Circuit's reasoning and conclusion with respect to the availability of habeas review, respondents may well prevail on their motion to dismiss this case.  Respondents may also prevail even if the Supreme Court rules narrowly for the Guantanamo detainees based on its previous decision in Rasul v. Bush, 542 U.S. 466 (2004).  On the other hand, the Supreme Court could issue a broader decision in favor of the detainees, one whose reasoning applies not just to Guantanamo, but to Bagram and other locations as well.  In short, whatever conclusion it reaches, and whatever the grounds for that conclusion, the Supreme Court's decision in Boumediene is likely directly to affect the outcome of this case.

This Court recognizes that the D.C. Circuit's ruling in <u>Boumediene</u> remains, at least for now, controlling precedent with respect to the Guantanamo detainees. But that decision does not <u>definitively</u> resolve the jurisdictional questions raised by this case. As such, this Court retains both the authority to determine its own jurisdiction, <u>see</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 627 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction."), and the related power, until the jurisdictional issues are finally determined, "'to make orders to preserve the existing conditions and the subject of the petition.'" <u>See</u> <u>United States v. United Mine Workers of Am.</u>, 330 U.S. 258, 291 (1947) (quoting <u>United States v. Shipp</u>, 203 U.S. 563, 573 (1906)). Exercising only these limited powers, and given the significance of the issues pending before the Supreme Court in <u>Boumediene</u>, the Court concludes that the most sensible course following the belated grants of certiorari is to deny respondents' motion to dismiss without prejudice to refiling following the <u>Boumediene</u> decision. <u>See</u> <u>Ameziane v. Bush</u>, Civ. A. 05-0392 (ESH) (D.D.C. July 5, 2007) (minute order entered in Guantanamo cases denying without prejudice respondents' motions to dismiss the habeas petitions filed by detainees). Accordingly, it is this 18th day of July, 2007, hereby

**ORDERED** that [7] respondents' motion to dismiss for lack of subject-matter jurisdiction is **DENIED WITHOUT PREJUDICE** to refiling following the Supreme Court's decision in <u>Boumediene v. Bush</u>, No. 06-1195, and <u>Al Odah v. United States</u>, No. 06-1196.

**SO ORDERED**.

    /s/ John D. Bates
    JOHN D. BATES
United States District Judge

Dated:    July 18, 2007

# EXHIBIT K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ABDUL HADI OMAR MAHMOUD FARAJ,

     Petitioner,

v.

GEORGE W. BUSH, et al.,

     Respondents.

</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>

Civil Action No. 05-1490 (PLF)

</td></tr>
</table>

ORDER

This matter is before the Court on defendants' motion to dismiss.  In light of the

Supreme Court's grant of certiorari in *Boumediene v. Bush*, – S.Ct. –, 2007 WL 1854132 (June

29, 2007) (No. 06-1195) and *Al-Odah v. Bush*, – S.Ct. –, 2007 WL 681992 (June 29, 2007) (No.

06-1196), the undersigned concludes that the pending motion to dismiss should be denied

without prejudice pending the Supreme Court's decision.  *See Al Maqeleh v. Gates*, Civil Action

No. 06-1669, 2007 WL 2059128 (D.D.C. July 18, 2007) (denying without prejudice motion to

dismiss in case filed by detainee held in Afghanistan).  Accordingly, it is hereby

ORDERED that defendants' motion to dismiss [55] is DENIED without

prejudice.  This matter will remain stayed pending the Supreme Court's resolution of

*Boumediene v. Bush* (06-1195) and *Al-Odah v. Bush* (06-1196).  It is

FURTHER ORDERED that petitioner's motion to stay and hold in abeyance [54]

is denied as moot.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
DATE:  July 27, 2007                          United States District Judge

2

# EXHIBIT L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED ABDULLAH
MOHAMMED BA ODAH and
TARIQ ALI ABDULLAH BA ODAH

Petitioners,

v.

GEORGE W. BUSH, et al.,

Defendants.

Civil Action 06-01668 (HHK)

## ORDER

Petitioners are Yemeni nationals who are being detained by the U.S. military at Guantánamo Bay Naval Base and have filed habeas corpus petitions challenging the legality of their detention. Before the court are Petitioners' motions to stay and abey their habeas corpus motions [#7], pending resolution of the appeals in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) (concluding that the district court no longer had jurisdiction over petitions for habeas corpus brought by those detained by U.S. military at Guantanamo pursuant to the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA")).

On June 29, 2007, the Supreme Court granted certiorari in *Boumediene*. *See* 75 U.S.L.W. 3707 (June 29, 2007). On July 26, 2007, the D.C. Circuit granted petitioners' motion to recall the mandate in *Boumediene* pending the Supreme Court's review of that decision. *See Boumediene*, No. 05-5062 (D.C. Cir. July 26, 2007) (order granting motion and recalling the mandate).

Petitioners seek an order staying their petitions in light of the pending review in *Boumediene*. The Government contends, *inter alia*, that *Boumediene* and the MCA deprive this court of jurisdiction over such motions.[1]

In light of the recall of the mandate in *Boumediene*, and upon consideration of the motion, the opposition thereto, and the record in this case, it is this 28th day of July, 2007, hereby

**ORDERED** that Petitioners' motion to stay and abey this case [#7] is **GRANTED** and all matters in the above-captioned action are **STAYED** pending resolution of the Supreme Court's review of *Boumediene*.[2]

Henry H. Kennedy, Jr.
United States District Judge

---

[1]    The D.C. Circuit, however, has denied motions to vacate a district court's 30 days' notice of transfer orders and has confirmed that district courts may "consider in the first instance respondents' motion to dismiss and petitioners' motions to stay and hold in abeyance, which are currently pending before the district court." *See Al Ginco v. Bush*, 06-5191 (D.C. Cir. June 7, 2007).

[2]    Petitioners have also requested, in the alternative, that the court transfer this case to the D.C. Circuit in the event that the Supreme Court determines that the district court lacks jurisdiction.  As that issue is still pending, the court declines to rule on that motion at this time.