UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————

| | |
|---|---|
| | ) |
| **ALI SHAH MOUSOVI,** *et al.*, | ) |
| | ) |
| **Petitioners,** | ) |
| | ) |
| v. | )   **Civil Action No. 05-1124 (RMC)** |
| | ) |
| **BARACK H. OBAMA,** *et al.*, | ) |
| | ) |
| **Respondents.** | ) |
| | ) |
| | ) |
| **IN RE PETITION of WALI** | ) |
| **MOHAMMED MORAFA (ISN 560)** | ) |
| | ) |
| ———————————————————— | ) |

## OPINION

On a petition for a writ for habeas corpus filed by a detainee at Guantanamo Bay, may the Respondents rely on Top Secret source-identifying information for which there is no adequate substitute and that cannot be released to Petitioner's counsel, even if it might assist his petition?  After lengthy argument, briefing, and consideration, this Court answered the question in the affirmative and now writes to explain its conclusions.

## I.  FACTS

Petitioner Wali Mohammed Morafa, an Afghan citizen, is a detainee at Guantánamo Bay Naval Station in Cuba.  Respondents contend that he "used the cover of [] otherwise legitimate money-changing activities to provide financial services support to the operations of the Taliban, [Al Qaida, Usama Bin Laden], and other terrorist organizations," including "financ[ing] . . . operations and terror attacks."  Notice of Public Filing of Factual Return [Dkt. 242], Narrative [Dkt. 242-1] ¶ 01.  With a group of other detainees, he filed his petition for a writ of habeas corpus on June 7, 2005.  *See* Pet. [Dkt. 1]; *see also* Am. Pet. [Dkt.

22].  On January 27, 2006, this Court ordered the case held in abeyance pending a ruling from the D.C. Circuit on whether the Court had jurisdiction to entertain the petition.  *See* Order dated Jan. 27, 2006 [Dkt. 33].  Thereafter, in events whose intricate details are not directly relevant to the issues presently before the Court, the case was effectively stayed for a lengthy period pending various rulings from the D.C. Circuit and the Supreme Court addressing what vehicle, if any, Guantánamo detainees could use to challenge their detention.  In addition, during that time period, procedural and logistical matters in this case were consolidated for coordination and management with other Guantánamo cases before the Honorable Thomas F. Hogan in Case Misc. No. 08-442.  *See* Order dated July 2, 2008 [Dkt. 85].

On November 25, 2008, respondents filed their classified Factual Return regarding Mr. Morafa, *see* Notice of Filing of Factual Returns, Dkt. 143, and they served an unclassified version on Mr. Morafa's counsel shortly thereafter, *see* Notice of Service of Unclassified Protected Factual Return, Dkt. 170.  *See also* Notice of Public Filing of Factual Return.  In January 2009, after President Barack Obama took office, Respondents notified the Court that they had identified additional documents, possibly relevant to Mr. Morafa, that were undergoing clearance review.  *See* Supp. Notice Prod. Exculp. Info. [Dkt. 183] at 1.  In December 2009, Respondents sought leave to amend the factual return, *see* Notice of Classified Filing dated Dec. 1, 2009, Dkt. 257; Mr. Morafa consented, *see* Revised Notice dated Dec. 7, 2009, Dkt. 260, and the Court granted the motion and set a briefing schedule, Minute Order dated Dec. 11, 2009.  Mr. Morafa filed his traverse on January 15, 2010.  *See* Notice of Filing [Dkt. 264].  The parties filed a number of additional motions and briefs, and the Court held a closed merits hearing over several days in May and June 2010.

Although the case's dénouement seemed nigh, matters were not so simple.

Following a November 5, 2010, telephone conference, the Court reopened the record and

approved additional briefing to accommodate ongoing document review by Respondents,

necessary for Respondents to ensure full compliance with their disclosure obligations. *See*

Minute Orders dated Nov. 5, 2010 & Nov. 23, 2010. *See generally* Am. Case Mgmt. Order [Dkt.

154] §§ 1.D, 1.E. Respondents filed a Supplemental Factual Return on March 25, 2011. *See*

Notice of Filing [Dkt. 331].

The discovery fights then renewed. Contending that he was entitled to additional

materials from Respondents, Mr. Morafa filed a motion for additional discovery. *See* Notice of

Filing dated July 18, 2011 [Dkt. 339]. Following status conferences on October 18 and

November 3, 2011, the Court granted the motion in part and directed Respondents to conduct

five additional searches on terms set forth in an Order dated November 15, 2011. *See* Order on

Pet'r Mot. Add'l Disc. (Redacted Version) [Dkt. 356]. Respondents located additional

information inculpating Mr. Morafa, and they filed a motion to add this information to the

Supplemental Factual Return, *see* Notice of Classified Filings [Dkt. 366], which the Court

granted, *see* Order dated July 23, 2012 [Dkt. 372] at 2.

The present issue arises from certain source-related information located by

Respondents during their searches after November 2011. The information in question is

classified at the "Top Secret" level, the highest of the three levels of national security

classification—Top Secret, Secret, and Confidential.[1] Throughout the Guantánamo proceedings,

---

[1] *See* "Classified National Security Information," Exec. Order 13526, 75 Fed. Reg. 707, 707–08
(Dec. 29, 2009) ("'Top Secret' shall be applied to information, the unauthorized disclosure of
which reasonably could be expected to cause exceptionally grave damage to the national security
. . . . 'Secret' shall be applied to information, the unauthorized disclosure of which reasonably
could be expected to cause serious damage to the national security . . . .").

counsel for petitioners, including Mr. Morafa's attorneys, have only held clearance at the Secret

level, making them ineligible to access to Top Secret information.  *See* Am. Case Mgmt. Order

§ 1.F ("If any information to be disclosed under Sections I.D or I.E of this Order is classified, the

government shall, unless granted an exception by the Merits Judge, provide the petitioner's

counsel with the classified information, *provided the petitioner's counsel is cleared to access*

*such information*." (emphasis added)).  Accordingly, Respondents filed a motion *ex parte* and *in*

*camera*, Dkt. 374, for an exception to their disclosure duties with respect to certain information,

including the source-related information at issue here.  *See* Am. Case Mgmt. Order § 1.F ("If the

government objects to providing the petitioner's counsel with the classified information, the

government shall move for an exception to disclosure.").

Thereafter, pursuant to a procedure used by other judges of this Court in

Guantánamo cases and endorsed by the D.C. Circuit in *Khan v. Obama*, 655 F.3d 20 (2011), the

Court reviewed Respondents' *ex parte* materials *in camera*.  The Court also reviewed proposed

substitutes, classified below the Top Secret level, that Respondents intended to provide to Mr.

Morafa's counsel.  These substitutes are a unique device to balance national security needs with

the need for "meaningful" habeas review.  *See Khan*, 655 F.3d at 32 (quoting *Boumediene v.*

*Bush*, 553 U.S. 723, 779 (2008)).  They generally describe, in less detail or with certain

omissions or redactions, the classified information that could not be disclosed.  If approved by

the court, they are referred to as "adequate substitutes."  A court's inquiry when reviewing

proposed substitutes is, essentially, to determine if all "relevant and material" information from

the Top Secret document has been conveyed in the Secret substitute.  *See Al Odah v. United*

*States*, 559 F.3d 539, 544 (D.C. Cir. 2009) (applying "relevant and material" standard to

disclosure of Secret classified information to petitioner's counsel in Guantánamo case).  If so, the

petitioner has access to "meaningful" habeas review, and the fact that there is some information

to which petitioner's counsel does not have access is irrelevant because that information falls

short of being "relevant and material."  *See id.*

The problem arises when there is "relevant and material" evidence, classified as

Top Secret, for which no adequate substitute is available.  This is an issue that, to the knowledge

of the Court and the parties, has never been directly resolved—likely owing in large part to the

good faith shown by Respondents in working with stakeholder agencies and with judges during

*ex parte*, *in camera* review to reach agreement as to adequate substitutes that petitioners' counsel

can access.  Despite the commendable and professional efforts of Respondents' counsel, this

case presented that problem: there is no adequate substitute available for certain relevant and

material source-related information, classified at the Top Secret level.  Accordingly, although the

Court has reviewed that information *in camera*, Mr. Morafa's counsel is unable to review it.  Mr.

Morafa objects to this outcome, arguing that the unavailability of such evidence to counsel must

both preclude Respondents from relying on it to support his detention and preclude the Court

from considering it in ruling on his habeas petition.

After oral arguments held during closed hearings on August 24, 2012 and

September 18, 2012, the Court issued oral rulings that Respondents were not required to disclose

the Top Secret materials for which no adequate substitute could be prepared and had, subsequent

to some additional substitute disclosures to which Respondents agreed, satisfied their disclosure

obligations.[2]  At Mr. Morafa's request, the Court allowed the parties to file further memoranda

---

[2] The Court completed an additional *in camera* review of *ex parte* documents on November 14,
2012.  These documents are the unredacted versions of the documents underlying the
Supplemental Factual Return.  After comparison with the redacted versions, the Court again
concluded that, subject to additional minimal disclosures to which they agreed, Respondents had

regarding these matters.  *See* Minute Order dated Sept. 27, 2012.  The parties filed their

memoranda, *see* Resp't Mem. [Dkt. 378] & Pet'r Mem. [Dkt. 383], and the matter is now ready

for disposition.[3]

## II.  ANALYSIS

*Boumediene v. Bush*, 553 U.S. 723 (2008), examined the rights of detainees at

Guantánamo Bay to habeas proceedings and invalidated § 7 of the Military Commissions Act of

2006,[4] which had cut off detainee access to habeas relief in federal courts. *Id.* at 792 ("MCA § 7

thus effects an unconstitutional suspension of the writ.").  It found:

> Where a person is detained by executive order, rather than, say,
> after being tried and convicted in a court, the need for collateral
> review is most pressing. . . .  In this context the need for habeas
> corpus is more urgent.  The intended duration of the detention and
> the reasons for it bear upon the precise scope of the inquiry.
> Habeas corpus proceedings need not resemble a criminal trial, even
> when the detention is by executive order.  But the writ must be
> effective.  The habeas court must have sufficient authority to
> conduct a meaningful review of both the cause for detention and
> the Executive's power to detain.
>
> . . . What matters is the sum total of procedural protections
> afforded to the detainee at all stages, direct and collateral.

---

not improperly limited any information—inculpatory or exculpatory—released to Mr. Morafa's
lawyers.

[3] Respondents argue that the Court should refrain from deciding this matter until "submission of
all the evidence in this case, including Petitioner's Supplemental Traverse and any testimony by
Petitioner." Resp't Mem. at 15.  The Court disagrees.  It has already ruled and writes now only
to amplify its reasoning.  Moreover, as set forth in this Opinion, the Court concludes that
Respondents are entitled to an exemption to their disclosure obligations for the limited category
of Top Secret, source-related information at issue here.  Deciding the matter after the fact would
only invite *post hoc*, backwards-looking analysis and would contravene both sound principles of
judicial decision-making and the essential purpose of the habeas proceeding: the Court's
independent review of the detention decision.

[4] Pub. L. 109-366, 120 Stat. 2600 (Oct. 17, 2006), *as codified at* 28 U.S.C. § 2241(e).

*Id.* at 783.  To conduct a proper habeas proceeding, the court must have "some authority to assess the sufficiency of the Government's evidence against the detainee." *Id.* at 786.  "It also must have the authority to admit and consider relevant exculpatory evidence . . . ." *Id.*  The detainee must have an "opportunity . . . to present relevant exculpatory evidence . . . ." *Id.* at 789.  For emphasis, the Court reiterated: "If a detainee can present reasonably available evidence demonstrating there is no basis for his continued detention, he must have the opportunity to present this evidence to a habeas corpus court." *Id.* at 790.  And again, "[i]n this context, however, where the underlying detention proceedings lack the necessary adversarial character, the detainee cannot be held responsible for all deficiencies in the record" and must be allowed to present evidence to the court even if such evidence were not available earlier, when the military detention decision was made. *Id.* at 791.

Nonetheless, "it does not follow that a habeas corpus court may disregard the dangers the detention in these cases was intended to prevent." *Id.* at 795.  "Certain accommodations can be made to reduce the burden habeas corpus proceedings will place on the military without impermissibly diluting the protections of the writ." *Id.*  Indeed, one of the reasons all Guantánamo habeas cases are venued in the District of Columbia is to "avoid the widespread dissemination of classified information." *Id.*

> We make no attempt to anticipate all of the evidentiary and access-to-counsel issues that will arise during the course of the detainees' habeas corpus proceedings.  We recognize, however, that the Government has a legitimate interest in protecting sources and methods of intelligence gathering; and we expect that the District Court will use its discretion to accommodate this interest to the greatest extent possible.

*Id; see also id.* ("These and the other remaining questions are within the expertise and competence of the District Court to address in the first instance.").  Given these imprecise

7

instructions from the High Court, the judges of this Bench and Circuit have developed

precedents which aid the analysis on the immediate point.

Applying *Boumediene*, the D.C. Circuit has held that "[t]he Suspension Clause

protects only the fundamental character of habeas proceedings, and any argument equating that

fundamental character with all the accoutrements of habeas for domestic criminal defendants is

highly suspect." *Al-Bihani v. Obama*, 590 F.3d 866, 876 (2010).  It added, "Detention of aliens

outside the sovereign territory of the United States during wartime is a different and peculiar

circumstance, and the appropriate habeas procedures cannot be conceived of as mere extensions

of an existing doctrine." *Id.* at 877.  The D.C. Circuit has found that Guantánamo detainees

receive only "limited procedural entitlement," *id.* at 878, which does not include a right to

confront a detainee's accusers, guaranteed to criminal defendants under the Sixth Amendment,

because it "is not directly relevant to the habeas setting," *id.* at 879 (citation omitted).  Rather,

> [I]n a detainee case, the judge acts as a neutral decisionmaker
> charged with seizing the actual truth of a simple, binary question:
> is detention lawful?  This is why the one constant in the history of
> habeas has never been a certain set of procedures, but rather *the
> independent power of a judge to assess the actions of the
> Executive*.

*Id.* at 880 (emphasis added).

*Al Odah v. United States*, 559 F.3d 539 (D.C. Cir. 2009), which preceded *Al-*

*Bihani*, addressed the disclosure of information classified as Secret to a Guantánamo petitioner's

counsel.  By reference to criminal proceedings, the D.C. Circuit held that "before the district

court may compel the disclosure of classified information, it must determine that the information

is both relevant *and material*—in the sense that it is at least helpful to the petitioner's habeas

case." *Id.* at 544.  In the context of a habeas proceeding, this means that "the court must further

conclude that access by petitioner's counsel (pursuant to a court-approved protective order) is

necessary to facilitate such review." *Id.* at 545. For this purpose, *Khan v. Obama*, 655 F.3d 20 (D.C. Cir. 2011), accepted a process by which the District Court judge reviewed certain materials *ex parte* and *in camera* and petitioner's counsel, who had suggested the procedure, received a only a substitute declaration—"still classified, but with less sensitive information"—describing the evidence. *Id.* at 31.

As summarized above, in the instant matter, the Court adopted the process endorsed in *Khan.* It has reviewed all Top Secret evidence *ex parte* and *in camera* to ensure that Mr. Morafa's counsel received Secret versions that are adequate substitutes. *See Khan*, 655 F.3d at 31 (noting that "highly sensitive" information "can be shown to the court . . . alone" (internal quotation marks and citation omitted)). Indeed, *Khan* concluded that "the combination of the government's declaration [shared with Mr. Khan's counsel] and the *in camera* submission [to the court but not counsel] constitute[d] an 'effectiv[e] substitute for unredacted access' that ensures Khan the 'meaningful review of both the cause for detention and the Executive's power to detain' required by *Boumediene*." *Id.* (citation omitted).

This case presents a new wrinkle. In reviewing all Top Secret information and redacted documents provided to Mr. Morafa's counsel, the Court has found that redactions were entirely proper as relevant here and that Respondents did a highly professional job preparing Secret substitutes—with the exception of substitutes for some source information. Respondents insist that such source information is much too highly sensitive to be disclosed to Mr. Morafa's lawyers, who are cleared to see only Secret information. Respondents rely on *Boumediene*'s recognition that "the Government has a legitimate interest in protecting sources and methods of intelligence gathering," Resp't Mem. at 12 (quoting 553 U.S. at 795); clearly, revelation of one may perforce constitute revelation of both. Because of the nature of some of the source

information, the Court has also concluded that it might be relevant and material, *i.e.*, "helpful to the petitioner's case." *Al-Odah*, 559 F.3d at 544; *see also id.* at 546 ("Information that . . . names potential witnesses . . . may . . . be material."). Counsel for Mr. Morafa most emphatically neither suggest nor agree that it is sufficient for the Court alone to review relevant and material Top Secret information that is not disclosed in any fashion to them. They argue that the Court should "use its discretion to accommodate [Respondents'] interest to the greatest extent possible." Pet'r Mem. at 7 (quoting *Boumediene*. 553 U.S. at 795). According to Mr. Morafa's counsel, this means that Respondents have a choice in this case: either disclose the relevant and material source information to them *or* refrain from reliance on any document that stems from such a source. *E.g.*, *id.* at 1–2. In the circumstances of this habeas petition, years after Mr. Morafa was transferred to Guantánamo, his counsel contend that his rights to contest Respondents' reasons for detention prevail over Respondents' need to secure source information, when revealed under a court protective order.

There is no doubt that the habeas proceedings for Guantánamo detainees constitute a special form of habeas for which a court must ensure an objective and neutral decisionmaker. As with all petitions for habeas corpus, these are not criminal proceedings, and simply analogizing to the rights of criminal defendants is inapt. *Boumediene* made clear that a Guantánamo detainee must have the right to present "reasonably available evidence," *id.* at 790, and that the District Court must exercise its discretion in difficult evidentiary matters. This case presents such an occasion.

Some source information contained in Top Secret documents reviewed *in camera* and *ex parte* could be relevant and material to Mr. Morafa's case. However, Respondents have argued persuasively that source and method information are particularly critical within the

Intelligence Community and the nation's security and, thus, cannot be revealed to Mr. Morafa's counsel. The Court agrees. It is true that this ruling will have a minor detrimental impact on Mr. Morafa's ability to contest the basis for his detention. However, the Court concludes that the incremental value to the Court of considering that evidence, in tandem with the "exceptionally grave damage to the national security" that could result from the unauthorized disclosure of Top Secret information, *see* 75 Fed. Reg. at 707–08,[5] outweighs the marginal impact of withholding the information in question. *See Khan*, 655 F.3d at 31 ("[T]he government may offer alternatives to providing classified information, as long as they suffice to provide the detainee with a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." (internal quotation marks and citations omitted)).

Of the three components to the habeas proceeding—(1) Mr. Morafa's ability to present affirmative evidence or, as relevant here, to attack Respondents' evidence; (2) Respondents' ability to protect highly sensitive information; and (3) the Count's ability, as a neutral decisionmaker, to seize "the actual truth of a simple, binary question: is detention lawful?," *Al-Bihani*, 590 F.3d at 880—the third is by far the most important aspect, as the D.C. Circuit and Supreme Court have both emphasized in Guantánamo cases. The primacy of the Court's independent review of the evidence is the defining feature of these proceedings precisely because "the one constant in the history of habeas has never been a certain set of procedures, but rather the independent power of a judge to assess the actions of the Executive." *Al-Bihani*, 590 F.3d at 880; *see also Boumediene*, 553 U.S. at 739–46 (surveying history of habeas proceedings). What matters most is that the Court "have sufficient authority to conduct a meaningful review of

---

[5] The Court's opinion is not intended to cast aspersions on the ability of Mr. Morafa's counsel to guard Top Secret information from disclosure. The nature and extent of security clearances granted to Guantánamo petitioners' counsel is neither within this Court's jurisdiction nor subject to its review.

both the cause for detention and the Executive's power to detain." *Boumediene*, 553 U.S. at 783.

In this context, the ultimate question is whether access by Mr. Morafa's counsel to Top Secret

information is necessary to facilitate the Court's own meaningful review of the evidence. *Al

Odah*, 559 F.3d at 545.  Under these circumstances, the Court concludes that it is not.

   The Court recognizes that its ruling necessarily impacts counsel's ability to access

evidence that is relevant and material (but not necessary to facilitate review) and does not

dismiss lightly the arguments counsel to Mr. Morafa have made or the frustration they

experience in trying to expand the universe of "reasonably available evidence," *Boumediene*, 553

U.S. at 790, from which to argue for their client.  Top Secret source information is *not*

reasonably available to those with Secret clearances.  However, the value of this specific

evidence is, at best, marginal: The underlying information provided by any source has been

revealed to Mr. Morafa's counsel, by way of a properly redacted document or a proper adequate

substitute.  Thus, Mr. Morafa's counsel already can argue its accuracy and present his side.  *See

Khan*, 655 F.3d at 29 n.7 ("The relevant question is not the number of independent sources but

rather the reliability of their evidence . . . .").  Disclosure of source-identifying information might

allow Mr. Morafa's counsel to sharpen any attack on a source's credibility but, to be frank, the

nature of the classified information already revealed immediately lends itself to such an attack.

   Finally, in considering Respondents' interest in protecting classified information

from unauthorized disclosure, the information at issue here—source-identifying information—is

one that courts have recognized as deserving special protection both inside and outside the arena

of Guantánamo litigation.  *See, e.g.*, *Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990)

("[A]long with sources, methods constitute 'the heart of all intelligence operations.'  It is not the

province of the judiciary . . . to determine whether a source or method should be disclosed . . . ."

(quoting *CIA v. Sims*, 471 U.S. 159, 167 (1985))); *see also Al Odah v. United States*, 608 F. Supp. 2d 42, 45 (D.D.C. 2009) (citing *Fitzgibbon*).  Especially where, as here, a Guantánamo prisoner has access to the substance of the information provided by such sources, the Court recognizes the strong national security interest in protection of the identity of those sources.

Habeas petitions from Guantánamo detainees have continually presented courts with unique challenges, requiring development of new doctrines and procedures.  *See Al-Bihani*, 590 F.3d at 877 (describing these cases as "a whole new branch of the tree").  *Boumediene* did not decide the instant issue, leaving it to the discretion of the district court.  The D.C. Circuit has not addressed it with specificity but indicated its opinion in *Khan*.  Without negative direction from superior courts, this Court concludes and finds that Top Secret information of the kind at issue here must be available to the neutral decisionmaker even if not disclosed to Mr. Morafa's counsel.  With respect to the excellent lawyering from both parties, the Court ultimately finds that this is not a difficult question.

DATE: January 9, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
